**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE HON.  MARK A. BARNETT, CHIEF JUDGE**

————————————————————— X

RKW KLERKS INC.,                              :

          Plaintiff,             :

        v.                           :

UNITED STATES,                               :        **Court No. 20-00001**

          Defendant.           :

————————————————————— X


**PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**


Philip Yale Simons, Esq.
Jerry P. Wiskin, Esq.
**SIMONS & WISKIN**
**98 Craig Road**
**Manalapan, NJ 07726**
**Tel (732) 316-2300**
*Attorneys for RKW Klertks Inc.*

Dated: March 15, 2022

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................... 1
.
THE IMPORTED NETWRAP IN ISSUE ................................ 2

TARIFF PROVISIONS IN ISSUE ..................................... 3

    A. The Competing HTSUS Headings ....................... 3

    B. The HTSUS General Rules of Interpretation ............. 4

SUMMARY OF ARGUMENT ......................................... 5

ARGUMENT ........................................................... 6

    I. THIS CASE IS RIPE FOR SUMMARY JUDGMENT AS
      THERE ARE NO MATERIAL FACTS IN DISPUTE ......................... 6

    II.  CBP'S CLASSIFICATION OF NETWRAP WAS WRONG ........... 7

        A. HQ H017185 ........................................... 7

    B. CBP Rulings on the Classification of Netwrap
    Do Not Deserve Any Deference............................. 8

            (1)  *Since the HTSUS Provisions Are
            Unambiguous, The Court Should Not
            Give Any  Deference To CBP's Interpretation*............. 8

            (2)  *CBP Rulings Are Evaluated Under Mead,
            Not Chevron* ........................................ 9

            (3) *CBP has been Inconsistent in
            Classifying Net wrap Products* ..................... 10

            (4)  *HQ H017185 Does Not Deserve
            Any Deference Under Mead* ........................ 10

    III. PURSUANT THE NOTES TO SECTION XVI, HTSUS,
    PARTS OF HARVESTING MACHINES ARE CLASSIFIED
    UNDER HEADING 8433 ...................................... 11

    IV. UNDER THE *LUDVIG SVENSSON* CASE, THE NETWRAP
    IS A "PART" OF HARVESTING MACHINERY .................... 14

    V. IF BOTH HEADING 6005 AND 8433 *PRIMA FACIE* DESCRIBE
    THE IMPORTED MERCHANDISE, HEADING 8433 PREVAILS ...... 17

A. When an *Eo Nomine* Provision and a Use Provision Each Describe the Imported Merchandise, Classification Under the Use Provision Is Preferred ............................................. 17

B.  Heading 8433 Is a Use Provision ......................................... 19

C.  If Both Heading 6005 and 8433 *Prima Facie* Describe the Imported Merchandise, And Its Use Does Not Control Classification, Then Classification is Determined by the Application of GRI 3 and Heading 8433 Is More Specific .................................... 21

D.  The Parts Provision in Subheading 8433 Is Preferred Over the Basket Provision in Subheading 6005 ...................................................... 23

VI.  IN THE ALTERNATIVE, THE NET WRAP IS CLASSIFIABLE  AS A PART OF AGRICULTURAL MACHINERY IN HEADING 8436 ............................................. 24

CONCLUSION ................................................. 25

## TABLE OF AUTHORITIES

**CASES***:*                                                                              **Page(s)**

*Allstar Mktg. Group, LLC v. United States*,
211 F. Supp. 3d 1319 (Ct. Intl. Tr. 2017) ................................................... 18

*Amcor Flexibles Kreuzlingen AG v. United States*,
— F. Supp. 3d.  ---- (Ct. Int'l Tr. 2022)
(Slip-Op 22-15, decided Feb. 22, 2022) ................................................ 23, 24

*American Express Co. v. United States*,
29 C.C.P.A. 87, C.A.D. 175 (1941) ......................................................... 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505 (1986) ................................................... 6

*Bauerhin Techs. Ltd. P'ship. v. United States*,
110 F.3d 774 (Fed. Cir. 1997) ................................................................ 15

*Beacon Cycle & Supply Co. v. United States*,
458 F. Supp. 813 (Cust. Ct. 1978) ......................................................... 24

*Brother Int'l Corp. v. United States*,
248 F. Supp. 2d 1224 (Ct. Int'l Tr. 2002) .......................................... 12, 14

*Cal. Ind. Prods. v. United States*,
436 F. 3d 1341 (Fed. Cir. 2006) .............................................................. 10

*CamelBak Products., LLC v. United States*,
649 F.3d 1361 (Fed. Cir. 2011) .............................................................. 20

*Carl Zeiss, Inc. v. United States*,
195 F.3d 1375 (Fed. Cir.1999) ................................................................ 21

*Casio, Inc. v. United States*,
73 F.3d 1095 (Fed. Cir. 1996) ................................................................ 20

*Chemtall, Inc. v. United States*,
179 F. Supp. 3d 1200 (Ct. Int'l Tr. 2016)
*aff'd*, 878 F. 3d 1012 (Fed. Cir. 2017) .................................................. 6

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837, 104 S.Ct. 2778 (1984) ...................................................... 8

*Container Store v. United States*,
800 F. Supp. 2d 1329 (Ct. Intl. Tr. 2011) .............................................. 7

*Dale-Tile Corp v. United States*,
116 F. Supp. 2d 1309 (Ct. Int'l Tr. 2000) .............................................. 6

*EM Indus., Inc. v. United States*,
999 F.Supp. 1473 (Ct. Int'l Tr. 1998) ....................................... *23*

*E.T. Horn Co. v. United States*,
367 F.3d 1326 (Fed. Cir. 2004) ...................................... 19

*Faus Grp., Inc. v. United States*,
581 F.3d 1369 (Fed. Cir. 2009) ...................................... 22

*Frank W. Winne & Sons* v. United States
72 Cust. Ct. 62, C.D. 4575 (1974) ...................................... 20

*Galloway v. United States*,
319 U.S. 372, 63 S. Ct. 1077 (1943) ....................................... 6

Geo. WM. Rueff v. United States
28 Cust. Ct. 84, C.D. 1392 (1952)........................................... 20

*Goodman Mfg., L.P. v. United States*,
69 F.3d 505 (Fed. Cir. 1995) ...................................... 7

*GRK Can., Ltd. v. United States*,
761 F.3d 1354 (Fed. Cir. 2014)
*reh. den.* 773 F. 3d 1282 (Fed. Cir 2014)................................ 17, 19, 20

*Ideal Toy Corp. v. United States*,
433 F. 2d 801, 58 C.C.P.A. 9, C.A.D. 996 (1970)...................... 24

*International Light Metals v. United States*,
194 F.3d 1355 (Fed. Cir. 1999) ...................................... 9

*La Crosse Tech., Ltd. v. United States*,
723 F.3d 1353 (Fed. Cir. 2013) ...................................... 21

*Len-Ron Mfg. Co. v. United States*,
334 F.3d 1304 (Fed. Cir. 2003) ...................................... 19

*Lerner N.Y., Inc. v. United States*,
908 F. Supp. 2d 1313 (Ct. Int'l Tr. 2013),
*aff'd* Victoria Secret Direct LLC v. United States,
769 F. 3d. 1102 (Fed. Cir. 2014) ...................................... 7

*Ludvig Svensson, Inc.*,
62 F. Supp. 2d 1171 (Ct. Int'l Tr. 1999) ...................................... 9, 10, 15, 16
24

*Marathon Oil Co. v. United States*,
93 F. Supp. 2d 1277 (Ct. Int'l Tr. 2000) ...................................... 6

Mita Copystar Am. v. United States,
160 F. 3d 710 (Fed. Cir. 1998) ...................................... 13, 14

*Mondiv, Div. Of Lassonde Specialties Inc. v. United States*,
329 F. Supp. 1331 (Ct. Int'l Tr. 2018) ..................................................... 22

*Orlando Food Corp. v. United States*,
140 F. 3d 1437 (Fed. Cir. 1998) .............................................................. 18, 21

*Rollerblade, Inc. v. United States*,
112 F.3d 481 (Fed. Cir. 1997) ................................................................ 7

*StoreWALL, LLC v. United States*,
644 F.3d 1358 (Fed. Cir. 2011) .............................................................. 20

*United States v. Mead Corp.*,
533 U.S. 218, 121 S.Ct. 2164 (2001) ..................................................... 8, 9, 10

*Universal Elecs. Inc. v. United States*,
112 F.3d 488 (Fed. Cir. 1997) ................................................................ 6, 7

*Well Luck Co. v United States*,
887 F. 3d 1106 (Fed. Cir. 2018) .............................................................. 21

*Wilbur-Ellis Co. v. United States*,
26 C.C.P.A 403. C.A.D 47 (1939) ........................................................... 20

*United States v. Pompeo*,
43 C.C.P.A. 9, C.A.D 602 (1955) ............................................................ 16, 17, 24

*United States v. Willoughby Camera Stores*,
21 C.C.P.A. 322, T.D. 46851 (1933) ....................................................... 16, 17, 24


**STATUTES:**

28 U.S.C. § 2639(a)(1) ............................................................................ 6

HTSUS General Rules of Interpretation............................................... 4

General Rules of Interpretation 1............................................................ 4

General Rules of Interpretation 2 ........................................................... 4

General Rules of Interpretation 3 ........................................................... 4, 12, 21, 23

HTSUS Additional United States Notes ............................................... 5

HTSUS Heading 6005 ............................................................................ 3, 9, 10,  21, 22, 23

HTSUS subheading 6005.39.00 ............................................................ 1, 3, 23

**HTSUS Heading 8433** .................................................. **1, 3, 5, 8, 9 11, 17, 19, 21, 22, 23, 24, 25**

**HTSUS subheading 8433.90.50** ................................. **1, 4, 5**

**HTSUS Heading 8436** ................................................ **4, 5, 10, 15**

**HTSUS subheading 8436.90.00** ................................. **1, 4, 23, 24, 25**

**Section XVI Note 2, HTSUS** ...................................... **5, 8, 11, 12, 13, 17, 21**

**MISCELLANEOUS:**

**HQ 287875 of January 25, 2021** ................................. 16

**NY N305543 of August 22,2019** ................................ 12

**NY N297986 of July 17, 2018** .................................... 12

**NY N284368 of April 7, 2017** ..................................... 8, 10

**HQ H219598 of January 5, 2016** ................................ 10, 17

**NY N279988 of October 6, 2016** ................................ 8, 10

**HQ H255093, of January 14, 2015** ............................. 12, 17

**HQ H238494, of June 26, 2014** .................................. 17

**HQ H153035 of June 25, 2012** ................................... 12

**NY N096895 of December 29, 2009** ........................... 12

**HQ H017185 of April 17, 2008** ................................... 7, 9, 10, 14

**HQ H027028, of August 19, 2008** .............................. 17

**NY N040299 of October 8, 2008** ................................ 8, 10

**NY G87841 of March 9, 2001**...................................... 10

**NY F82799 of March 6, 2000** ..................................... 10

**HQ 954495 of October 20, 1993** ................................ 12

**NY 859390 of February 14, 1991**................................ 10

**HQ 087849 of May 22, 1991**....................................... 12

**CBP Informed Compliance Publication**
**bbvbb nmmmnm***The Agricultural Use Provisions* **(2015)**
**..............................................   19**

**C. Wright, A. Miller and . Kane**
*Federal Practice and Procedure* **§ 2725 (3d ed. 2015) .......................   6**

*Explanatory Notes to the*
*Harmonized Commodity and Description Coding* **System .................   11, 12, 19**

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE HON. MARK A. BARNETT, CHIEF JUDGE**

-------------------------------------------------------- X
**RKW KLERKS INC.,**

        **Plaintiff,**              :

        **v.**                   :

        :         **Court No. 20-00001**

**UNITED STATES,**        :

        **Defendant.**
-----------------------------------------------------------X

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This litigation concerns the classification of RKW Klerks' (hereinafter "RKW" or "Plaintiff") netwrap which is only used in harvesting machinery to produce round bales of hay, silage and fodder.  On importation, Customs and Border Protection ("CBP") classified RKW's netwrap under a basket tariff provision of Heading 6005, specifically subheading 6005.39.00 as a textile material.  Plaintiff claims that its netwrap is properly classified in Heading 8433 as part of harvesting machinery, specifically in subheading 8433.90.50 or, in the alternative, under Heading 8436 as part of other agricultural machinery, specifically under subheading 8436.90.00.

1

## THE IMPORTED NETWRAP IN ISSUE

RKW imports TopNet and Rondotex® netwrap which is made in Germany. It is made on a raschel knitting machine made by Karl Mayer and Company.  Kwiakista Aff't.  ¶  5.  The machines have been modified by Plaintiff's parent company with respect to the needle set up and distance holders.  Kwiatkista Aff't.   ¶ 5. This latter modification has been patented by Plaintiff's parent company. Kwiatkista Aff't.   ¶ 5.  The netwrap is manufactured in various sizes from 48 inches wide by 9,840 feet in length to 67 inches wide by 10,000 feet long. In its imported condition the netwrap is wound into a roll on a cardboard core and wrapped in plastic. Exhibit E to Kwiatkista Deposition,[1] Page 54, line 11 contains RKW Klerk's product literature which describes TopNet and Rondotex.® There are minor differences between TopNet and Rondotex.® Performance-wise they are identical with the only differences being brand name, color and packaging. Kwiatkista Aff't. ¶ 6.

The imported netwrap has a single use which is fixed with certainty at the time of importation, *i.e.*, to wrap hay or silage into round bales. Kwiatkista Aff't.  ¶  8. Schmeckeper Aff''t. ¶ 21. The netwrap is used in the U.S. as imported without any post-importation processing. Kwiatkista Aff't. ¶ 9.

The netwrap in issue is almost exclusively used in hay balers equipped with computer controlled monitoring systems which allow the hay bale operator to preset the size or weight of the bale to be wrapped before the hay baling operation begins. Kwiatkista Aff't. ¶¶ 15, 16; Schmeckpeper Aff't. ¶¶ 9,10,11.  Thus, the length or the amount of netwrap to be used for each bale is set before the bale is wrapped.

Round hay balers have only one function and that is produce round bales of hay or silage.  Schmenkelpeper Aff't. ¶ 21.  To produce commercially useable hay bales for

---

[1] Pages which are referenced in this brief to the Kwiatkista deposition are reproduced in Attached Collective Exhibit A.

animal feed or for sale, the bales must be wrapped so that they will retain their shape and will contain proper nutritional values. Kwiatkista Aff.t. ¶ 13.  Schmeckpeper Aff't. ¶¶ 15, 16, 19, 20.  Bales may be wrapped with twine, plastic or netwrap.  Schmenkelpeper Aff't. ¶ 14.  But at the present time, almost all round balers use netwrap rather than twine.  Kwiatkista Deposition, Page 106, Lines 9-13, Page 108, lines 4-14. The farmer and/or hay bale operator decides which wrapping method will be used. Kwiatkista Aff't. ¶¶ 13, 17, 18.  No matter which type of wrapping is used, the primary function of a round hay baler remains the same, *i.e.*, to produce wrapped round bales of hay or silage.  Schmenkelpeper Aff't. ¶ 22.  The type of wrapping to be used to wrap round bales is made by the farmer and/or bale operator. Schmenkelpeper Aff't. ¶ 20. Kwiatkista Deposition, Pages 121, lines 11-25 and Page 122, lines 1-3.

## THE TARIFF PROVISIONS IN ISSUE

**A. The Competing HTSUS Headings:**  CBP classified and liquidated Plaintiff's products under a basket provision, HTSUS subheading 6005.39.00 which provides for:

6005.        Warp knit fabrics (including those made on galloon knitting machines), other than those of headings 6001 to 6004:.

* * * * * *

          Of Synthetic Fabrics
* * * * * *

6005.39.00                Other printed.

Duty was assessed at the rate of 10% *ad valorem*.

Plaintiff claims that its netwrap products are properly classified under subheading 8433.90.50 as parts of harvesting machinery, including straw or fodder balers.  This duty-free subheading provides for:

8433.        Harvesting or threshing machinery, including straw or fodder balers; grass or hay mowers; machines for cleaning, sorting or grading eggs, fruit or other agricultural produce, other than machinery of heading 8437; parts thereof

* * * * * *

3

8533.9050.          Parts.[2]

In the alternative, Plaintiff claims that the imported netwrap products are properly classified as parts of agricultural machinery.  This duty-free subheading provides for:

8436          Other agricultural, horticultural, forestry, poultry-keeping or bee-keeping machinery, including germination plant fitted with mechanical or thermal equipment; poultry incubators and brooders; parts thereof:

* * * * * *

Parts

* * * * * *

8436.90.00          Other.

**B. The HTSUS General Rules of Interpretation**:  Merchandise imported into the United States is governed by the General Rules of Interpretation of the HTSUS (GRIs).  GRI 1 provides that:

> ... for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions.

GRI 2 does not apply to the classification of the netwrap in issue because it is not an incomplete or unfinished product and it is not made of multiple materials or components.  GRI 3 may apply.  This GRI states that:

> When, by application of rule 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings, classification shall be effected as follows:
>
> (a) The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

---

[2]Statistical heading 8433.90.50.25 provides for "haying machines and balers."

4

When a use provision is in play, the Additional United States Notes ("AUSN") must be consulted.  AUSN 1(a) and (c) provide that:

> 1. In the absence of special language or context which otherwise requires-
> (a) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use.
> ...
> (c) a provision for parts of an article covers covers products solely or principally used as a part of such articles, but a provision for "parts" or "parts and accessories" shall not prevail over a specific provision for such part or accessory.

## SUMMARY OF ARGUMENT

The imported netwrap in issue is properly classified as a part of harvesting machinery under HTSUS subheading 8433.90.50 and is entitled to duty-free importation. The netwrap is an agricultural product which is a finished product at the time of importation and which is used in its imported condition without further processing in the United States.  It has a single use at the time of importation which is fixed with certainty at the time of importation.  Pursuant to Note 2(b) of Section XVI Notes, HTSUS, and under long-standing customs jurisprudence, the netwrap in issue is properly classified as a part under Heading 8433, specifically subheading 8433.90.50. If not classified by the application of Note 2(b) of Section XVI Notes, it is then classified under Heading 8533 by virtue of its use or by the application of the relative specificity test of GRI 3(a).  Because the netwrap is a finished part, CBP's classification under a basket provision for fabric was wrong.

In the alternative, the netwrap is classified as a part of other agricultural machinery under HTSUS subheading 8436.90.00.

# ARGUMENT

## I.
## THIS CASE IS RIPE FOR SUMMARY JUDGMENT AS
## THERE ARE NO MATERIAL FACTS IN DISPUTE.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c).

When the dispositive issues are legal issues and the material facts are not in dispute, summary judgement is appropriate. *See Dale-Tile Corp v. United States*,116 F. Supp. 2d 1309, 1314 (Ct. Int'l Tr. 2000)(citing *Marathon Oil Co. v. United States*, 93 F. Supp. 2d 1277, 1279-80 (Ct. Int'l Tr. 2000). *See also* 10A, C. Wright, A. Miller and . Kane, *Federal Practice and Procedure* § 2725 (3d ed. 2015) .

To prevent summary judgment, the nonmoving party "must ... set out specific facts showing a genuine issue for trial." *Id.* USCIT R. 56(e)(2). A genuine issue for trial exists only "if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2518 (1986), *accord, Chemtall, Inc. v. United States*, 179 F. Supp. 3d 1200 (Ct. Int'l Tr. 2016), *aff'd*, 878 F. 3d 1012 (Fed. Cir. 2017). A triable issue is not created "[i]f the evidence is merely colorable ... or is not significantly probative ...." *Anderson, supra*, 477 U.S. at 249; *cf. Galloway v. United States*, 319 U.S. 372, 395, 63 S. Ct. 1077, 1089 (1943) ("mere speculation be not allowed to do duty for probative facts ...").

The classification decision by Customs enjoys a statutory presumption of correctness pursuant to 28 U.S.C. § 2639(a)(1), but this presumption does not apply to pure questions of law, including the question whether a moving party is entitled to summary judgment. *See Universal Elecs. Inc. v. United States*, 112 F.3d 488, 492. In addition, the statutory presumption of correctness has no effect — as a practical matter

6

— at the summary judgment stage, because "the presumption carries no force as to questions of law." *Universal Elecs, Inc. v. United States*, *supra*, at 492-93 (Fed. Cir. 1997); *see also Rollerblade, Inc. v. United States*, 112 F.3d 481, 483-84 (Fed. Cir. 1997); *Goodman Mfg., L.P. v. United States*, 69 F.3d 505, 508 (Fed. Cir. 1995). *Container Store v. United States*, 800 F. Supp. 2d 1329, 1333-1334, (Ct. Intl. Tr. 2011).

The court has an independent responsibility to determine the proper classification of a product. *Lerner N.Y., Inc. v. United States*, 908 F. Supp. 2d 1313 (Ct. Int'l Tr. 2013), *aff'd, Victoria Secret Direct, LLC v. United States*, 769 F. 3d. 1102 (Fed. Cir. 2014).  As the Court explained at 908 F. 2d 1317-1318:

> The plaintiff has the burden of establishing that the government's classification of the subject merchandise was incorrect but does not bear the burden of establishing the correct classification; instead, it is the court's independent duty to arrive at "the correct result, by whatever procedure is best suited to the case at hand." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). In making this determination, the court "must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Id.*

## II.

## CBP'S CLASSIFICATION OF NETWRAP WAS WRONG.

**A**. *HQ H017185*:  In a 2008 ruling, HQ H017185 of April 17, 2008, CBP held that "bale netwrap" was classified under HTSUS subheading 6005.90.00 as other warp knit fabrics. This ruling was not issued to Plaintiff, but it is obvious that CBP relied on it in denying Plaintiff's claimed classification.  In H017185, CBP Headquarters held that:

> Heading 6005, HTSUS, which provides for warp knit fabrics, specifically describes the bale netwrap which is warp knit fabric.  Thus, heading 6005, HTSUS, is more specific than heading 8433, HTSUS.  As such, the bale netwrap cannot be classified in heading 8433, HTSUS.

*See also* Ruling Letters NY N284368 of April 7, 2017; NY N279988 of October 6, 2016 and NY N040299 of October 8, 2008.

7

CBP's classification of the netwrap based on relative specificity was wrong. As set forth in more detail below in Point III, Section Note 2 to HTSUS Section XVI requires parts to be classified in the applicable provision of Chapter 84 without regard to relative specificity.  And even if specificity analysis is permitted, CBP failed to explain why the liquidated provision is more specific than the claimed provision and it did not consider that Heading 8433 is an *eo nomine* provision for parts of harvesting equipment as well as a use provision.  As set forth in more detail in Point V below, an *eo nomine* provision which is also a use provision is preferred over an *eo nomine* provision which is not a use provision. Moreover, a "parts" provision is preferred over the basket provision under which the netwrap was liquidated.

**B.  *CBP Rulings on the Classification of Netwrap Do Not Deserve Any Deference***:  (1)  *Since the HTSUS Provisions Are Unambiguous, The Court Should Not Give Any  Deference To CBP's Interpretation.*  The court should reject any request by defendant to defer to CBP's rulings on the classification of netwrap.  The issue of deference to an agency's interpretation of a statute only arises "[w]hen Congress has 'explicitly left a gap for an agency to fill ...'" *United States v. Mead Corp.*, 533 U.S. 218, 227, 121 S.Ct. 2164, 2171 (2001) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782 (1984)).  In contrast, the court does not reach the issue of deference when there is no ambiguity or gap in the statute:  "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron*, 467 U.S. at 842-43, 104 S.Ct. at 2781.  In determining whether the statute is silent or ambiguous, the court "employ[s] traditional tools of statutory construction ...."  *Id*. at 843 n.9, 104 S.Ct. at 2781-82 n.9.

Here, there is no gap or ambiguity in the statutory provisions and the court can decide the case using the tariff provisions in question and the HTSUS Rules of Interpretation.  *Cf. International Light Metals v. United States*, 194 F.3d 1355, 1361

(Fed. Cir. 1999) ("there is no issue of *Chevron* deference ... [where] the government has asked [the court] to rely on the plain language of [the statute]").

(2) *CBP Rulings Are Evaluated Under Mead, Not Chevron.*   Even if any degree of deference is warranted here, Customs classification rulings are not entitled to *Chevron* deference and, instead, are only entitled to "a respect proportional to [their] 'power to persuade.'"  *United States v. Mead Corp.*, *supra*, 533 U.S. at 235, 121 S. Ct. at 2172 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, (1944)).   The *Skidmore* factors regarding the power to persuade depend upon:

> The weight of [an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Id.*

As restated in *Mead, supra*, these factors include:

> The fair measure of deference to an agency administering its own statute has been understood to vary with the circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position.

*Mead, supra*, at 121 S. Ct. at 2171 (citing *Skidmore, supra*, at  323 U.S. at 139-40).

Here, HQ 017185, *supra*, does not deserve any *Skidmore* deference because: (i) CBP has consistently classified netwrap under multiple tariff provisions instead of having a consistent and uniform position, (ii) in HQ 017185 CBP failed to discuss why Heading 6005 is more specific than Heading 8433, (iii) CBP failed to discuss the impact of *Ludvig Svensson, Inc.,* 62 F. Supp. 2d 1171 (Ct. Int'l Tr. 1999), on the classification, and (iv) CBP failed to consider that Heading 8433 is a use provision that trumps Heading 6005.  These reasons are explained more fully in points (3) and (4) below.

(3) *CBP Has Been Inconsistent in Classifying Netwrap Products:* For at least 20 years, CBP has classified netwrap products under various HTSUS provisions, and this inconsistency alone, mandates that deference not be afforded to any CBP ruling

regarding the classification of netwrap products.  *See* NY 859390 of February 14, 1991 and NY G87841 of March 9, 2001 where the netwrap fabric was classified under subheading 6002.43.00; NY F82799 of March 6, 2000 where the netwrap fabric was classified under subheading 5407.20.00; and HQ H017185, *supra*, NY N279988 of October 6, 2016, NY N040299 of October 8, 2008, and NY N284368 of April 7, 2017, where the netwrap was classified under subheading 6005.90.90. Deference is not provided to CBP decisions when it has held inconsistent positions. *Cal. Ind. Prods. v. United States*, 436 F. 3d 1341, 1348 (Fed. Cir. 2006).

Also, CBP Headquarters changed its position with respect to the classification of synthetic fabrics used with agricultural machinery in HQ H219598 of January 5, 2016. In this ruling, insect nets made of polyethylene woven fabric were classified upon entry under subheading 5407 as "Woven fabrics of synthetic yarn."  The importer challenged that classification arguing that the screens were parts of agricultural machinery of Heading 8436.  Relying heavily on *Ludvig Svensson v. United States*, *supra*, and the cases cited therein, CBP held that the insect screens were properly classified under 8436 as parts of agricultural machinery.

(4)  *HQ H017185 Does Not Deserve Any Deference Under Mead*:  Customs' classification decisions are entitled to "a respect proportional  to [their] 'power to persuade,'" but these decisions do not merit Chevron deference. *United States v. Mead Corp*., *supra* at 235.  In sum, under the *Skidmore/Mead* factors, CBP Headquarters in HQ H017185, *supra*, is wholly unpersuasive.  It blithely ignored the impact of *Ludvig Svensson v. United States*, *supra*, on the classification of a textile product used as a part of agricultural machinery, and it did not discuss why Heading 6005 was preferred over Heading 8433 or was proper in light of the fact that Heading 8433 is a use *eo nomine* tariff provision which usually is preferred over an non-use *eo nomine* provision.

10

**III.**
**PURSUANT TO THE SECTION NOTES TO SECTION XVI, HTSUS,**
**PARTS OF HARVESTING MACHINES ARE CLASSIFIED UNDER HEADING 8433.**

Section XVI Note 2 of the HTSUS provides that:

2.      Subject to note 1 to this section, note 1 to chapter 84 and to note 1 to chapter 85, parts of machines (not being parts of the articles of heading 8484, 8544, 8545, 8546 or 8547) are to be classified according to the following rules:

(a) Parts which are goods included in any of the headings of chapter 84 or 85 (other than headings 8409, 8431, 8448, 8466, 8473, 8487, 8503, 8522, 8529, 8538 and 8548) are in all cases to be classified in their respective headings;

(b) Other parts, if suitable for use solely or principally with a particular kind of machine, or with a number of machines of the same heading (including a machine of heading 8479 or 8543) are to be classified with the machines of that kind or in heading 8409, 8431, 8448, 8466, 8473, 8503, 8522, 8529 or 8538 as appropriate. However, parts which are equally suitable for use principally with the goods of headings 8517 and 8525 to 8528 are to be classified in heading 8517;

(c) All other parts are to be classified in heading 8409, 8431, 8448, 8466, 8473, 8503, 8522, 8529 or 8538 as appropriate or, failing that, in heading 8487 or 8548.[3]

Here, pursuant to Note 2(b) of Section XVI, the netwrap in issue is classified under Heading 8433 because it is a part of a machine classified under that Heading, *i.e* harvesting machinery.

Consistent with Section Note 2, The *Explanatory Notes to the Harmonized Commodity and Description Coding System* (the "*Explanatory Notes*") to Heading 8433, at XVI-8433-4 states that:

Subject to the general provisions regarding the classification of parts (see the General Explanatory Note to Section XVI), parts of machines of this heading are also classified here.

The *Explanatory Notes* at XVI-4 further provide that, in general, parts:

---

[3] Note 1 (g) of Section XVI relates to parts of general use and Note 1 of Chapter 84 and 85 describe goods not classified in these chapters.

11

> ... which are suitable for use solely or principally with a particular machine or apparatus ... or a group of machines or apparatus falling in the same heading, are classified in the same heading as those machines nor apparatus, subject, to the **exclusions** mentioned in Part (I) [emphasis in original].

The *Explanatory Note* at XVI-4 explains that there are separate headings for a number of parts.

For over 25 years, CBP has recognized that parts of harvesting machines are properly classified under the parts provision of Heading 8433. *See* HQ H153035 of June 25, 2012; HQ 954495 of October 20, 1993; HQ 087849 of May 22, 1991; N305543 of August 22, 2019; N297986 of July 17, 2018 and NY N096895 of December 29, 2009.

CBP's position is also undermined by the court's decision in *Brother Int'l Corp. v. United States*, 248 F. Supp. 2d 1224 (Ct. Int'l Tr. 2002).  In that case, the importer claimed that its goods were properly classified under Heading 8473 as a part, whereas CBP claimed the the goods were classified under Heading 3702.  CBP argued that by operation of GRI 3(a) under the rule of relativity specificity the part is classified under heading 3702 as photographic film.  The *Brother* court rejected that argument and held that the imported goods were properly classified as a part under Heading 8473 by operation of GRI 1 and Section XVI Note 2(b), HTSUS.  The *Brother* court at 1233 stated that:

> Customs claims that even if the PC 101 is *prima facie* classifiable both as a part of MFC machines and as photographic film, in accordance with QMS and GRI 3(a) it must be classified as the latter because that heading provides the more specific description. *See QMS*, 19 C.I.T. at 561, 563.
>
> As discussed infra, the GRI must be applied in numerical order. *See North Am. Processing Co. v. United States*, 236 F.3d 695, 698 (Fed. Cir. 2001). Thus, if the application of GRI 1 provides the proper classification, the Court need not apply the relative specificity provision of GRI 3(a). HN15 GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." Note 2(b) to Chapter XVI provides that "other parts, if suitable for use solely or principally with a particular kind of machine, . . . are to be classified with

12

the machines of that kind or in heading . . . 8473 . . . as appropriate."
Because the relative section note provides that goods classifiable as
parts of MFC machines shall be classified as such, the Court need not
perform a relative specificity analysis under GRI 3(a).

And the court concluded that 248 F. Supp. 2d at 1233:

... the subject merchandise must be classified under subheading
8473.30.50, HTSUS, as a "part[] . . . suitable for use . . . principally with . .
. machines of heading [8471]: not incorporating a cathode ray tube:
other."

*See also Mita Copystar Am. v. United States*, 160 F. 3d 710 (Fed. Cir. 1998)

which concerned the classification of toner cartridges used in photocopiers. There, the

Federal Circuit reversed the lower court's decision which held the toner cartridges were

classified under Heading 3707 and held that they were properly classified as parts of

photocopying machines. The Federal Circuit's decision is another example of the

proper interpretation of Note 2 of Section XVI relative to Headings which are outside

Section XVI.

The Federal Circuit in *Mita Copystar,* at 713, *supra*, also rejected CBP's reliance

of *American Express Co. v. United States*, 29 C.C.P.A 87, C.A.D. 175 (1941) as it

relates to parts and shows that it is misplaced:

With respect to the "parts" issue, the government contends that toner
cartridges cannot be considered parts of photocopy machines because
they are like the film pack components that were held not to be parts of a
camera in *American Express v. United States*, 29 C.C.P.A. 87 (1941).
That decision, however, does not help the government. The court in the
*American Express* case ruled as it did because it concluded that exposed
film is "a product of the camera, not an integral part of such camera." *Id.
at 93*. Moreover, the court noted that Congress's decision to afford
separate tariff treatment to film indicated that Congress did not want film
to be considered as a "part" of a camera, regardless of whether it was
packaged in reels, rolls, or packs. *See id. at 94-95*. Analogizing to a
typewriter, the court noted that a ribbon spool carrying a roll of print ribbon
is a "part" of a typewriter, while the paper on which the typewriter imprints
letters is not a part of the typewriter, but "mere material upon which the
typewriter is designed to operate." *Id. at 95.* Like the typewriter ribbon
spool, the toner cartridge delivers the substance used for printing on
paper and thus plays an essential role in the functioning of the machine.
Unlike typewriter paper, copier paper, or photographic film, toner is not

ordinarily regarded as the material upon which the photocopy machine operates. Accordingly, the *American Express* case does not undermine the trial court's conclusion that Mita's toner cartridges are "parts" of a photocopying apparatus as that term is used in subheading 9009.90.00.

Finally, in HQ H017185, *supra*, CBP states that the netwrap in issue is not similar to the printer cartridges of *Brother*, the toner cartridges of *Mita Copystar* or the screens in *Ludvig Svensson* because "[It] is not imported with the machinery in which it will be subsequently used," giving the impression that the parts in *Brother*, *Mita Copystar* and *Ludvig Svensson* were imported with the machines in which they were used. Nothing is further from the truth, as the goods of *Brother*, *Mita Copystar* and *Ludvig Svensson* were not imported with the machines in which were ultimately used but were imported as individual products.

**IV.**
**UNDER THE *LUDVIG SVENSSON* CASE,**
**THE NETWRAP IS A "PART" OF HARVESTING MACHINERY.**

Based upon this Court's 1999 decision in *Ludvig Svensson (US) Inc. v. United States, supra,* the imported netwrap is properly classified as a part of harvesting machinery. Indeed, this case is *Ludvig Svensson* revisited.

The issue in *Ludvig Svensson* was the classification of insect and environmental screens used with greenhouses. The government liquidated the screens under two textile provisions, Headings 5903 and 6002, and Plaintiff claimed that an agricultural provision, Heading 8436, was the proper classification.[4] In the current litigation, the Government liquidated Plaintiff's netwrap under a textile Heading, Heading 6005, and Plaintiff claims that an agricultural heading, Heading 8433 (or in the alternative heading

---

[4] In *Ludvig Svensson, supra,* the greenhouse screens were liquidated by the Government under subheading 5903.9025 as "Textile fabrics impregnated, coated, covered or laminated with plastics ... other" and subheading 6002.43.00 as "other knitted or crocheted fabrics ... Other fabrics, wrap knit ... other man-made fabrics" respectively. Plaintiff claimed the screens were parts of agricultural machinery under Heading 8436.

14

8436) is the proper tariff provision for its netwrap.[5]  In *Ludvig Svensson, supra*, the court held that the agricultural provision was the proper tariff classification for the environmental and insect screens.  The reasoning set forth in *Ludvig Svensson, supra*, applies in this litigation.

As in *Ludvig Svensson*, the issue here is whether the imported netwrap is a material, *i..e.*, warp knit fabrics, or a part of agricultural machinery for baling hay or straw.  For the reasons set forth in the court's decision in *Ludvig Svensson, supra*, the netwrap in issue is properly classified as a part of agricultural machinery for baling fodder.  The *Ludvig Svensson* court, 62 F. Supp. 2d at 1178, opined that:

> This case, then, turns on how advanced are the screens in their condition as imported. If they are sufficiently advanced so as to be considered parts of agricultural equipment, they will properly be classified as such, according to Congressional intent.

> Rule 1(c) of the Additional United States Rules of Interpretation provides:

>> ... a provision for parts of an article covers products solely or principally used as parts of such articles but a provision for "parts" or "parts and accessories" shall not prevail over a specific provision for such part or accessory.

The *Ludvig Svensson* court found *Bauerhin Technologies Ltd. Partnership v. United States*, 110 F. 3d 774 (Fed. Cir. 1997) to be instructive in identifying what is a "part" for tariff purposes.

> In *Bauerhin* the court considered an appeal from this court regarding the classification of imported canopies. *Id. at 775*. In that case, the importer argued that the canopies should have been classified as parts of car seats, "notwithstanding the fact that [the canopies] are not necessary to the operation of the car seats to which they are attached" and were imported separately. *Id*. at 776. In holding that the canopies were part of the car seats, the court articulated a two part test to differentiate parts from other articles.

---

[5] The specific subheadings is this case are the Government liquidated the netwrap under subheading 6005.39.00 for "warp knit fabrics ... other than those of headings 6001 to 6004. .. Other printed."  Plaintiff claims that subheading 8433.90.50 for "Harvesting machinery ... including straw or hay balers ,... parts"properly describe the netwrap or in the alternative subheading 8436.90.00 for "agricultural machinery ... other... parts" also describe the netwrap.

First, the court must determine whether the imported item is "an integral, constituent, or component part, without which the article to which it is to be joined, could not function as such article." *Id.* at 778. (quoting *United States v. Willoughby Camera Stores*, 21 C.C.P.A. 322, 324 (T.D. 46851, 1933)). Second, the court must establish whether the imported item is dedicated solely for use with the article in question. 110 F.3d at 778 (following the holding in *United States v. Pompeo*, 43 C.C.P.A. 9 (1955)).

The *Ludvig Svensson* court held that the first part of the test was satisfied because:

In the case at bar, the environmental screens and the plastic laminated screens used as greenhouse roofs are an integral part of shade and heat retention systems and of the greenhouses themselves. Insect screens are also an integral part of the greenhouses themselves, even though they do not play a part in shade and heat retention systems. The screens permit greenhouse operators to control temperature and humidity by regulating the amounts of shade and heat retention, and to control the presence or absence of insects in the greenhouse, all for the effective cultivation and protection of plants.

It also held, at 1178, that the second part of the test was satisfied because:

The screens are in an advanced state of manufacture, and have no other commercial uses.

In fact, CBP agrees with the principles set forth in *Willoughby, supra*, and *Pompeo, supra,* and other decisions defining a "part" for customs purposes. As recently stated in a recent revocation ruling, HQ H287875 of January 25, 2021 (published in 55 Customs Bull., No. 5 (February 10, 2021):

In *Bauerhin Techs. Ltd. P'ship. v. United States*, 110 F.3d 774 (Fed. Cir. 1997), the court identified two distinct lines of cases defining the word "part." Consistent with *United States v. Willoughby Camera Stores, Inc.*, 21 C.C.P.A. 322, 324 (1933) (citations omitted), one line of cases holds that a part of an article "is something necessary to the completion of that article. . . . [W]ithout which the article to which it is to be joined, could not function as such article." The other line of cases evolved from *United States v. Pompeo*, 43 C.C.P.A. 9, 14 (1955), which held that a device may be a part of an article even though its use is optional and the article will function without it, if the device is dedicated for use upon the article, and, once installed, the article will not operate without it. The definition of "parts" was also discussed in *Rollerblade, Inc. v. United States*, 282 F.3d

16

1349, 1353 (Fed. Cir. 2002), wherein the United States Court of Appeals for the Federal Circuit ("CAFC") defined parts as "an essential element or constituent; integral portion which can be separated, replaced, etc." This line of reasoning has been applied in previous CBP rulings.

The other rulings cited were HQ H255093, dated January 14, 2015; HQ H238494, dated June 26, 2014; and HQ H027028, dated August 19, 2008.

Here, the netwrap fully satisfies the definition of a "part" set out originally in *Willoughby* and *Pompeo*, reaffirmed in *Ludvig Svensson* and recent CBP rulings. The netwrap is an integral part of a hay baler because a hay baler could not make useable round bales without the netwrap. Moreover, bales wrapped in netwrap are preferred to those wrapped in twine. Schmeckpeper Aff't. ¶ 19. The netwrap has no other commercial use and is in an advanced state of manufacture. Kwaitkista Aff.t ¶ 5. The only function of the netwrap in issue is to make feedstock for livestock. Schmeckpeper Aff't. ¶ 15 . Also, there is no post-importation processing prior to use of the netwrap. Kwaitkista Aff.t ¶ 9. Thus, on the basis of *Ludvig Svensson, supra*, the netwrap in issue is properly classified as a part of baling machinery.

## V.

**IF BOTH HEADINGS 6005 AND 8433 *PRIMA FACIE* DESCRIBE THE IMPORTED MERCHANDISE, HEADING 8433 PREVAILS**

**A. *When an Eo Nomine Provision and a Use Provision Each Describe the Imported Merchandise, Classification Under the Use Provision Is Preferred***:   If the classification of the netwrap in issue cannot be resolved by virtue of Section Notes to Section XVI, then it is classified under Heading 8433 because it is well-settled customs jurisprudence that a use provision is preferred over an *eo nomine* provision. *Orlando Food Corp. v. United States*, 140 F. 3d 1437 (Fed. Cir. 1998). The court stated at 1441:

According to GRI 3(a), when a product is prima facie classifiable under two or more headings, "the heading which provides the most specific description shall be preferred to headings providing a more general description." GRI 3(a).  Therefore, classification of the product turns on which of these two provisions is the more specific. Under this so-called rule of relative specificity, we look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty. *See United States v. Siemens Am., Inc*., 68 C.C.P.A. 62, 653 F.2d 471, 477 (CCPA 1981); *United States v. J. Gerber & Co.*, 58 C.C.P.A. 110, 436 F.2d 1390, 1392 (CCPA 1971). Our analysis is also guided by the general rule of customs jurisprudence that, "in the absence of legislative intent to the contrary, a product described by both a use provision and an *eo nomine* provision is *generally* more specifically provided for under the use provision."

In  *Allstar Mktg. Group, LLC v. United States*, 211 F. Supp. 3d 1319, 1332-1333 (Ct. Intl. Tr. 2017), the court summarized the principles concerning the use of an *eo nomine* provision:

In *GRK Canada*, the Federal Circuit explained that use may be considered in classifying an article pursuant to an *eo nomine* provision when (1) the use of the subject article is an important aspect of its identity, and consequently the article's classification; or, as relevant here, when (2) "determining whether [the subject article] fits within the classification's scope." *GRK Canada*, 761 F.3d at 1358-59 (internal citations omitted) (considering use to determine under which eo nomine tariff provision to classify certain screws); see also *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1367-69 (Fed. Cir. 2011) (considering such factors as design, use or function, and sales and marketing literature to determine whether the inclusion of a hydration component with a cargo component rendered the subject article beyond the scope of an eo nomine provision for backpacks); *Mast Industries, Inc. v. United States*, 9 CIT 549, 552-53 (1985), aff'd 786 F.2d 1144 (Fed. Cir. 1986) (subject imports were designed, manufactured, marketed and used as nightwear," and, thus, were not classifiable under the eo nomine provision covering "shirts"); *United States v. Quon Quon* Co., 46 C.C.P.A. 70, 73 (1959) (considering use to determine whether "certain rattancore, woven articles" are baskets) ("While unhesitatingly granting the truth of the contention that 'baskets' in the tariff act provides for baskets *'eo nomine,'* this does not help us in the least to decide whether the imported articles are baskets."). Factors guiding this court's determination whether the Snuggie® is classifiable as a garment include (1) its "physical characteristics" and "features," (2) "how it was designed and for what objectives," (i.e., its intended use), and (3) "how it is marketed." *GRK Canada*, 761 F.3d at 1358.

**B**: *Heading 8433 Is a Use Provision*.    Heading 8433 provides for:

> Harvesting or threshing machinery, including straw or fodder balers; grass or hay mowers; machines for cleaning, sorting or grading eggs, fruit or other agricultural produce, other than machinery of heading 8437; parts thereof

Hay baling machines are agricultural machines.[6]  Kwiatkista Aff't. ¶ 14. Thus, for an item to classified in a provision under Heading 8433 it must be used in harvesting or thrashing which are both agricultural pursuits.

The *Explanatory Notes* are often used by the courts to interpret the scope of a tariff provision even though it is not recognized as United States law. *E.T. Horn Co. v. United States*, 367 F.3d 1326, 1329 (Fed. Cir. 2004) (citing *Len-Ron Mfg. Co. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003).   The *Explanatory Notes* state that Heading 8433 covers machines for the following operations at XVI-8433-1:

> Harvesting of agricultural crops (e.g., reaping, croplifting, gartering, picking, thrashing, binding or bundling). Hay or grass mowers, and straw or fodder balers are also included in this heading.

The Federal Circuit has held that use may be an appropriate consideration when examining classification under *eo nomine* provisions. *See GRK Can., Ltd. v. United States*, 761 F.3d 1354, 1358-1359 (Fed. Cir. 2014). The Federal Circuit has also held that use may be considered when determining the commercial meaning of a term in an *eo nomine* provision when the merchandise named in that provision "inherently suggests a type of use," or when determining whether a particular article "fits within the classification's scope." *Id*. at 1358-59 (citations omitted).

---

[6] CBP defines the word "agriculture" as "The science, art, and practice of cultivating the soil, producing crops, and raising livestock."   CBP Informed Compliant Publication entitled: *The Agricultural Use Provisions* (2015), at 11.  Clearly, baling hay for livestock fits within this definition.

The court also considered "the subject article's physical characteristics, as well as what features the article has for typical users, how it was designed and for what objectives, and how it is marketed." *GRK supra*, at 1358 (citing *CamelBak Products, LLC v. United States*, 649 F.3d 1361, 1367-69 (Fed. Cir. 2011), and *Casio, Inc. v. United States*, 73 F.3d 1095, 1098 (Fed. Cir. 1996)).   Here, Heading 8433 unquestionably suggests a use.

A heading that does not include the term "use," nevertheless, may still be controlled by use,  when the relevant subheadings depend on use and the chapter, section, and *Explanatory Notes* suggest the heading is controlled by use. *See StoreWALL, LLC v. United States*, 644 F.3d 1358, 1365 (Fed. Cir. 2011).

It has been a long-standing practice that the courts have held that goods which are used to bale hay are classified duty-free under an agricultural provision. Seventy years ago in *Wilbur-Ellis Co. v. United States*, 26 C.C.P.A 403, 409, C.A.D 47 (1939), the court held that steel bale wire was properly classified as an agricultural implement. ("It is the purpose of Congress to carry out its established policy of encouraging agriculture by admitting imported steel bale tires free of duty as agricultural implements. As duty-free agricultural implements are generally manufactured from dutiable materials there is no anomaly in holding steel bale ties from dutiable material to be free of duty as agricultural implements.")

In *Geo. WM. Rueff v. United States*, 28 Cust. Ct. 84, C.D. 1392 (1952) certain bale twine designed to meet the specifications of an automatic hay-baling machine and was chiefly used with this machine were held to be baling twine used with agricultural machinery and entitled to duty-free entry as an agricultural implement.  *Cf. Frank W. Winne & Sons v. United States*, 72 Cust. Ct. 62, C.D. 4505 (1974), where the court distinguished wrapping and tying twine from twine used for agricultural purposes. These precedential cases alone dictate that the net warp in issue is classifiable under the provisions of Heading 8433.

20

Moreover, Heading 8433 is a use provision and the provision for harvesting machines is well beyond the scope of the provision for wrap knit textile fabrics because the provision for warp knit fabrics does not even suggest such a use.   Accordingly, Heading 8433 is the proper classification of Plaintiff's netwrap products.

**C.** ***If Both Headings 6005 and 8433 Prima Facie Describe the Imported Merchandise, And Its Use Does Not Control Classification, Then Classification is Determined by the Application of GRI 3 and Heading 8433 Is More Specific***.  If the netwrap is not classified in Heading 8433 by operation of the Notes to Section XVI (*supra* Point III) and use does not control it classification (*supra* Point V (A)-(B)), then the netwrap is *prima facie* described by two headings: Heading 6005 as "warp knit fabrics" and Heading 8433 as "Harvesting ... machinery, including straw of fodder balers: ... parts thereof."

GRI 3 applies "when ... goods are*, prima facie,* classifiable under two or more headings," and under GRI 3 classification is determined if possible by application the rule of "relative specificity" in GRI 3(a). *See Well Luck Co. v United States*, 887 F.3d 1106 (Fed. Cir. 2018), *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, (Fed. Cir. 2013) and  *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, (Fed. Cir.1999).  Under this rule of "relative specificity," the Federal Circuit, citing *Orlando Food Corp. v. United States, supra,*140 F. 3d at, 1441, stated that:

> ... we look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty.

Between Heading 8433 and Heading 6005 it is manifestly obvious that Heading 8433 provides a more specific description of the netwrap, *i.e*., a part of harvesting machinery, than Heading 6005, *i.e*., warp knit fabrics. The fabrics described by Heading 6005 can have a variety of uses whereas the goods in issue have only a single application, *i.e*., as a part of harvesting machines of Heading 8433.  Kwiatkista Aff't.  ¶

21

8;  Schmeckpeper Aff't ¶ 21.  Without question, Heading 8433 covers a narrower scope of products than Heading 6005. *See Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1374 (Fed. Cir. 2009), where the court reiterated the holding in *Orlando Food, supra*, and held that:

> ... the "heading [that] is more difficult to satisfy . . . [is] more specific" and holding that a heading that "covers only processed products" "encompasses a narrower range of items and uses" than a heading that "covers a large variety of processed and unprocessed fiberboard products."

*See also Mondiv, Div. Of Lassonde Specialties Inc. v. United States*, 329 F. Supp. 1331, 1343 (Ct. Int'l Tr. 2018), where the court held that a provision for sauces was more specific than the provision for prepared and preserved vegetables because

> [T]he requirements of the sauce provision are more difficult to satisfy because preparing a sauce involves some degree of processing or adding ingredients. The sauce provision requires processing of ingredients to make a liquid or semisolid substance, and requires the addition of numerous ingredients that together would enhance the flavor of food.

Clearly, the netwrap in issue is specifically designed for baling hay and silage. Its sales and marketing literature identify such use, and its function and actual use.   It is not advertised or sold as a knit wrap fabric for a general or specific use other than to wrap hay bales. *See* Exhibit E to Kwiatkista Deposition which contains Plaintiff's trade literature.

Warp knit fabrics have multiple uses such as in the following industries. Warp Knitted Fabric is used for many types of sectors and applications. Such as:

● Inner wears (brassieres, panties, camisoles, girdles, sleep wear, hook & eye tape.)

● Apparel (sportswear lining, track suits, leisure wear and safety reflective vests.)

● Household (mattress stitch-in fabrics, furnishing, laundry bags, mosquito nets, fish nets.)

- Shoes (inner lining and inner sole lining in sports shoes and industrial safety shoes.)
- Automotive (car cushion, head rest lining, sun shades and lining for motorbike helmets.)

- Industrial (pvc/pu backing, production masks, caps and gloves (for the electronic industry.)[7]

Thus, under GRI 3(a), subheading 8433.90.50 provides a more specific description of Plaintiff's netwrap products than the basket provision subheading 6005.39.00.  A basket provision is "intended as a broad catch-all to encompass the classification of articles for which there is no more specifically applicable subheading." *EM Indus., Inc. v. United States*, 22 CIT 156, 165, 999 F.Supp. 1473, 1480 (1998).  *See also Amcor Flexibles Kreuzlingen AG v. United States*, — F. Supp. 3d — (Ct. Int'l Tr. 2022) ( Slip Op. 22-15, decided February 22, 2022).

   D. ***The Parts Provision in Subheading 8433 Is Preferred Over the Basket Provision in Subheading 6005.***  The specific subheading in which Plaintiff's netwrap was classified was subheading 6005.39.00, a basket provision, which provides for:

6005.          Warp knit fabrics (including those made on galloon knitting machines), other than those of headings 6001 to 6004:.
                         * * * * * *
               Of Synthetic Fabrics
                   * * * * * *
6005.39.00               Other printed.

The only requirement for an article to be classified under this subheading is that it be a knit warp fabric other than those of Headings 6001 to 6004 and be comprised of other synthetic fabric and be printed.  As shown above, subheading 6005.39.00 can apply to multiple products and such is a residual or basket provision which is "intended as a broad catch-all to encompass the classification of articles for which there is no more specifically applicable subheading." *EM Indus., Inc. v. United States*, 22 CIT 156, 165,

---

[7] *See* http://www.ellerbaek.dk/fabrics-options/warp-knit-fabrics.

999 F.Supp. 1473, 1480 (1998).  *See also Amcor Flexibles Kreuzlingen AG v. United States*, *supra*.

It is well-settled law that a "parts" provision prevails over a "basket" provision. *See e.g., Ideal Toy Corp. v. United States*, 433 F. 2d 801 (58 C.C.P.A. 9, C.A.D. 996 (1970); *Beacon Cycle & Supply Co. v. United States*, 458 F. Supp. 813 (Cust. Ct. 1978).  Thus, subheading 8433.90.50 is the proper provision under which the netwrap in issue is classified.

## VI.
## IN THE ALTERNATIVE, THE NETWRAP IS CLASSIFIABLE
## AS A PART OF AGRICULTURAL MACHINERY IN HEADING 8436.

The preceding analysis in this brief establishes that the imported netwrap is classifiable as a "part" of agricultural machinery.  Plaintiff's principal claim is that the netwrap is classified under Heading 8433, specifically under subheading 8433.90.50.

This claim rests on the premise that baling machinery is classifiable as harvesting machinery in Heading 8433.  In the alternative, if baling machinery is not harvesting machinery, it is "other" agricultural machinery classifiable in heading 8436, HTSUS for the reasons set forth in *Ludvig Svensson, supra*.  These include (1) the netwrap is manufactured on specially designed knitting equipment, (2) jurisprudence favors duty-free treatment of agricultural equipment, (3) it is dedicated to a single use and that is exclusively with agricultural equipment, (4) the criteria of *Willoughby, supra*, and *Pompao, supra*, are satisfied, and (5) there is no further processing in the United States after importation.  If so, the netwrap is classifiable under HTSUS subheading 8436.90.00 as parts of other agricultural machinery.

24

**CONCLUSION**

For the forgoing reasons, RWK's netwrap products are properly classified as parts of harvesting machinery under HTSUS subheading 8433.90.00, or in the alternative under HTSUS subheading 8436.90.00 as parts of agricultural equipment.

Respectively Submitted,


Simons & Wiskin
Attorneys for Plaintiff

By:    /s/ *Philip Yale Simons*
       Philip Yale Simons
       Jerry P. Wiskin

       98 Craig Road
       Manalapan, NJ 07726
       Tel: 732-316-2300
       Fax: 732-316-2365
       Email: pys@simonswiskin.com

Dated: March 15, 2022

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure Rule 2(B)(2), I hereby certify that Plaintiff RWK Klertks' Brief in Support of its Motion for Summary Judgment contains 8030 words, excluding those portions that do not count toward the word limitation, as determined by the word count feature of WORDPERFECT X5 and, thus, is in compliance with the Court's Chambers Procedures.

/s/ Philip Yale Simons
Philip Yale Simons

## CERTIFICATE OF SERVICE

I, Philip Yale Simons, hereby state that I am a member of the Firm of SIMONS & WISKIN, attorneys for RKW Klerk's, Inc., and that on March 15, 2022 I served a copy of the Plaintiff's Motion for Summary Judgment, Statement of Material Facts Not in Issue and Brief in Support Thereof to:

> Elisa S. Solomon, Esq.
> Department of Justice
> Commercial Litigation Branch - Civil Division
> International Trade Field Office
> 26 Federal Plaza
> New York, NY 10078

by depositing copies of said opposition in a U.S. Postal Service mailbox, in a sealed envelope, postage prepaid.

/s/ Philip Yale Simons