## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

RKW KLERKS INC.

                    Plaintiff,

         v.                                    Court No. 20-00001

UNITED STATES,

                    Defendant.

## ORDER

Upon consideration of defendant's cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, other papers on file, and upon due deliberation, it is hereby

ORDERED that defendant's cross-motion for summary judgment is hereby granted; and it is

ORDERED that plaintiff's motion for summary judgment is hereby denied; and it is further

ORDERED that judgment is entered for defendant and this action is dismissed.


_____
                    JUDGE

Dated: _____
         New York, New York

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| RKW KLERKS INC.<br><br>                    Plaintiff,<br><br>        v.<br><br>UNITED STATES,<br><br>                    Defendant. | Court No. 20-00001 |

## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, defendant, United States, respectfully moves for an order granting defendant's cross-motion for summary judgment, denying plaintiff's motion for summary judgment, and dismissing this action. The reasons for defendant's cross-motion are set forth in the accompanying memorandum, defendant's response to plaintiff's Rule 56.3 statement of facts not in dispute, and defendant's Rule 56.3 statement of undisputed materials facts.

WHEREFORE, defendant respectfully requests that an order be entered granting defendant's cross-motion for summary judgment, denying plaintiff's motion for summary judgment, entering judgment for defendant, dismissing this action, and granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Of Counsel:                               Principal Deputy Assistant Attorney General

Fariha Kabir                              PATRICIA M. McCARTHY
Office of the Assistant Chief Counsel     Director
International Trade Litigation
U.S. Customs and Border Protection        /s/ Justin R. Miller
                                          JUSTIN R. MILLER
                                          Attorney-In-Charge
                                          International Trade Field Office

                                          /s/ Aimee Lee
                                          AIMEE LEE
                                          Assistant Director

                                          /s/ Elisa S. Solomon
                                          ELISA S. SOLOMON
                                          Trial Attorney
                                          Department of Justice, Civil Division
                                          Commercial Litigation Branch
                                          26 Federal Plaza – Suite 346
                                          New York, New York 10278
                                          (212) 264-0583

                                          *Attorneys for Defendant*

Dated: May 10, 2022
        New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| RKW KLERKS INC. | |
| Plaintiff, | |
| v. | Court No. 20-00001 |
| UNITED STATES, | |
| Defendant. | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## <u>RULE 56.3 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, defendant, United States, responds to the Rule 56.3 statement of facts not in dispute submitted by plaintiff RKW Klerks Inc's (RKW), as follows:

1.    Admits.

2.    For the first sentence, objects to the phrase "on the same date" as being overly vague and ambiguous.  On this basis, we lack the knowledge or information to admit or deny this portion of the statement.  Admits the remainder of the first sentence.  Denies the second sentence and avers that plaintiff filed Protest No. 1601-19-100866 via ACE Portal on November 12, 2019 and that plaintiff filed a request for accelerated disposition dated November 12, 2019.  *See* Entry Documents, ECF No. 15-1, p.5.  Denies that this paragraph is supported by plaintiff's citation to ¶ 2 of the Complaint and Answer.

3.    Admits, but denies that this paragraph is supported by plaintiff's citation to ¶ 3 of the Complaint and Answer.

4.    Objects to the allegations in this paragraph on the basis that they consist of legal argument and/or conclusions of law to which no response is required.  Denies that this paragraph is supported by plaintiff's citation to ¶ 4 of the Complaint and Answer.

5.      Denies that the "net wrap in issue" was liquidated but avers that CBP liquidated Entry No. 322-1912652-5 and classified merchandise identified as "TopNet" and "Rondotex" under subheading 6005.39.00, Harmonized Tariff Schedule of the United States ("HTSUS"), at the rate of 10.0% *ad valorem*.  Compl. ¶ 13 (ECF No. 6); Answer ¶ 13 (ECF No. 13).  Admits that the text of subheading 6005.39.00, HTSUS, is accurately excerpted in this paragraph, except that the word "fabric" should be "fabrics."

6.      Admits this statement to the extent "the entry" is intended to refer to Entry No. 322-1912652-5.  *See* Entry Documents, ECF No. 15-1, p.5.  Denies that it is supported by plaintiff's citation to ¶ 5 of the Complaint and Answer.

7.      Admits that all liquidated duties on Entry No. 322-1912652-5 were paid to CBP prior to commencement of this action.  Objects to the remaining allegations in this paragraph on the basis that they consist of legal argument and/or conclusions of law to which no response is required.  Denies that this statement is supported by plaintiff's citation to ¶ 6 of the Complaint and Answer.

8.      Admits that the commercial invoices in Entry No. 322-1912652-5 describe merchandise as "TopNet" and "Rondotex" imported by RKW Klerks and that this merchandise is commonly referred to as net wrap.  Admits this statement is supported by Kwiatkista Aff. ¶ 6 but denies that it is supported by plaintiff's citation to ¶ 7 of the Complaint and Answer.

9.      Admits that this statement is supported by Kwiatkista Aff. ¶ 9, but denies that it is supported by Kwiatkista's deposition reflected in the transcript on page 36, line 20 and page 71, lines 17-22.  Avers that "TopNet" and "Rondotex" in Entry No. 322-1912652-5 are finished products that are imported in packaging to be sold to customers.  *See* Kwiatkista Dep., p. 39 at 6-13.

10.     Denies that this paragraph accurately sets forth Kwiatkista Aff. ¶ 8.  Avers that Kwiatkista Aff. ¶ 8 states that "TopNet and Rondotex only have one use and that is use in a round baling machine to wrap round bales."  Admits that the function of "TopNet" and 'Rondotex" is to bind and secure crops in round bale form after the round baling machine has made the bales, and that a round baling machine is used to bind round bales with net wraps.

11.     Objects to the statement "RKW Klerk's netwrap's use and identity is fixed with certainty" as being overly vague and ambiguous.  On this basis, we lack the knowledge or information to admit or deny this portion of the statement.  Admits that the net wraps in Entry No. 322-1912652-5 do not undergo further manufacturing following importation.  Denies that this paragraph is supported by plaintiff's citation to Kwiatkista Aff. ¶ 8.

12.     Objects to the phrase "further advancement" as being overly vague and ambiguous. On this basis, we lack the knowledge or information to admit or deny this portion of the statement. Otherwise, admits.

13.     Admits this statement and that it is supported by Kwiatkista Aff. ¶ 14, and the transcript of the Kwiatkista deposition at p. 59, lines 2-6.  Denies that plaintiff's citation to "CBP Informed Compliance Publication: The Agricultural Use Provisions (2015)" supports this paragraph and avers that inadequate information about this source has been provided to sufficiently assess this citation.

Respectfully submitted,

BRIAN M. BOYNTON

Of Counsel:                            Principal Deputy Assistant Attorney General

Fariha Kabir                           PATRICIA M. McCARTHY
Office of the Assistant Chief Counsel  Director
International Trade Litigation
U.S. Customs and Border Protection     /s/ Justin R. Miller
                                       JUSTIN R. MILLER
                                       Attorney-In-Charge
                                       International Trade Field Office

                                       /s/ Aimee Lee
                                       AIMEE LEE
                                       Assistant Director

                                       /s/ Elisa S. Solomon
                                       ELISA S. SOLOMON
                                       Trial Attorney
                                       Department of Justice, Civil Division
Dated: May 10, 2022                    Commercial Litigation Branch
       New York, New York              26 Federal Plaza – Suite 346
                                       New York, New York 10278
                                       (212) 264-0583

                                       *Attorneys for Defendant*

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| RKW KLERKS INC.<br><br>              Plaintiff,<br><br>      v.<br><br>UNITED STATES,<br><br>              Defendant. | Court No. 20-00001 |

### <u>DEFENDANT'S RULE 56.3 STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

1.      This court action concerns Entry No. 322-1912652-5 filed at the Port of Charleston, South Carolina on August 15, 2018, and liquidated on July 12, 2019.  Am. Summons (ECF No. 12).

2.      Upon liquidation, CBP classified the merchandise in Entry No. 322-1912652-5 under subheading 6005.39.00, Harmonized Tariff Schedule of the United States ("HTSUS"). Compl. ¶ 13 (ECF No. 6); Answer ¶ 13 (ECF No. 13).

3.      Plaintiff RKW Klerks, Inc. filed Protest No. 1601-19-100866, which covered merchandise imported in Entry No. 322-1912652-5, on November 12, 2019.  CBP did not respond to this protest and so it was denied by operation of law on December 12, 2019.  Compl. ¶¶ 2, 4.

4.      The merchandise at issue consists of two products imported by plaintiff, one marketed as "Top Net" and the other as "Rondotex."  Kwiatkista Dep., p. 37 at 2-16.

5.      Rondotex and Top Net are both net wraps and are made from the same raw materials, manufactured in the same way, and serve the same function.  Kwiatkista Dep., p. 38 at 2-10; Pl.'s Responses to Def.'s First Set of Interrogatories, p. 4.

6.      The basic differences between these products are in color and packaging. Kwiatkista Dep., p. 38 at 2-4.  The Top Net is green in color with black edges.  The Rondotex is

made of a transparent film that gives it a milky white color and has red edges.  Kwiatkista Dep., p. 37 at 1-20.

7.      Net wraps are a type of warp knit.  Kwiatkista Dep., p. 46 at 17-18.

8.      Net wraps function to bind and secure crops in round bales.  Kwiatkista Dep., p. 91 at 12-13, p. 98 at 25 – p. 99 at 2-3.

9.      RKW Klerks, Inc. is a subsidiary of RKW SE.  RKW SE is primarily a film producer that manufactures nonwoven fabrics and nettings, such as shrink bottle wrap, pallet stretch hoods, gardening film, greenhouse films, trash bags, and other packaging solutions as well as raw materials.  Kwiatkista Dep., p. 51 at 6-15, p. 53 at 2-15, p. 58 at 6-23.

10.     RKW SE is also a parent company to several entities and plants that manufacture Rondotex and Top Net in Germany.  Kwiatkista Dep., p. 3 at 11-14, p. 48 at 10-18.  RKW SE and its subsidiaries do not sell or produce machinery, including round balers or other harvesting machinery.  Kwiatkista Dep., p. 57 at 10-24.

11.     RKW Klerks imports Rondotex and Top Net into the United States and generally sells these products to wholesalers.  Kwiatkista Dep., p.75 at 14-18, p. 76 at 10-17.

12.     Plaintiff's designated agent, pursuant to USCIT Rule 30(b)(6), answered "nope" to the question "[d]o any of these companies that manufacture baling machines also manufacture net wrap?"  Kwiatkista Dep., p. 103 at 24-25 – p. 104 at 2.

13.     Rondotex and Top Net are sold to customers winded on a cardboard tube with a hollow core, like a thicker and more robust paper towel roll, and sold in different sizes.  Kwiatkista Dep., p. 39 at 10-15, p. 40 at 10-15, 22-25, p. 41 at 2-4.

14.     The cardboard tube with netwrap is inserted into a round baling machine and can be fixed in place using claws in the machine.  Kwiatkista Dep., p. 85 at 11-24.  In some round baling

machines, the cardboard tube is fixed in place by being inserted onto a metal bar.  Kwiatkista Dep., p. 86 at 25 – p.88 at 16.

15.     The net wraps are manufactured in a two-step production process.  First, film layers are produced, one for the chains and one for the connecting threads, then the films are cut into little strips, stretched, heated elongated, and then knitted in Raschel machines.  Kwiatkista Dep., p. 26 at 1-7, p. 28 at 13-25 – p.  29 2-9, p. 30 at 9-25.

16.     The layers of the film used to produce the net wraps are comprised of high density polyethylene ("HDPE"), a type of resin that is used exclusively used for net wrap.  Kwiatkista Dep., p. 31 at 13-23.  The HDPE is a synthetic material.  Kwiatkista Dep., p. 34 at 5-7.

17.     Raschel machines are a type of knitting machine.  Kwiatkista Dep., p. 25 at 14-25. The Raschel machines used by RKW for manufacturing net wraps are designed for making net wraps although they can also be used to make pallet nets, another warp knit.  Kwiatkista Dep., p. 29 at 2-25.

18.     Raschel machines used by RKW in the production of the net wraps are manufactured by Karl Mayer, a company that according to plaintiff's designated agent, pursuant to USCIT Rule 30(b)(6), likely makes other textile machines.  Kwiatkista Dep., p. 63 at 15-20.

19.     RKW manufactures pallet nets, another warp knit manufactured on a Raschel machine in a similar process to the one used to make the net wraps but to different qualities and dimensions.  Pallet nets can be used manually or in a machine to stabilize pallets and piles of boxes.  Kwiatkista Dep., p. 68 at 10-18, p. 70 at 14-25, p. 79 at 4-15.

20.     Round baling machines can be used for hay baling, silage baling, straw baling, and for baling other crops.  Kwiatkista Dep., p. 80 at 14-16.

21.     Round baling machines operate by collecting crops that have been harvested, such as grass, hay, or straw, cutting the crops into tiny pieces, compacting the pieces, and forming the crops into the bale form.  Kwiatkista Dep., p. 81 at 8-12, p. 82 at 5-16.

22.     After round baling machines compress crops into bale form, the machine can wrap the bales with net wrap.  Kwiatkista Dep, p. 91 at 12-25.

23.     RKW developed round bale netting, referred to generally as net wrap, as a substitute for baler twine for use in round baling machines.  Kwiatkista Dep., p. 26 at 25 – p. 27 at 2-10.  Square baling machines use twine, not net wrap.  Kwiatkista Dep., p. 27 at 9-10, p. 105 at 5-16, p. 124 at 23-25.

24.     Plaintiff's designated agent, pursuant to USCIT Rule 30(b)(6), testified that there are some round baling machines that can use either net wraps or twine to bind round bales.  Kwiatkista Dep., p. 26 at 23-25 – p. 27 at 2-3, p. 80 at 16-18.  These round baling machines can function and bind crop bales using twine instead of net wrap.  Kwiatkista Dep., p. 27 at 11-14, pp. 109-123.  These round baling machines have an inserting system that can use either net wrap or baler twine.  Kwiatkista Dep., p. 80 at 12-18.

25.     Plaintiff's designated agent, pursuant to USCIT Rule 30(b)(6), testified that some round baling machines can wrap bales, specifically bales of silage, using round bale films, rather than net wrap.  Kwiatkista Dep., p. 100 at 9-20, p. 107 at 23.

Respectfully submitted,

BRIAN M. BOYNTON

Of Counsel:                                    Principal Deputy Assistant Attorney General

Fariha Kabir                                   PATRICIA M. McCARTHY
Office of the Assistant Chief Counsel          Director
International Trade Litigation
U.S. Customs and Border Protection             /s/ Justin R. Miller
                                               JUSTIN R. MILLER
                                               Attorney-In-Charge
                                               International Trade Field Office

                                               /s/ Aimee Lee
                                               Aimee Lee
                                               Assistant Director

                                               /s/ Elisa S. Solomon
                                               ELISA S. SOLOMON
                                               Trial Attorney
Dated: May 10, 2022                            Department of Justice, Civil Division
       New York, New York                      Commercial Litigation Branch
                                               26 Federal Plaza – Suite 346
                                               New York, New York 10278
                                               (212) 264-0583

                                               *Attorneys for Defendant*

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| RKW KLERKS INC.<br><br>                    Plaintiff,<br><br>        v.<br><br>UNITED STATES,<br><br>                    Defendant. | Court No. 20-00001 |

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

Of Counsel:

PATRICIA M. McCARTHY
Director

Fariha Kabir
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

ELISA S. SOLOMON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-0583

Dated: May 10, 2022
        New York, New York

*Attorneys for Defendant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

BACKGROUND ...........................................................................................................2

    A.    The Imported Merchandise .................................................................. 2

    B.    Administrative Background ................................................................. 6

JURISDICTION ...........................................................................................................7

QUESTION PRESENTED ............................................................................................7

SUMMARY OF ARGUMENT ....................................................................................8

ARGUMENT .................................................................................................................9

II.    Standard of Review.............................................................................................9

III.    General Rules of Interpretation.........................................................................10

IV.    The Net Wraps are Properly Classified Under heading 6005 Pursuant to GRI 1 ................ 12

V.    The Net Wraps are Not Classifiable As Parts of Harvesting or Threshing Machinery under Heading 8433 ............................................................................................... 14

    A.    The Net Wraps Are Not Parts of Round Baler Machines ................................. 15

        1.    The Net Wraps Do Not Meet the Dictionary Definition of Parts.................. 15

        2.    The Net Wraps Do Not Satisfy Court-Established Test for Parts .................. 16

    B.    Even if The Net Wraps Are Parts, They Are Still Not Classifiable Under Heading 8433 Because Heading 6005 More Specifically Describes the Net Wraps ........................................... 25

        1.    Additional U.S. Rule of Interpretation 1(c) Directs Classification Under Heading 6005 ……………………………………………………………25

        2.    Even If GRI 3(a) Applies, Which It Does Not, It Would Direct Classification Under Heading 6005 ....................................................................... 27

    C.    CBP's Prior Rulings Demonstrate The Consistency Of The Agency's Decisionmaking. 32

    D.    There is No Long-Standing Practice of Classifying Goods Used to Bale Hay As Duty-Free Parts. ....................................................................................... 34

VI.    The Net Wraps Are Not Classifiable Under Heading 8436, HTSUS .................................. 35

VII.    Plaintiff Abandons The Third Cause Of Action Of The Complaint ..................................... 36

CONCLUSION ...........................................................................................................37

## TABLE OF AUTHORITIES

### Cases

*ABB, Inc. v. United States,*
346 F. Supp. 2d 1357 (Ct. Int'l Tr. 2004) ............................................................... 9

*Adickes v. S.H. Kress & Co.,*
398 U.S. 144 (1970) ...................................................................................................... 8

*Apple Inc. v. United States,*
964 F.3d 1087 (Fed. Cir. 2020) ............................................................................... 13

*Aromont USA, Inc. v. United States,*
671 F.3d 1310 (Fed. Cir. 2012) ............................................................................... 28

*Aves. In Leather, Inc. v. United States,*
423 F.3d 1326 (Fed. Cir. 2005) ............................................................................... 10

*BASF Corp. v. United States,*
482 F.3d 1324 (Fed. Cir. 2007) ............................................................................... 10

*Bauerhin Techs. Ltd. P'ship v. United States,*
110 F.3d 774 (Fed. Cir. 1997) .........................................................................*passim*

*Bausch & Lomb, Inc. v. United States,*
148 F.3d 1363 (Fed. Cir. 1998) ................................................................................. 8

*Brother Int'l Corp. v. United States,*
248 F. Supp. 2d 1224 (Ct. Int'l Tr. 2002) ................................................. 22, 23, 24

*CamelBak Prod., LLC v. United States,*
649 F.3d 1361 (Fed. Cir. 2011) ......................................................................... 25, 27

*Carl Zeiss, Inc. v. United States,*
195 F.3d 1375 (Fed. Cir. 1999) ............................................................................... 29

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ................................................................................................. 8, 9

*Clarendon Marketing, Inc. v. United States,*
144 F.3d 1464 (Fed. Cir. 1998) ................................................................................. 8

*Cummins Inc. v. United States,*
454 F.3d 1361 (Fed. Cir. 2006) ............................................................................... 10

*Ero Indus., Inc. v. United States,*
118 F. Supp. 2d 1356 (Ct. Int'l Tr. 2000) ............................................................... 8

*F.W. Myers & Co. v. United States,*
615 F. Supp. 569 (Ct. Int'l Trade 1985) ................................................................ 35

*Frank W. Winne & Sons v. United States,*
72 Cust. Ct. 62 (Cust. Ct. 1974) ............................................................................. 34

*Fujitsu Am., Inc. v. United States*,
342 F. Supp. 2d 1326 (Ct. Int'l Tr. 2004)
*aff'd* 422 F.3d 1364 (Fed. Cir. 2005) ................................................................... 25

*Gallagher & Ascher Co. v. United States*,
52 C.C.P.A. 11 (1964) ........................................................................................... 22

*Geo WM. Rueff, Inc. v. United States*,
28 Cust. Ct. 84 ........................................................................................... 17, 18, 33

*GRK Can., Ltd. v. United States*,
761 F.3d 1354 (Fed. Cir. 2014)............................................................................. 28

*Jarvis Clark Co. v. United States*,
733 F.2d 873 (Fed. Cir. 1984)................................................................................. 9

*Jarvis Clark Co. v. United States*,
739 F.2d 628 (Fed. Cir. 1984)................................................................................. 9

*JVC Co. of Am. v. United States*,
234 F.3d 1348 (Fed. Cir. 2000).............................................................................. 26

*Len–Ron Mfg. Co. v. United States*,
334 F.3d 1304 (Fed. Cir. 2003).............................................................................. 27

*Link Snacks, Inc. v. United States*,
742 F.3d 962 (Fed. Cir. 2014) ............................................................................... 10

*Ludvig Svensson (U.S.) Inc. v. United States*,
23 C.I.T. 573 (Ct. Int'l Tr. 1999) ............................................................... 20, 21, 32

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ................................................................................................. 8

*Mita Copystar Am. v. United States*,
21 F.3d 1079 (Fed. Cir. 1994).................................................................... 11, 23, 24

*Nat'l Advanced Sys. v. United States*,
26 F.3d 1107 (Fed. Cir. 1994).......................................................................... 10, 21

*Orlando Food Corp. v. United States*,
140 F.3d 1437 (Fed. Cir. 1998)........................................................................ 10, 30

*Photonetics, Inc. v. United States*,
33 C.I.T. 1549 (Ct. Int'l Tr. 2009)......................................................................... 28

*Pomeroy Collection, Ltd. v. United States*,
246 F. Supp. 2d 1286 (Ct. Int'l Tr. 2002)
*aff'd* 336 F.3d 1370 (Fed. Cir. 2003) ....................................................................... 8

*Pomeroy Collection, Ltd. v. United States*,
559 F. Supp. 2d 1374 (Ct. Int'l Tr. 2008)............................................................... 10

*Rubie's Costume Co. v. United State*s,
337 F.3d 1350 (Fed. Cir. 2003)............................................................................. 33

iv

*Saab Cars USA, Inc. v. United States*,
434 F.3d 1359 (Fed. Cir. 2006)..................................................................... 9

*Schlumberger Tech. Corp. v. United States*,
845 F.3d 1158 (Fed. Cir. 2017)...................................................................27

*Totes, Inc. v. United States,*
69 F.3d 495 (Fed. Cir. 1995)................................................................. 29, 30

*Trans Atlantic Co. v. United States*,
48 C.C.P.A. 30 (1960) ...............................................................................21

*Trumpf Med. Sys., Inc. v. United States*,
753 F. Supp. 2d 1297 (Ct. Int'l Tr. 2010) ................................................... 8

*United States v. American Express Co.,*
29 C.C.P.A. 87 (1941) .........................................................................22, 23

*United States v. Carborundum Co.*,
63 C.C.P.A. 98, 536 F.2d 373 (1976) .........................................................28

*United States v. Great American Ins. Co.*,
738 F.3d 1320 (Fed. Cir. 2013).................................................................35

*United States v. Mead Corp.*,
533 U.S 218 (2001)...................................................................................33

*United States v. Pan Pac. Textile Group Inc.*,
276 F. Supp. 2d 1316 (Ct. Int'l Tr. 2003) ................................................... 8

*Well Luck Co., Inc. v. United States*,
887 F.3d 1106 (Fed. Cir. 2018)..................................................................31

*Wilbur-Ellis Co. v. United States*,
26 C.C.P.A. 403, C.A.D. 47 (1939) ............................................................33

*United States v. Willoughby Camera*,
21 C.C.P.A. 322, 1933 WL1887 (1993) ..............................................*passim*

**Harmonized Tariff Schedule of the United States**

General Rule of Interpretation 1 ................................................................*passim*

General Rule of Interpretation 3(a)..............................................26, 28, 29, 30

Explanatory Note IV(a) to GRI 3 (a) .............................................................29

Explanatory Note IV(b) to GRI 3(a)........................................................30, 31

General Rule of Interpretation 6 ..........................................................7, 10, 20

Additional U.S. Rule of Interpretation 1(c) ..............................................24, 25

Chapter 54
    Heading 5407

Subheading 5407.20.00................................................................................32

Chapter 57

Heading 5703 ...........................................................................................30

Chapter 59

Heading 5911 ...........................................................................................36

Subheading 5911.90.00...................................................................6, 35, 36

Note 7 .....................................................................................................36

Chapter 60

Heading 6002

Subheading 6002.43.00................................................................................32

Heading 6003 ...........................................................................................31

Heading 6005 .....................................................................................*passim*

Subheading 6005.39.00.............................................................1, 5, 6, 7, 12

Explanatory Note to Heading 6005..........................................1, 11, 26

Chapter 69

Heading 6914 ...........................................................................................27

Chapter 70

Heading 7007 ...........................................................................................30

Chapter 84

Heading 8433 .....................................................................................*passim*

Subheading 8433.90.50..........................................................................*passim*

Heading 8436 ....................................................................................32, 34, 35

Subheading 8436.90.50...........................................................................1, 5

Subheading 8436.99.00..........................................................................*passim*

Heading 8437 ............................................................................................6

Chapter 87

Heading 8708 ...........................................................................................30

Chapter 90

Heading 9009 ...........................................................................................23

Chapter 94

Heading 9404 ...........................................................................................20

Subheading 9401.90.10................................................................................19

## Statutes

19 U.S.C. § 1502(a) ........................................................................................ 31

28 U.S.C. § 1581(a) ........................................................................................ 6

28 U.S.C. § 2639(a)(1) .................................................................................... 9

## Rules

USCIT Rule 30(b)(6) ..................................................................................... 2, 3

USCIT Rule 56 ............................................................................................... 1, 8

USCIT Rule 56(c) ........................................................................................... 8

## Regulations

19 C.F.R. § 177.9(a) ...................................................................................... 31

## Administrative Materials

HQ H017185 (April 17, 2008) .............................................................. 31, 32, 33

NY N284368 (April 7, 2017) .................................................................... 31, 32

NY N279988 (October 6, 2016) ............................................................... 31, 32

NY N040299 (October 8, 2008) ............................................................... 31, 32

HQ H008546 (April 18, 2008) ....................................................................... 31

NY 859390 (February 4, 1991) ...................................................................... 32

NY G87841 (March 9, 2001) ......................................................................... 32

HQ H219598 (January 5, 2016) ..................................................................... 32

## Other Authorities

WARP KNIT, *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/warp%20knit ........................................................ 11

SYNTHETIC, *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/synthetic .......................................................... 12

PART, *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/part ............................................................. 14, 15

MACHINERY, *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/machinery .................................................... 14, 34

MACHINE, *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/machine ...................................................................... 14, 34

AGRICULTURAL, *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/agricultural ...................................................................... 34

Pursuant to Rule 56 of the Rules of the United States Court of International Trade ("USCIT"), defendant, the United States, submits this memorandum in opposition to a motion for summary judgment filed by plaintiff, RKW Klerk's Inc. ("RKW Klerks"), and in support of defendant's cross-motion for summary judgment. For the reasons set forth below, defendant respectfully requests that the Court enter an order denying plaintiff's motion for summary judgment, granting defendant's cross-motion for summary judgment, and dismissing this action in its entirety.

As demonstrated below, U.S. Customs and Border Protection ("Customs" or "CBP") properly classified the imported merchandise as "[w]arp knit fabrics," under Heading 6005, Harmonized Tariff Schedule of the United States ("HTSUS"). Warp knit is a knit fabric produced by machine with the yarns running in a lengthwise direction. The undisputed facts show that the subject merchandise is a warp knit fabric described in heading 6005, HTSUS, and more specifically in subheading 6005.39.00, HTSUS, as a warp knit fabric made of synthetic fibers. Moreover, the manufacturing process used to create the net wraps is specifically described in the Explanatory Notes to heading 6005, which provide that "[w]arp knit fabrics . . . [are] made on warp knitting machines (especially Raschel machines) . . . ." The merchandise here was produced on Raschel machines. Because the subject goods are specifically described by heading 6005, HTSUS, they are precluded from classification as "parts" under the provisions proposed by plaintiff – namely heading 8433, which covers parts of "haying machines and balers," or heading 8436.99.00, which covers parts of "other agricultural . . . . machinery[.]"

Therefore, defendant respectfully requests that judgment be entered in its favor and that this action be dismissed.

## BACKGROUND

### A.     The Imported Merchandise

As reflected in the parties' Statements of Facts Not in Dispute, the parties do not materially dispute what the imported goods are, how they are manufactured, and how they are primarily used.  Here, the only dispute is the legal interpretation of headings 6005, 8433, and 8436, and, based on that interpretation, which heading covers the subject merchandise.

The merchandise at issue consists of two products imported by plaintiff, RKW Klerks, Inc., one marketed as "Top Net" and the other as "Rondotex."  Compl. ¶ 8; Kwiatkista Dep., p. 37 at 2-16.[1]  Rondotex and Top Net are both net wraps, a type of warp knit that is designed to bind crops in round bales.  Kwiatkista Dep., p. 38 at 2-10, p. 45 at 24-25, p. 91 at 12-13, p. 98 at 25 – p. 99 at 2-3.

As will be shown below, warp knit is a knit fabric produced by machine with the yarns running in a lengthwise direction.  We include a picture of the Top Net and Rondotex products as follows:

---

[1] Stefan Kwiatkista served as plaintiff's USCIT Rule 30(b)(6) witness.  He is a Sales Manager in the Consumer Packaging, Industrial Films division of RKW since September 2021 and immediately prior to that, he was a Sales and Business Development Manager in the agricultural division of RKW.  Kwiatkista Dep., p. 17 at 16-25 – p. 18 at 1-11.  The net wraps at issue in this case fall in the agricultural division of RKW.  Kwiatkista Dep., p. 19 at 7-10.  Mr. Kwiatkista has worked at RKW in a variety of roles for over twenty years. *See* Kwiatkista Dep., p. 23 at 21-23. Mr. Kwiatkista has also served as the president of the Raschel Net Committee at EuroCord, a trade group representing Raschel net producers.  *See* Kwiatkista Dep., p. 24 at 1-25 – p. 25 at 1-13.





Ex. 4 (Pl.'s Initial Disclosures attaching RKW Brochure), p. 3-4 (Top Net image), p. 8 (Rondotex image).  We also submit samples of the Rondotex and Top Net products to the Court as physical exhibits.  *See also* Ex. 2 (physical sample of Rondotex), Ex. 3 (physical sample of Top Net).[2] Plaintiff has provided defendant with a large roll of the Rondotex product.  We are not submitting this roll of material to the Court due to its size and weight.  However, should the Court find that reviewing this roll of Rondotex may be helpful to the resolution of the contested issues, we stand ready to file the roll as a supplemental exhibit to this dispositive motion.

---

[2] The physical samples provided to the court contains samples of Rondotex and Top Net, and were discussed and marked as an exhibit during the deposition of plaintiff's designated agent pursuant to USCIT Rule 30(b)(6).  *See* Kwiatkista Dep. pp. 35-39.

Rondotex and Top Net (collectively, the "net wraps") are manufactured in Germany by subsidiaries of RKW SE, a German corporation.  Plaintiff RKW Klerks, another subsidiary of RKW SE, imports the net wraps into the United States where it generally sells the net wraps to wholesalers.  Kwiatkista Dep., p.75 at 14-18, p. 76 at 10-17.  RKW SE is primarily a film producer that manufactures nonwoven fabrics and nettings, including shrink bottle wrap, pallet stretch hoods, trash bags, and other packaging solutions.  Kwiatkista Dep., p. 51 at 6-15, p. 53 at 2-15, p. 58 at 6-23.

Net wraps are manufactured in a two-step production process.  First, films comprised of high density polyethylene ("HDPE") are produced, one for the chains and one for the connecting threads, then the films are cut into little strips, stretched, heated elongated, and then knitted in Raschel machines.  Kwiatkista Dep., p. 26 at 1-7, p. 28 at 13-25 – p.  29 2-9, p. 30 at 9-25. Raschel machines used for manufacturing the net wraps are primarily designed for that purpose although RKW also uses these machines to make some other warp knit fabrics, namely pallet nets. Kwiatkista Dep., p. 29 at 2-25.

The net wraps are designed to bind crops in round bales after bales have been formed by a round baling machine.  We include a picture of a round baling machine as follows:



Ex. 10 (Case IH RB455A brochure), p. 5.

Round baling machines can be used for baling hay, silage, straw, and other crops. Kwiatkista Dep., p. 80 at 14-16.  Round baling machines operate by collecting crops that have been harvested, cutting the crops into tiny pieces, compacting the pieces, and forming the crops into a bale form.  Kwiatkista Dep., p. 81 at 8-12, p. 82 at 5-16.  After a round baling machine has compressed the crops into bale form, the machine applies some type of wrapping to maintain the round bale form.  *See* Kwiatkista Dep., p. 98 at 25 – p. 99 at 2-3.  A square baling machine in contrast also cuts and compresses crops into a bale form, but creates square bales rather than round bales.  Kwiatkista Dep., p. 102 at 19-25.

26.     Net wraps were designed about 40 years ago as a substitute to baler twine in round baling machines.  Kwiatkista Dep., p. 27 at 2-10.  Some round baling machines can use either a net wrap or baler twine to bind the crop bales.  *See* Kwiatkista Dep., p. 26 at 23-25 – p. 27 at 2-3, p. 80 at 16-18, pp. 109-123.  And some round balers can also use a round bale film to bind bales of

silage instead of net wrap.  *See* Kwiatkista Dep., p. 100 at 16-20.  In contrast, square baling

machines only use twine, not net wrap, to bind crop bales.  Kwiatkista Dep., p. 27 at 9-10, p. 105

at 5-16, p. 124 at 23-25.  Both baler twine and net wraps function to bind crop bales after the bales

have exited a round baling machine.  Kwiatkista Dep., p. 91 at 12-13, p. 98 at 25 – p. 99 at 2-3.

      **B.**     **Administrative Background**

     Plaintiff imported the net wraps into the United States under the cover of a single entry,

Entry No. 322-1912652-5, filed at the Port of Charleston, South Carolina, on August 15, 2018

and liquidated on July 12, 2019.  *See* Am. Summons (ECF No. 12).  Customs liquidated the

imported goods as entered under subheading 6005.39.00, HTSUS, which covers:  "[w]arp knit

fabrics (including those made on galloon knitting machines), other than those of headings 6001 to

6004: Of synthetic fibers: other, printed" with a duty rate of 10 percent *ad valorem*.  *See*

6005.39.00, HTSUS (2018).

     RKW Klerks timely filed Protest No. 1601-19-100866 through the ACE Portal and

submitted a request for accelerated disposition of the protest on November 12, 2019.  *See* Am.

Summons (ECF No. 12); Entry Papers (ECF No. 15-1), p.5.  After 30 days of the date of mailing

the request for accelerated disposition, on December 12, 2019, the protest was deemed denied by

operation of law.

     RKW Klerks timely commenced this action by filing a summons on January 2, 2020

(Summons, ECF No. 1), followed by a complaint on January 6, 2020 (Compl., ECF No. 5).  In its

complaint RKW Klerks seeks reliquidation of the subject merchandise under subheading

8433.90.50, HTSUS, duty free, as parts of haying machines and balers.  *See* Compl. ¶ 14.

Subheading 8433.90.50 provides for: "Harvesting or threshing machinery, including straw or

fodder balers; grass or hay mowers; machines for cleaning, sorting or grading eggs, fruit or other

agricultural produce, other than machinery of heading 8437; parts thereof: Parts: Other: Of haying machines and balers."  *See* 8433.90.50, HTSUS (2018).

In the alternative, plaintiff claims that the net wraps are properly classifiable under subheading 8436.99.00, HTSUS, as parts of other agricultural machinery.  *See* Compl. ¶ 15-17. Subheading 8436.99.00 covers "Other agricultural, horticultural, forestry, poultry-keeping or bee-keeping machinery, including germination plant fitted with mechanical or thermal equipment; poultry incubators and brooders; parts thereof: Parts: Other."  *See* 8436.99.00, HTSUS (2018).

Plaintiff's third cause of action in the complaint alleged that the net wraps are classifiable under subheading 5911.90.00, HTSUS.  *See* Compl. ¶ 18-22.  Subheading 5911.90.00 covers "[t]extile products and articles, for technical uses, specified in note 8 to this chapter: Other[.]" *See* 8436.99.00, HTSUS (2018).  However, plaintiff has abandoned this claim, nor does it raise any arguments regarding this classification in its Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed a timely protest and paid all liquidated duties.  Plaintiff filed the summons and complaint on a timely basis.  As a result, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a).

## QUESTION PRESENTED

Whether the imported merchandise is properly classified as "[w]arp knit fabrics" made from synthetic fibers under subheading 6005.39.00, HTSUS, in which CBP classified the merchandise upon liquidation, or as "parts" under the provisions proposed by plaintiff – namely subheading 8433.90.50, HTSUS, which covers parts of "haying machines and balers," or subheading 8436.99.00, HTSUS, which covers parts of "other agricultural . . . machinery[.]"

## SUMMARY OF ARGUMENT

This case is governed by Rule 1 of the General Rules of Interpretation ("GRI"), which calls for classification in accordance with the plain language of a heading and relative section or chapter notes of the tariff, where applicable, and GRI 6, which extends GRI 1 to subheadings. The net wraps at issue fall under the plain language of heading 6005, which covers "[w]arp knit fabrics[.]" This classification is further supported by the Explanatory Notes to heading 6005, which specifically describe the manufacturing method used by RKW to produce the net wraps. Moreover, classification of the net wraps under heading 6005 is consistent with prior CBP rulings classifying similar merchandise.

Plaintiff does not appear to dispute that the net wraps consist of warp knit fabrics and are therefore covered by the plain language of heading 6005, HTSUS. Instead, plaintiff asserts that the net wraps should be classified as parts of "haying machines and balers" under subheading 8433.90.50, HTSUS, or alternatively as parts of "other agricultural . . . . machinery" under subheading 8436.99.00, HTSUS.

However, the undisputed facts show that the net wraps are not parts of round baling machinery but are instead a product that the round baling machinery uses to bind round bales – like thread is used in a sewing machine to bind or repair cloth or paper is used in a printer to create printed text on paper. The net wraps therefore join a line of merchandise for which this Court and Federal Circuit have held that inputs on which a machine operates are not parts of those machines.

Because the net wraps are not parts, they cannot be classified under either subheading 8433.90.50, HTSUS, or subheading 8436.99.00, HTSUS. The net wraps are therefore properly

classified under subheading 6005.39.00.  As such, the Court should deny plaintiff's motion for summary judgment, grant defendant's cross-motion, and dismiss this action.

**ARGUMENT**

**I.   <u>STANDARD OF REVIEW</u>**

Under USCIT Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material only if it might affect the outcome of an action.  *See Trumpf Med. Sys., Inc. v. United States*, 753 F. Supp. 2d 1297, 1305 (Ct. Int'l Tr. 2010).

Classification issues may be resolved through summary judgment.  *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998); *The Pomeroy Collection, Ltd. v. United States*, 246 F. Supp. 2d 1286, 1289 (Ct. Int'l Tr. 2002) *aff'd* 336 F.3d 1370 (Fed. Cir. 2003).  Summary judgment is appropriate when "there is no genuine dispute as to . . . what the merchandise is."  *Ero Indus., Inc. v. United States*, 118 F. Supp. 2d 1356, 1359 (Ct. Int'l Tr. 2000). In the absence of genuine factual issues, whether to grant summary judgment turns on the proper construction of the HTSUS, which is a question of law.  *Clarendon Marketing, Inc. v. United States*, 144 F.3d 1464, 1466 (Fed. Cir. 1998).

In determining whether a genuine issue of fact exists, a court reviews the evidence submitted drawing all inferences against the moving party.  *See United States v. Pan Pac. Textile Group Inc.*, 276 F. Supp. 2d 1316, 1319 (Ct. Int'l Tr. 2003); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant bears the burden of demonstrating that there exists no genuine issue of material fact that would warrant a trial.  *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The movant may satisfy this burden by noting that the party

9

who will bear the ultimate burden of proof at trial cannot support an essential element of its claim. *See, e.g., Celotex*, 477 U.S. at 322-23.

Moreover, by law, CBP's classification decisions are entitled to a presumption of correctness.  *See* 28 U.S.C. § 2639(a)(1) (classification decision "is presumed to be correct.  The burden of proving otherwise shall rest upon the party challenging such decision.")  Where, as here, a plaintiff challenges Customs' classification decision, "a court presumes that Customs applied the provision correctly, which means that the plaintiff is left with the burden of showing by a preponderance of the evidence that Customs' decision was incorrect."  *ABB, Inc. v. United States*, 346 F. Supp. 2d 1357, 1364 (Ct. Int'l Tr. 2004); *see also Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1368 (Fed. Cir. 2006) (a plaintiff must "meet its burden of contradicting Customs' presumed correct factual finding . . . .").

Notwithstanding the presumption of correctness, "the trial court cannot determine the correct result simply by dismissing the importer's alternative as incorrect.  It must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative."  *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).  Although the Court must satisfy itself that Customs' classification is correct, plaintiff still must overcome the presumption of correctness and provide sufficient evidence to prove that Customs' classification is incorrect.  *Jarvis Clark Co. v. United States*, 739 F.2d 628, 630 (Fed. Cir. 1984) (denying petition for rehearing).

## II.   <u>GENERAL RULES OF INTERPRETATION</u>

Merchandise imported into the United States is classified under the HTSUS.  It is well-established that the determination of whether a particular product falls within a tariff classification is a two-step process: first, the meaning of terms within the provision must be ascertained, and

second, a determination must be made as to whether the merchandise at issue falls within the description of such terms as properly construed.  *See Nat'l Advanced Sys. v. United States*, 26 F.3d 1107, 1109 (Fed. Cir. 1994).  "When there is no dispute as to the nature of the merchandise, then the two-step classification analysis 'collapses entirely into a question of law.'"  *Link Snacks, Inc. v. United States*, 742 F.3d 962, 965-66 (Fed. Cir. 2014) (quoting *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006)).

In applying this process, courts look to the General Rules of Interpretation and the Additional United States Rules of Interpretation to construe and apply the HTSUS.  *See Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998); *BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007).

GRI 1 provides, in relevant part, that "for legal purposes, classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes and, provided such headings or Notes do not otherwise require, according to the [remaining GRIs.]"  As interpreted by its Explanatory Note, GRI 1 establishes that "the terms of the headings and any relative section or Chapter Notes are paramount, *i.e.*, they are the first consideration in determining classification."  *See also The Pomeroy Collection, Ltd. v. United States*, 559 F. Supp. 2d 1374, 1385 (Ct. Int'l Tr. 2008).  GRI 6 extends the principles of GRI 1 to the subheading level.[3]  The HTSUS section and chapter notes "are not optional interpretive rules," but instead have the force of statutory law.  *See Aves. In Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (internal quotation marks omitted).

---

[3] GRI 6 provides in full "[f]or legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis,* to the above rules [*i.e.*, GRI 1-5]."

III.    **THE NET WRAPS ARE PROPERLY CLASSIFIED UNDER HEADING 6005 PURSUANT TO GRI 1**

The net wraps at issue are explicitly described by the terms of heading 6005, HTSUS, which covers "[w]arp knit fabrics[.]"  The parties do not dispute that the net wraps are a type of warp knit.  *See* Kwiatkista Dep., p. 46 at 17-18 ("Q:  And would that be considered a warp knit? A: This would be a warp knit.").  The common meaning of a "Warp knit" is a "knit fabric produced by machine with the yarns running in a lengthwise direction."[4]  As described by plaintiff's Rule 30(b)(6) witness, the net wraps are produced by using a machine to knit chains running in a lengthwise direction.  *See* Kwiatkista Dep., p. 46 at 3-20, p. 47 at 1-23.

Further interpretive assistance may be provided by the Explanatory Notes to the tariff published by the World Customs Organization which, although not controlling, are intended to clarify the scope of the HTSUS.  *See Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994) ("[A] court may refer to the Explanatory Notes of a tariff subheading, which do not constitute controlling legislative history but nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting subheadings.")  In this case, the Explanatory Notes to heading 6005, HTSUS, provide, in relevant part, that the heading covers fabrics "made on warp knitting machines (especially Raschel machines) . . . ."  Explanatory Note 60.05 at XI-6005-1, Sixth Edition (2017).  It is undisputed that the imported net wraps of this case were knitted on Raschel machines.  *See* Kwiatkista Dep., p. 29 at 2-4 ("Raschel machine is a machine with needles knitting this kind of product.  It's special machines for round bale netting. So it's really special, not comparable to other, like, different kind of application machines. So you can also, on similar machines, you can produce potato sacks or other sacks.").  Consequently,

---

[4] "Warp knit." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/warp%20knit (accessed May 10, 2022).

classifying the merchandise under heading 6005 is consistent with the guidance imparted by the Notes.

The net wraps are also properly classified under subheading 6005.39.00, which covers "[w]arp knit fabrics . . . : Of synthetic fibers: Other, printed[.]"  There is no dispute that the net wraps are comprised of synthetic materials.[5]  A synthetic material is "a product (such as a drug or plastic) of chemical synthesis."[6]  It is undisputed that the net wraps at issue are manufactured using threads made from high density polyethylene ("HDPE") films, a synthetic product.  *See* Kwiatkista Dep., p. 31 at 12-14 (identifying HDPE, high density polyethylene as the raw material used to create net wrap); Kwiatkista Dep., p. 34 at 5-7 ("Counsel for plaintiff has stipulated that this material is synthetic."); Ex. 5, p. 4 (Pl.'s Responses to Def.'s First Set of Interrogatories) ("The only component of the Topnet and Rondotex® is high polyethylene fibers").  The net wraps, are therefore explicitly described by the terms of heading 6005 as a warp knit fabric, and, specifically, subheading 6005.39.00, HTSUS as warp knit fabric of synthetic fibers.

Plaintiff offers no argument contradicting that the net wraps are clearly described by the terms of heading 6005, HTSUS.  Instead, plaintiff's arguments are that the merchandise in question can and should be classified as "parts" under either subheading 8433.90.50, HTSUS,

---

[5] Although the subheading 6005.39.00, HTSUS, includes the term "[o]ther, printed", the parties have not conducted any discovery related to whether the net wraps are "[o]ther, printed[.]"  As reflected in entry documentation filed with the court, plaintiff originally entered the net wraps under subheading 6005.39.00.  *See* ECF No. 15-1 at 16.  Although plaintiff subsequently protested that classification, plaintiff has not offered argument concerning the term "printed" in subheading 6005.39.00.  The government notes that there are four additional subheadings also covering warp knit fabrics made from synthetic fibers.  *See* subheading 6005.35.00, HTSUS; subheading 6005.36.00 (HTSUS); subheading 6005.37.00 (HTSUS); subheading 6005.38.00 (HTSUS).

[6] "Synthetic." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/synthetic (accessed May 10, 2022).

which covers parts of "haying machines and balers," or subheading 8436.99.00, HTSUS, which covers parts of "other agricultural . . . . machinery[.]"  Based on the undisputed facts, the classifications proposed by plaintiff are incorrect because, as will be shown below, the net wraps are not parts of a round bale machine or parts of other agricultural machinery.

In summary, CBP's classification of the subject net wraps under subheading 6005.39.00, HTSUS, is based on the terms of heading 6005 and is supported by the Explanatory Notes. Because net wraps are classifiable under heading 6005, HTSUS, pursuant to GRI 1, the Court need not consider classification under the other General Rules of Interpretation.  *See Apple Inc. v. United States*, 964 F.3d 1087, 1093 (Fed. Cir. 2020) (GRIs "apply in numerical order, meaning that subsequent rules are inapplicable if a preceding rule provides proper classification.").

## IV.   THE NET WRAPS ARE NOT CLASSIFIABLE AS PARTS OF HARVESTING OR THRESHING MACHINERY UNDER HEADING 8433

Plaintiff claims that the merchandise should be classified in heading 8433, specifically under subheading 8433.90.50.  The relevant text of subheading 8433.90.50 provides that it covers "[h]arvesting or threshing machinery . . . ; parts thereof: Parts: Other: Of haying machines and balers[.]"  Plaintiff relies on Note 2(b) to Section XVI, which provides, in relevant part: "parts, if suitable for use solely or principally with a particular kind of machine, or with a number of machines of the same heading . . . are to be classified with the machines of that kind . . ."[7]  Pl.'s

---

[7] The complete note provides:

> (b) Other parts, if suitable for use solely or principally with a particular kind of machine, or with a number of machines of the same heading (including a machine of heading 8479 or 8543) are to be classified with the machines of that kind or in heading 8409, 8431, 8448, 8466, 8473, 8503, 8522, 8529 or 8538 as appropriate. However, parts which are equally suitable for use principally with the goods of headings 8517 and 8525 to 8528 are to be classified in heading 8517, and parts which are suitable for use solely or principally with the goods of heading 8524 are to be classified in heading 8529.

Mem. 11.  However, as described in more detail below, net wraps are not parts of round bale machinery but rather are an input into the round baler's finishing process.

### A.  The Net Wraps Are Not Parts of Round Baler Machines

#### 1.  The Net Wraps Do Not Meet the Dictionary Definition of Parts

Net wraps do not meet the dictionary definition of a "part" of round baler machines or "[h]arvesting or threshing machinery."  Merriam-Webster dictionary defines a "part" variably as "a constituent member of a machine or other apparatus" or "an essential portion or integral element."  *See* "Part." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/part (accessed May 10, 2022).[8]  The net wraps do not contribute to the primary mechanical function of round baling machines, which is to gather, cut, and compress and roll hay and/or silage together.  *See* Kwiatkista Dep., p. 98 at 19-24  ("Q: And the baler machine as you described before has mechanical function that compress and roll the product together, right, into the baler?  A: Correct.  Q And the wrap doesn't contribute to that function, right?  A:  No.")  Rather, the net wraps are an input, like hay or silage, into the round baling machines.  The net wraps function to keep crop bales in form *after* the round baling machine has already compressed the crops into a bale shape.  *See* Kwiatkista Dep., p. 98 at 25 – p. 99 at 2-3 ("Q: And so the wrap will only secure the bale once it's already made by the machine, right?  A: Yes.")  In addition, some round baling machines can use other inputs, namely bale

---

[8] Machinery is defined, in relevant part, as "the working parts of a machine" and " machine" is in turn defined as " a mechanically, electrically, or electronically operated device for performing a task[.]"  *See* "Machinery." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/machinery (accessed May 10, 2022); "Machine." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/machine (accessed May 10, 2022).

twine[9] or round bale films[10], rather than net wraps, to keep round bales in form.  As such, the net

wraps are not "an essential portion" or a "constituent member" of round baling machines.  *See*

"Part." *Merriam-Webster.com Dictionary*.

### 2.  The Net Wraps Do Not Satisfy Court-Established Test for Parts

Nor do the net wraps meet the requirements for a "part" that have been established by the

Court of Appeals.  In *Bauerhin Techs. Ltd. P'ship v. United States*, 110 F.3d 774 (Fed. Cir. 1997),

the Court articulated a two-part test to determine if the imported merchandise is a part for the

purposes of tariff classification.  *Id.* at 775-76.  First, the Court examines whether the part is an

integral component of the larger article so that the article could not function without the part.  *Id.*

at 779.  Second, the Court determines whether the item is designed for use with the merchandise at

issue.  *Id.*  Plaintiff asserts that the net wraps satisfy this test, however, plaintiff's assertions run

contrary to undisputed evidence before the Court.

With regard to the first prong, plaintiff asserts that the net wraps are an "integral part of a

hay baler because a hay baler could not make useable round bales without the netwrap."  Pl.'s

Mem. 17.  Plaintiff's arguments on this issue ignore that round baling machines can function

---

[9] *See* Kwiatkista Dep., p. 80 at 16-18 ("On the round baling machine that has inserting system for net wrap there's a baler twine, old system, and the net wrap system."); *see also* Kwiatkista Dep., p. 26 at 11-14, pp. 109-123; Ex. 7, p. 4 (Kuhn North America, Fixed Chamber Round Balers describing twine and net wrap systems for a round baler); Ex. 8, p. 14-15 (Kubota Round Balers and Wrappers brochure describing an automatic twine tying system and a net wrap system for round balers); Ex. 9, p. 14 (Hesston 2900 &1700 Series Round Balers describing twine and net wrap, *i.e.*, mesh, tying systems); Ex. 10, p. 6 (Case IH RB455A brochure describing a "STANDARD TWINE WRAPPING" and "OPTIONAL MESH WRAP"); Ex. 11, p. 19 (Case IH RB5 and Utility Series Round Balers brochure describing net and twine wrapping options); *see also* Ex. 5, p. 5 (Pl.'s Responses to Def.'s First Set of Interrogatories describing that net wraps are used in round balers, including those manufactured by Hesston, Kuhn, Case IH, and Kubota).

[10] *See* Kwiatkista Dep., p. 100 at 16-20 ("Q:  So this is a type of baler that uses film rather that net wrap.  A:  Yes, this one.  There's only a few available but probably worldwide 5% of the market, not even 5% would be."); *see also* Ex. 4 at 10-11.

without the use of a net wrap.  As discussed above, *supra* Section IV.A.1, the record evidence shows that some round baling machines can operate using twine.  Because round baling machines can operate and function without the use of net wraps, the net wraps cannot be an "integral component" of those machines.  *See Bauerhin*, 110 F.3d at 775-76.  Acknowledging that round balers can use twine, plaintiff asserts that "bales wrapped in netwrap are preferred to those wrapped in twine[.]"  Pl.'s Br. 17.  Plaintiff's argument misses the mark.  Plaintiff cites no record evidence or authority supporting its position that preference for a given input can transform that input into a machine part.  And even if the record evidence supported plaintiff's argument, which it does not, the argument does not change the undisputed fact that some round baler machines can operate without net wraps, using twine instead.

In addition, the net wraps cannot be an integral part of round baler machines because the mechanical function of these machines is to compress and roll the hay and/or silage together, and the net wraps do not contribute to that function.  *See* Kwiatkista Dep., p. 98 at 19-24.  As described in *supra* Section IV.A.1, the net wraps are a separate product that is used by round balers to bind the crops or hay into bales, after the machine has already compressed the hay or silage into round bales.  *See* Kwiatkista Dep., p. 98 at 25 – p. 99 at 2-3.  As such, even though the round baler uses the net wraps to maintain the crop bale form created by the machine mechanism, the net wraps are not "an integral, constituent, or component part[s]" of a round baler machine. *See Bauerhin*, 110 F.3d at 778 (citing *United States v. Willoughby Camera*, 21 C.C.P.A. 322, 324, 1933 WL 1887 (1933)).

Rather, the net wraps are inserted into the round baler temporarily to then be wrapped around hay or silage bales.  Specifically, the net wraps are inserted into the round balers wound on a cardboard core and then the round balers bind the net wraps onto round bales and the net wrap is

cut from the machine.[11]  Once the net wrap on a cardboard core is depleted, the core is discarded.[12]

Because the net wraps are a consumable input into the round baling machine, arguing that the net

wraps are parts of the machine is akin to arguing that a spool of thread is a part of a sewing

machine.  This is not so.  The net wraps, like a spool of thread, are an input into the round baler

process.  Just like thread is a product used by sewing machines to sew materials together, the net

wraps are a separate product used by round balers to bind bale crops.  And neither the net wraps

nor spools of thread are machine parts.

Using a similar analogy, the Court in *Geo WM. Rueff, Inc. v. United States*, 28 Cust. Ct. 84,

C.D. 1932 (1952), rejected the argument that baler twine was a part of an automatic hay-baling

machine and likened that comparison to arguing that a spool of thread is a part of a sewing

machine.  The Court helpfully noted:

> [T]he function of a hay baler is to compress hay into the form of
> bales and to retain it in its compressed form until the bales have
> been securely tied in the manner hereinbefore set forth, and that the
> only function of bale ties is to hold the hay in its compressed form
> for storage and transportation purposes.
>
> It is true that hay balers and bale ties are associated together in
> baling hay. However, each performs its separate and independent
> function without the loss of any of its essential characteristics, and
> each retains its separate identity, name, character, and use.

*Id.* at 90.  Like baler twine, the net wraps are used by round baler machines, but do not become

parts of the machines solely by virtue of such use.

---

[11]  *See* Kwiatkista Dep., p. 95 at 21-25 ("Q: [E]ach piece of net wrap, however long it is, that's
wrapped around a hay bale in *{sic}* only temporarily in the baler until the point that it is now
ejected with the bale of hay, is that accurate? A: Yes.").

[12]  *See* Kwiatkista Dep., p. 96 at 14-25 ("Q: [O]nce all those bales are made, wrapped and ejected
what's left of your product?  A: The cardboard core. It would be empty. Q: So just a cardboard
core in the baling machine, right? A: In the baling machine, yes. Q: So just a tube of cardboard
left?  A: Yeah. Q: What's done with that? A: That's normally taken by the farmer and put to trash
or collectings, whatever.").

Concerning the second prong of the *Bauerhin* test, plaintiff argues that the net wraps are "specifically designed for baling hay and silage." Pl.'s Br. 22. Relatedly, plaintiff further asserts that net wraps have "a single use which is fixed with certainty at the time of importation, *i.e.*, to wrap hay or silage into round bales." Pl.'s Br. 2; *see also* Pl.'s Br. 17. The parties do not dispute that net wraps are a product used by round baling machines to bind crop bales, however, that does not suggest that net wraps should be classified as parts of a round baler. As the Court noted in *Bauerhin*, "the mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other." *Id.*, 110 F.3d at 778 (citing *Willoughby Camera*, 21 C.C.P.A. at 324).

Plaintiff also suggests that sales and marketing literature reflect that the net wraps are "specifically designed for baling hay and silage" and that the net wraps are "not advertised or sold as [] knit wrap fabric[s] for a general or specific use other than to wrap hay bales." Pl.'s Br. 22. But what plaintiff ignores is that the net wraps are advertised as a type of warp knit, not as a round baler part, which only further supports the classification of the product under heading 6005. More specifically, marketing literature reflects that the net wraps are advertised alongside a similar warp knit fabric, namely pallet nets, which can be used to stabilize pallets and piles of boxes for transportation purposes. *See* Kwiatkista Dep., p. 68 at 10 -18, p. 70 at 14-25, p. 79 at 4-15; Ex. 4 at p. 9 (Topnet marketing brochure listing "round bale and Pallet nets"); Ex. 6, p.5, 11 (Karl Mayer marketing brochure grouping "pallet nets" and "circulate bale nets" as "Packing Nets"). These marketing materials reflect that the net wraps, like the net pallets, are both fundamentally warp knit fabrics, not machine parts. That round baling machines use net wraps to bind crop bales does not transform the net wraps into parts of those machines.

Several court opinions help demonstrate that the net wraps are not machine parts.  Notably, in *Willoughby Camera*, a case described in length in *Bauerhin*, the United States Court of Customs and Patent Appeals determined that certain wood tripods were not a part of the cameras with which they were designed to operate.  *Willoughby Camera*, 21 C.C.P.A. at 325.  The appellate court reversed the trial court's classification of the tripods as parts of cameras and noted that although the cameras in question required support offered by the tripod, the tripods and cameras were still "separate and distinct commercial entities."  *Id.*  The Court noted that "when a tripod and a camera are used together, each 'performs its separate function without loss of any of its essential characteristics.'"  *Id.* (internal citation omitted).  As described above, in *supra* Section IV.A.1, the round baling machine performs its primary mechanical function without the net wraps and the machine can bind the compressed bales using other products, namely twine.  Likewise, the net wraps perform their primary function, securing the crop bales, *after* the net wraps have been released from the round baling machine.

*Bauerhin* reached a different conclusion than *Willoughby Camera*, but it did so by distinguishing, not dismissing, *Willoughby Camera*.  In *Bauerhin*, the Court considered the appropriate classification of cloth canopies that were designed and cut for car seats and of pad inserts for car seats and swings.  *Bauerhin*, 110 F.3d at 775-76.  The Court determined that the canopies were properly classified as "parts: of seats of a kind used for motor vehicles" under subheading 9401.90.10, HTSUS, noting that the canopies were designed for incorporation into a car seat.  *Id.* at 776.  Notably, the alternative classification under consideration was a basket provision for "other made up textile articles," and the Court noted that "there is no specific provision that covers the canopies."  *Id.* at 779.  On the other hand, the Court determined that the pad inserts were properly classified as "articles of bedding and similar furnishing" under heading

9404, HTSUS, pursuant to GRI 1 and GRI 6, rejecting an argument that the pad inserts should be classified as parts. *Id.* at 776-777.  The Court noted that even if the pad inserts could be categorized as parts, notes to HTSUS Chapter 94 directed classification of the pad inserts, because they were imported separately, not as parts but under the specific heading of 9404, HTSUS.  *Id.*

The net wraps at issue here are similar to the tripods at issue in *Willoughby Camera* and less like the car seat canopies classified as parts in *Bauerhin*.  Unlike the car seat canopies, which are affixed to the car seats, the net wraps consist of a consumable input that is used as the machine creates more bales.  The net wraps are designed to bind crop bales after bales have been formed by round baling machines.  The net wraps continue to function by binding the bale form after the crop bale is removed from the round baler.  In addition, unlike in *Bauerhin*, here there is a specific heading that describes the net wrap (*i.e.*, subheading 6005.39.00).

Other cases that plaintiff relies upon are likewise distinguishable.  First and foremost, none of the cases cited by plaintiff involve a choice between a tariff provision covering parts and a provision specifically describing the merchandise in question, as heading 6005, HTSUS, does here.

Plaintiff asserts that the decision in *Ludvig Svensson (U.S.) Inc. v. United States*, 62 F.Supp.2d 1171 (Ct. Int'l Tr. 1999), supports its position that the net wraps are parts of round balers.  Pl.'s Mem. 14.  Not so.  Applying the two-part *Bauerhin* test, *Ludvig Svensson* determined that several screening products used as shade screens and greenhouse roofs were classifiable as parts of agricultural machinery under subheading 8436.99.00, HTSUS.  *Id.*, 62 F. Supp. 2d at 1175.  The imported screens products were used "in the construction of greenhouses to control the environment through shade and heat retention systems, and to control insects."  *Id.* at 1172.  The Court noted that "without the screens, the walls in commercial greenhouses would be bare,

adorned only by the skeleton of shade and heat retention systems, *i.e.* drive motors, cables, aluminum and steel supports, brackets, pulleys, fasteners, and support wires; there would be no control of temperature and humidity and no shade and heat retention system." *Id.* at 1178. Likewise, the Court noted that "[i]nsect screens are also an integral part of the greenhouses themselves" without which "there would no way to control the inspect population within a greenhouse." *Id.* at 1178. Given that the screens at issue in *Ludvig Svensson* were incorporated into and remained a part of the structure of the greenhouses, the Court considered these screens as parts of the greenhouse.

In contrast, as described above, the net wraps are a consumable input used by the round balers to wrap crops and is not "an integral, constituent, or component part" of the round baler. *See Bauerhin*, 110 F.3d at 778 (citing *Willoughby Camera*, 21 C.C.P.A. at 324). The net wraps do not remain affixed into a round baler machine but are inserted into the round balers wound on a cardboard core and then used to bind round bales by the round baling machine. Kwiatkista Dep., p. 39 at 13-15, p. 40 at 10-15, 22-25, p. 41 at 2-4. Once the net wrap in a given roll is depleted, the cardboard core is discarded. *See* Kwiatkista Dep., p. 96 at 14-25 – p. 97 at 2-4. In contrast, like the screens at issue in *Ludvig Svensson*, a component that is permanently incorporated into a round baler may qualify as a part of that machine. *See* Kwiatkista Dep., p.85 at 11-18. Examples of this type of part for the round baler machine are the claws or metal bars that fix the net wraps in place within the round baler, which remain permanent affixed as part of the machine. *See* Kwiatkista Dep., p. 85 at 11-24, p. 86 at 25 – p.88 at 16. However, the replaceable rolls of net wrap are not such parts. *Compare also Trans Atlantic Co. v. United States*, 48 C.C.P.A. 30 (1960) (brackets mounted on the door frame were parts of a door closer); *Gallagher & Ascher Co. v. United States*, 52 C.C.P.A. 11, 16 (1964) (determining an auxiliary heater is a part of a car). Plaintiff's own

30(b)(6) witness acknowledged that greenhouse screens operate as the "walls and the roof" that are "permanent affixed" to a greenhouse and are "completely different" than net wrap.  *See* Kwiatkista Dep., p. 130 at 2-19.

In *Brother Int'l Corp. v. United States*, 248 F. Supp. 2d 1224 (Ct. Int'l Tr. 2002), also described by plaintiff, the Court examined the classification of printer cartridges containing polyethylene terephthalate ("PET") film used in multifunction centers ("MFC") and facsimile machines.  *Id.* at 1225.  The importer argued that the printer cartridges should be classified as parts of those machines whereas CBP argued that the merchandise should be classified under a heading covering photographic film in rolls.  *Id.* at 1227-29.  Applying the two part *Bauerhin* test, the Court concluded that the cartridge was properly classified as a part.  *Id.* at 1229-30.  First, the Court concluded that "these machines cannot function in their intended capacity unless the [cartridge] is properly inserted, as they would lack the means to create a printed image[.]"  *Id.* Second, the Court noted that "the cartridge is exclusively designed and constructed for use" with Brother's machines.  *Id.*  The Court also distinguished the merchandise in question from the decision in *United States v. American Express Co.,* 29 C.C.P.A. 87 (1941), in which the United States Court of Customs and Patent Appeals held that film separators were not classifiable as "parts of cameras."  *Id.* at 1233.  The *Brother* Court quoted *American Express*, noting "that film was a discrete product; like the paper used in a typewriter, it was simply 'the material upon which the camera operates.'"  *Id.* (citing *American Express*, 29 C.C.P.A. at 95).  In contrast, the *Brother* Court noted that the cartridge at issue "is *not* the material on which an MFC machine that uses it operates" or "the output of the MFC machine, but merely plays a role in the production of that output."  *Id*.

Similarly, in *Mita Copystar*, the Court reviewed the classification of toner cartridges used in photocopiers. *See* 160 F.3d at 711. CBP argued that the toner cartridges should be classified as chemical preparations for photographic uses whereas the importer argued that the merchandise should be classified as parts and accessories of photocopiers. *Id.* at 711. The Court determined that the toner cartridge was a part and classifiable under heading 9009, HTSUS. *Id*. at 714. As in *Brother*, the *Mita Copystar* court distinguished, but did not dismiss, *American Express* (contrary to plaintiff's assertion to the contrary, Pl.'s Mem. 13). *Id.* at 713. The *Mita Copystar* court concluded that "[u]nlike typewriter paper, copier paper, or photographic film, toner is not ordinarily regarded as the material upon which the photocopy machine operates." *Id.* In addition, the Court noted that "[t]he cartridges are sold with toner inside; they remain with the toner throughout its use by the photocopier; they are the standard device for providing toner to the photocopier; and they are not designed for reuse." *Mita Copystar Am.*, 160 F.3d at 712–13.

*Brother* and *Mita Copystar* both concerned similar merchandise, cartridges in the former and toner in the latter, and both are entirely distinguishable from the net wraps at issue here. First and foremost, in neither case was there a specific HTSUS heading that directly described the merchandise in question, as heading 6005, HTSUS, does here. Additionally, both decisions noted several factors that do not apply here. In *Brother*, the Court noted that the plaintiff manufactured the cartridges and the relevant machines and that the cartridges were sold together with the machines. 248 F. Supp. 2d at 1229-30. In contrast, RKW does not produce round balers or any other machinery. Kwiatkista Dep., p. 57 at 10-24. Rather, RKW primary sells the net wraps to wholesalers as a stand-alone product. *See* Kwiatkista Dep., p.75 at 16. In addition, as described above, RKW markets net wraps are advertised alongside other warp knits.

In addition, unlike the cartridges at issue in *Brother* and the toner at issue in *Mita Copystar*, the net wraps do not stay incorporated into the round baling machine. As the *Brother* Court noted, "[o]nce the PET film roll within the [cartridge] is used up, it is discarded; it has no intrinsic value or separate purpose" and that as a result, it was not classifiable as photographic film. *Id.* In contrast, the net wraps have a continued purpose of keeping the compressed bales in round bale form after the net wrap has been removed from the round baling machines. *See* Kwiatkista Dep, p. 91 at 19-25, p. 96 at 14-25 – p. 97 at 2-4. Unlike toner and print cartridges, which are incorporated into the respective machines and have a mechanical function integral to the operation of those machines (*i.e.*, the machines could not print without these products), net wraps do not have a function necessary to the balers' operation. Instead, the net wraps are inserted into the balers temporarily for the sole purpose of being wrapped around the crop bale once it has been molded into shape by a round baler, similar to the way paper is inserted into a typewriter so that text can be imprinted onto that paper. As such, the net wraps are not parts of a machine, but rather material upon which the round baler "is designed to operate." *See Willoughby Camera*, 21 C.C.P.A. at 325.

    **B.**    **Even if The Net Wraps Are Parts, They Are Still Not Classifiable Under Heading 8433 Because Heading 6005 More Specifically Describes the Net Wraps**

        **1.**    **Additional U.S. Rule of Interpretation 1(c) Directs Classification Under Heading 6005**

Even if the Court were to conclude that the net wraps are parts of round baling machinery, which, as we demonstrate above, it should not, the net wraps are precluded from classification under heading 8433, HTSUS, by operation of Rule 1(c) of the Additional U.S. Rules of Interpretation ("AUSR"). AUSR Rule 1(c) provides, in relevant part:

> In the absence of special language or context which otherwise requires . . . a provision for parts of an article covers products solely

> or principally used as a part of such articles but a provision for
> 'parts' or 'parts and accessories' shall not prevail over a specific
> provision for such part or accessory.

Applying Rule 1(c) in this case, heading 6005, HTSUS, is a "specific provision" describing the

article at issue, whereas heading 8433, HTSUS, is a provision more generally covering an article,

*i.e.*, round baling machines and other harvesting equipment, and "products solely or principally

used as a part of such articles."  Consequently, even if the Court were to determine that the net

wraps are parts of harvesting equipment, the net wraps should still be classified under heading

6005 by application of AUSR Rule 1(c).

 An instructive example of the application of AUSR Rule1(c) is reflected in *Fujitsu Am.,*

*Inc. v. United States*, 342 F. Supp. 2d 1326 (Ct. Int'l Tr. 2004*), aff'd*, 422 F.3d 1364 (Fed. Cir.

2005).  There, the Court considered whether a cooling component of an automatic data processing

("ADP") machine should be classified in a provision for "[m]achinery, plant or laboratory . . .

involving a change of temperature" or under a provision describing "[p]arts and accessories" of

ADP machines.  *Id.* at 1338 n.5.  The Court applied AUSR Rule 1(c) and held that the

merchandise is properly classified under the machinery, plant, or laboratory provision.  *Id*.

Likewise, in this case, heading 6005, HTSUS, as the specific provision describing the article in

question, should prevail over heading 8433, HTSUS, which covers parts of round balers and other

harvesting equipment.

 Plaintiff argues that heading 8433, HTSUS, should prevail over heading 6005, HTSUS,

because under AUSR Rule 1(c), a provision for a part prevails over a basket provision.  Pl.'s Mem.

23-24.  However, as plaintiff concedes elsewhere in its brief, heading 6005 is an *eo nomine*

provision – not a basket provision.  *See* Pl.'s Br. 17-18 (describing 6005 as an *eo nomine*

provision).  An *eo nomine* provision is one that "describes an article by a specific name."

*CamelBak Prod., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011).  Here, heading 6005, HTSUS, describes the relevant merchandise by a specific name, *i.e.*, "[w]arp knit fabrics," and is therefore an *eo nomine* provision.

Finally, we note that heading 6005, HTSUS, provides for a very specific type of fabrics, *i.e.*, warp knit fabrics, and the phrase "other than those of headings 6001 to 6004" in the heading clarifies that they are different from the fabrics of the preceding headings.  Thus, the use of the word "other" in this context narrows the scope and makes heading 6005, HTSUS, a more (not less) specific provision.

### 2.  Even If GRI 3(a) Applies, Which It Does Not, It Would Direct Classification Under Heading 6005

Even if the Court were to consider the imported merchandise to be *prima facie* classifiable in both heading 6005, HTSUS, and heading 8433, HTSUS, which as we show above, it should not, GRI 3(a) requires that the heading that "provides the most specific description shall be preferred to headings providing a more general description."  The first step in applying GRI 3(a), is for the court to "determine which heading is most specific, comparing only the language of the headings." *JVC Co. of Am. v. United States*, 234 F.3d 1348, 1352 (Fed. Cir. 2000) (citation omitted).

As described in *supra* Section IV.A, the net wraps are explicitly described by the terms of heading 6005, HTSUS, which covers "[w]arp knit fabrics."  Plaintiff does not dispute that the net wraps are a type of warp knit.  The net wraps, are therefore explicitly described by the terms of heading 6005, HTSUS.  As also described above, the Explanatory Notes to heading 6005, HTSUS, further confirm the conclusion that heading 6005 specifically describes the net wraps.  The notes provide, in relevant part, that the heading covers fabrics "made on warp knitting machines (especially Raschel machines) . . . ."  Explanatory Note 60.05 at XI-6005-1, Sixth Edition (2017).

It is undisputed that the imported net wraps of this case were made on a Raschel knitting machine. *See* Kwiatkista Dep., p. 28 at 11-19.

Heading 8433, HTSUS, specifically identifies types of "[h]arvesting or threshing machinery and "balers" by name.  Similarly, subheading 8433.90.50 specifically identifies "haying machines and balers."  *See* 8433.90.50, HTSUS (2018).  As such, heading 8433 is an *eo nomine* provision, as is subheading 8433.90.50.  However, heading 8433.90.50, HTSUS, more generally covers broad categories of "[h]arvesting or threshing machinery" and related parts.  This broad category of harvesting or threshing machinery and related parts offers no description of the specific merchandise at issue here, the net wraps.

Plaintiff argues that heading 8433, HTSUS, is more specific than heading 6005, HTSUS, on the ground that heading 8433 is both a use and an *eo nomine* provision, whereas heading 6005 is an *eo nomine* provision.  Pl.'s Mem. 17.  Specifically, Plaintiff asserts that heading 8433 is a use provision because "for an item to be classified in a provision under Heading 8433 it must be used in harvesting or thrashing which are both agricultural pursuits."  Pl.'s Mem. 19.

This argument lacks support as heading 8433, HTSUS, is not a use provision.  To be a use provision, a heading has to "[describe] articles by the manner in which they are used as opposed to by name."  *Len-Ron Mfg. Co. v. United States*, 334 F.3d 1304, 1308 (Fed. Cir. 2003).  In contrast, an *eo nomine* provision is one "in which an item is identified by name."  *Id.*; *see also CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011) ("[A]n *eo nomine* provision . . . describes an article by a specific name."); *Schlumberger Tech. Corp. v. United States*, 845 F.3d

1158, 1164 (Fed. Cir. 2017) ("Heading 6914, which recites 'Other ceramic articles,' is unquestionably *eo nomine* because it describes the articles it covers by name.")..[13]

Citing *GRK Can., Ltd. v. United States*, 761 F.3d 1354, 1358-1359 (Fed. Cir. 2014), plaintiff argues that "use may be an appropriate consideration when examining classification under eo nomine provisions."  Pl.'s Mem. 19.  Although the decision in *GRK* recognized that "use of subject articles may, under certain circumstances, be considered in tariff classification according to *eo nomine* provisions[,]" *GRK Can.,* 761 F.3d at 1359, there is no reason to consider use in the context of this case because use is not a necessary criteria to distinguish between two potential tariff provisions.  In contrast, in *GRK* the Court was considering classification either under a provision for "other wood screws" or under a provision for "self-tapping screws."  *Id.*  The court considered the use of "wood screws," to clarify that this provision covered screws used with wood, not screws made of wood, in contrast to self-tapping screws, which the Court found were "tended to cut into metal and slate."  *Id.* at 1359-60.  No similar context necessitating the Court's evaluation of use applies here.

Even if the Court concluded that heading 8433, HTSUS, is both an *eo nomine* and a use provision, the legal framework of principal use is a highly fact-intensive inquiry and requires the Court to consider numerous factors.  *United States v. Carborundum Co.*, 63 C.C.P.A. 98, 102, 536 F.2d 373, 377 (1976); *Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312-13 (Fed. Cir.

---

[13] Heading 8433 also covers "machines *for* cleaning, sorting or grading eggs, fruit or other agricultural produce" (emphasis added), which may indicate that heading 8433 is partially a use provision.  However, round balers are not covered by this particular clause.  Rather, balers are covered by the clause in heading 8433 that identifies covered merchandise by name.  *See generally Photonetics, Inc. v. United States*, 33 C.I.T. 1549, 1571 (Ct. Int'l Tr 2009) ("The Federal Circuit appears to support the subtraction of irrelevant words" in a GRI 3(a) comparison).

2012).  Here, plaintiff has put forward no evidence involving the factors of principal use.  *See* Pl.

56.3 Statement.

Moreover, although in some cases a use provision may be considered more specific, this

"convenient rule of thumb" applies "where the competing provisions are in balance[,]" *i.e.*, when

they both equally describe the merchandise in question, which is not the case here.  *See Carl Zeiss,*

*Inc. v. United States*, 195 F.3d 1375, 1380 (Fed. Cir. 1999).  For example, in *Totes, Inc. v. United*

*States,* 69 F.3d 495 (Fed. Cir. 1995), the Court considered the proper classification of a trunk

organizer and concluded that an *eo nomine* provision covering a wide range of bags and "similar

containers" prevailed over a use provision for "parts and accessories of motor vehicles" because

the provision for similar containers "more specifically describes the merchandise than the

competing provision." *Id.* at 499.  As in *Totes*, the competing provisions in this case are "not

equal." *Id.*  As described above, heading 6005, HTSUS, is more specific than heading 8433,

which is a broad provision including a wide range of articles that are used for harvesting, whereas

heading 6005, HTSUS, only entails warp knit fabrics, particularly those made on Raschel

machines.  As such, heading 6005, HTSUS, is more specific in describing the merchandise than

heading 8433, HTSUS.

Further, plaintiff asserts that pursuant to GRI 3(a), heading 8433, HTSUS, provides a more

specific description of the net wraps because the fabrics covered by heading 6005 can have a

variety of uses whereas the goods in issue have only a single application, *i.e.*, as a part of

harvesting machines.  Pl.'s Mem. 21.  However, heading 6005, describes the subject merchandise

by name, *i.e.*, warp knit fabrics, whereas heading 8433, HTSUS, describes an entire class of

merchandise, *i.e.*, harvesting machinery and parts thereof.  *See* Explanatory Note IV(a) to GRI 3(a)

("A description by name is more specific than a description by class (*e.g.*, shavers and hair

clippers, with a self-contained electric motor, are classified in heading 85.10 and not in heading 84.67 as tools for working in the hand with self-contained electric motor or in heading 85.09 as electro-mechanical domestic appliances with self-contained electric motor").

In addition, Explanatory Note IV(b) to GRI 3(a) provides the helpful guidance that, "[i]f the goods answer to a description which more clearly identifies them, that description is more specific than one where identification is less complete." Explanatory Note IV(b) to GRI 3(a) provides two particularly instructive examples. First, the note directs that tufted textile carpets for use in motor cars should be classified in heading 5703, which covers carpets, rather than as accessories of motor cars in heading 8708. Second, the note directs that "[u]nframed safety glass consisting of toughened or laminated glass, shaped and identifiable for use in aeroplanes" is more appropriately classified in heading 7007, "where it is more specifically described as safety glass[,]" rather than in a heading for parts in Chapter 88, which covers aircrafts, spacecrafts, and related parts. Here, heading 6005 describes the net wraps more completely. Similar to the examples described in EN IV(b)(1), heading 6005 specifically describes the net wraps whereas harvesting machinery and related parts is a broad category, which could encompass a wide range of merchandise. As such, heading 6005, HTSUS, is more specific in describing the net wraps than heading 8433, HTSUS.

Finally, plaintiff cites the rule of "relative specificity" described in *Orlando Food Corp*., in which the Court looked for "the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." *Id.*, 140 F. 3d at 1441. Plaintiff has not demonstrated how the requirements for heading 8433, HTSUS, are more difficult to satisfy than heading 6005. *See* Pl. Br. at 21. On the contrary, heading 6005, HTSUS, is more difficult to satisfy because it describes very specific type of knitted fabric produced in a specific

manner whereas heading 8433, HTSUS, broadly encompasses any harvesting equipment. *See, e.g.*, *Well Luck Co., Inc. v. United States*, 887 F.3d 1106, 1115 (Fed. Cir. 2018) (determining a provision that covered "[f]ruit, nuts and other edible parts of plants, otherwise prepared or preserved" was more difficult to satisfy than a provision covering "[s]unflower seeds" because the requirement that merchandise be "prepared or preserved" rendered it more difficult to satisfy.)

### C.   CBP's Prior Rulings Demonstrate The Consistency Of The Agency's Decisionmaking

Plaintiff makes various arguments that HQ H017185, a 2008 CBP Headquarters ruling in which CBP classified merchandise identified as "Bale Netwrap" under heading 6005, should not be accorded deference.  Pl.'s Mem. 7-10 (citing HQ H017185 (April 17, 2008)).  HQ H017185 was not issued to plaintiff, as such it is not binding on this case.  *See* 19 U.S.C. § 1502(a); 19 C.F.R. § 177.9(a).  However, contrary to plaintiff's assertion, HQ H017185 does demonstrate CBP's consistent position that RKW's net wraps and similar merchandise should not be classified as parts of machinery.  *See also* NY N284368 (April 7, 2017), NY N279988 (October 6, 2016), and NY N040299 (October 8, 2008).

In HQ H017185, CBP determined that the merchandise was not a part, noting that the Bale Netwrap was "not imported with the machinery in which it will subsequently be used" and "[i]t has an intrinsic value once used (i.e., to bind hay)."  HQ H017185 at 5.  CBP also concluded that heading 6005, HTSUS, was more specific than heading 8433, HTSUS.  *Id.* at 4.[14]

Plaintiff directs the Court to several other examples in which it claims that CBP acted inconsistently with HQ H017185 and with its classification in this case (Pl.'s Mem. 9-10),

---

[14]  *See also* HQ H008546 (April 18, 2008) (warp knit open-work tubular polyethylene net mesh fabric which after importation is mounted into machinery at a packing station which cuts the fabric into small bag-size pieces classified under heading 6003, HTSUS, as warp knit open-work fabric).

however plaintiff mischaracterizes those examples.  In NY 859390 (February 4, 1991) and NY G87841 (March 9, 2001), CBP classified merchandise described as "net wrap" under subheading 6002.43.00, HTSUS.  In 2001, subheading 6002.43.00, provided for several fabrics, including "warp knit . . . , of man-made fibers[.]"  But Chapter 60 of the HTSUS was expanded and revised in 2002, including by the creation of heading 6005, which covers warp knit fabrics.  In 2018, when RKW imported the net wraps in this case, subheading 6002.43.00, HTSUS, no longer even existed.[15]  *See* Chapter 60, HTSUS (ed. 11, 2018).

There is only one prior ruling identified by plaintiff in which CBP did not classify the merchandise under review in the ruling as warp knit fabrics.  *See* NY F82799 (March 6, 2000).  However in that case, the merchandise, described as "bale cover," was classified as "woven fabrics of synthetic filament yarn" under subheading 5407.20.00, HTSUS, and was likewise not classified as a part of machinery.  In sum, plaintiff misses the mark in discussing these rulings.

Plaintiff's citation of HQ H219598 is likewise misguided.  *See* Pl.'s Mem. 10 (citing HQ H219598 (January 5, 2016)).  HQ H219598 is a CBP Headquarters ruling concerning anti-insect insulating greenhouse nets that CBP, following the Court's decision in *Ludvig Svensson*, determined were classifiable under heading 8436, HTSUS, as other agricultural machinery.  HQ H219598 at 1.  The insulating greenhouse nets, like the screens at issue in *Ludvig Svensson*, are entirely distinguishable from the net wraps at issue here.  CBP describes that the greenhouse nets were "used either for incorporation into agriculture structures or for making those structures (*i.e.*,

---

[15] Plaintiff notes that in HQ H017185, NY N279988 (October 6, 2016), NY N040299 (October 8, 2008), and NY N284368 (April 7, 2017), the net wrap was classified under subheading 6005.90.90, HTSUS, as opposed to 6005.39.00, HTSUS, as is the case in this action.  The difference between the two provisions is based on the type of fabric or print, as opposed to a substantive difference.  Here, there is no dispute that the net wraps are made of synthetic materials.  *See* Kwiatkista Dep., p. 31 at 14, p. 34 at 5-7.

shade houses, greenhouses, etc.) themselves[.]"  In contrast, the net wraps are not permanently affixed into round baling machinery.

Contrary to plaintiff's assertions to the contrary, in HQ H017185 and other CBP rulings discussed above, CBP has consistently classified merchandise that is similar to the net wraps at issue here under a provision for warp knit or, where appropriate based on the composition, in other headings for textile products, rather than as parts of machinery.  Although HQ H017185 is not binding in this case, it demonstrates CBP's consistent approach, thoroughness, and expertise in interpreting the relevant tariff provisions.  *See Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1355 (Fed. Cir. 2003) (classification rulings "'may surely claim the merit of its writer's thoroughness, logic and expertness, its fit with prior interpretations, and any other sources of weight.'" (citing *United States v. Mead Corp.*, 533 U.S 218, 235 (2001)).

**D.     There is No Long-Standing Practice of Classifying Goods Used to Bale Hay As Duty-Free Parts.**

Finally, plaintiff asserts that it is a "long-standing practice that the courts have held that goods which are used to bale hay are classified duty-free under an agricultural provision."  Pl.'s Mem. 20.  Plaintiff relies on several decades-old decisions of the United States Customs Court involving predecessors to the relevant provisions in the Tariff System of the United States ("TSUS") that do not exist under the HTSUS, and do not support its position.

In *Wilbur-Ellis Co. v. United States*, 26 C.C.P.A. 403, C.A.D. 47 (1939), the Court examined the classification of steel bale ties and ultimately concluded that the ties should be classified under a chapter for "all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts."  *Id.* at 405.  In *Geo WM. Rueff, Inc. v. United States*, 28 Cust. Ct. 84, C.D. 1932 (1952), the Court determined that baler twine was classifiable under a paragraph 1622 of the Tariff Act of 1930 that covered "[a]ll

binding twine manufactured from" a variety of materials.  And finally, in *Frank W. Winne & Sons v. United States*, 72 Cust. Ct. 62 (Cust. Ct. 1974), the Court classified binding twine not used in agricultural pursuits under a provision covering "cords and twines," rejecting classification under paragraph 1622.  *Id.* at 63.  These cases are irrelevant and provide no guidance as to what constitutes a part of agricultural equipment under heading 8433.

## V.    THE NET WRAPS ARE NOT CLASSIFIABLE UNDER HEADING 8436, HTSUS

Plaintiff suggests, in the alternative, that if round baling machines are not properly classified under heading 8433, HTSUS, and by extension, the net wraps are not properly classified as parts of round baling machines under subheading 8433.90.50, then the net wraps could be classified under heading 8436, HTSUS, as parts of "other agricultural . . . . machinery[.]"  Pl.'s Mem. 24.  However, the net wraps are not classifiable under heading 8436, HTSUS, for the same reasons articulated above with respect to heading 8433, HTSUS.  Specifically, the net wraps are not parts of round baling machines or any other agricultural machinery[16], as discussed in *supra* Section IV.A.

In addition, even if the net wraps are considered parts of the round baling machines, the merchandise would still be properly classified under heading 6005, HTSUS.  As discussed above

---

[16] "Agricultural" is defined as "of, relating to, used in, or concerned with agriculture[.]"  *See* "Agricultural." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/agricultural (accessed May 10, 2022).  As described above, machinery is defined, in relevant part, as "the working parts of a machine" and " machine" is in turn defined as " a mechanically, electrically, or electronically operated device for performing a task[.]"  *See* "Machinery." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/machinery (accessed May 10, 2022); "Machine." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/machine (accessed May 10, 2022).  Defendant does not dispute that a round baler is a type of agricultural machinery but, as between heading 8433 and heading 8436, the plain language of the text shows that heading 8433 more specifically describes round baler machines.  As described in the accompanying text, however, the net wraps are not parts of any machine.

in connection with heading 8433, HTSUS, *supra* Section IV.B, AUSR Rule 1(c) directs that a classification specifically describing merchandise will prevail over a classification that describes the good as a part.  Finally, heading 6005 describes the merchandise by name whereas heading 8436 is a residual provision covering "other agricultural . . . . machinery[.]"

In a cursory effort to support classification under heading 8436, plaintiff asserts that "[j]urisprudence favors duty-free treatment of agricultural equipment."  Pl.'s Br. 24.  This argument likewise does not support plaintiff's arguments in favor of heading 8436.  Although courts have acknowledged congressional intent to interpret the agricultural provisions of tariff schedules liberally, these courts are still "bound to an interpretation which follows the specific language of the provisions involved."  *See F.W. Myers & Co. v. United States*, 615 F. Supp. 569, 573 (Ct. Int'l Trade 1985).  Here, the specific language of the provisions involved suggests that the net wraps are properly classified under heading 6005, HTSUS.

## VI.   PLAINTIFF ABANDONS THE THIRD CAUSE OF ACTION OF THE COMPLAINT

Plaintiff's third cause of action in the complaint alleged that the net wraps are classifiable under subheading 5911.90.00, HTSUS (Compl. ¶ 18-22), which covers "[t]extile products and articles, for technical uses, specified in note 8 to this chapter: Other[.]"  *See* 8436.99.00, HTSUS (2018).  However, plaintiff has abandoned this claim.  *See* Ex. 5, p. 7 (Pl.'s Responses to Def.'s First Set of Interrogatories).  Nor does plaintiff raise any arguments regarding this classification in its Motion for Summary Judgment.  As a result, plaintiff has waived any argument that the net wraps are properly classified under subheading 5911.90.00, HTSUS.  *See United States v. Great American Ins. Co.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived" (citations omitted)).

36

And in any event, this argument lacks merit.  Note 7 to Chapter 59 provides that "[h]eading 5911 applies to the following goods, which do not fall in any other heading of section XI."  As we demonstrated above, plaintiff offers no argument contradicting that the net wraps are clearly described by the terms of heading 6005, HTSUS, which is encompassed by Section XI. Consequently, the imported merchandise cannot be classified under heading 5911, HTSUS, by operation of the exclusionary provision for Note 7 to Chapter 59.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that an order be entered denying plaintiff's motion for summary judgment, granting defendant's cross-motion for summary

judgment and dismissing this action in its entirety, and granting defendant such other and further

relief as may be just and appropriate.

|  | Respectfully submitted, |
|---|---|
|  | BRIAN M. BOYNTON |
| Of Counsel: | Principal Deputy Assistant Attorney General |
|  |  |
| Fariha Kabir | PATRICIA M. McCARTHY |
| Office of the Assistant Chief Counsel | Director |
| International Trade Litigation |  |
| U.S. Customs and Border Protection | /s/ Justin R. Miller |
|  | JUSTIN R. MILLER |
|  | Attorney-In-Charge |
|  | International Trade Field Office |
|  |  |
|  | /s/ Aimee Lee |
|  | AIMEE LEE |
|  | Assistant Director |
|  |  |
|  | /s/ Elisa S. Solomon |
|  | ELISA S. SOLOMON |
|  | Trial Attorney |
| Dated: May 10, 2022 | Department of Justice, Civil Division |
| New York, New York | Commercial Litigation Branch |
|  | 26 Federal Plaza – Suite 346 |
|  | New York, New York 10278 |
|  | (212) 264-0583 |
|  |  |
|  | *Attorneys for Defendant* |

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| RKW KLERKS INC. <br><br> Plaintiff, <br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 20-00001 |

## CERTIFICATE OF COMPLIANCE

I, ELISA S. SOLOMON, a trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's May 10, 2022 cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, relying upon the word count feature of the word processing program used to prepare the brief, certifies that this cross-motion and response complies with the word count limitation under the Court's chambers procedures, and contains 10,407 words.

/s/ Elisa S. Solomon

**DEFENDANT'S EXHIBIT LIST**

| Exhibit No. | Description | Cross-Reference to Exhibits in Plaintiff's USCIT Rule 30(b)(6) Deposition of Stefan Kwiatkista |
|---|---|---|
| Ex. 1 | Kwiatkista Deposition Transcript | N/A |
| Ex. 2 | Physical sample of Rondotex | Kwiatkista Dep. Ex. C |
| Ex. 3 | Physical sample of Top Net | Kwiatkista Dep. Ex. D |
| Ex. 4 | Pl.'s Initial Disclosures attaching RKW, "Perfect round bale netting for professionals" brochure | Kwiatkista Dep. Ex. E |
| Ex. 5 | Pl.'s Responses to Def.'s First Set of Interrogatories | Kwiatkista Dep. Ex. F |
| Ex. 6 | Karl Mayer brochure | Kwiatkista Dep. Ex. G |
| Ex. 7 | Kuhn North America, Fixed Chamber Round Balers brochure | Kwiatkista Dep Ex. I |
| Ex. 8 | Kubota Round Balers and Wrappers brochure | Kwiatkista Dep Ex. J |
| Ex. 9 | Hesston 2900 &1700 Series Round Balers brochure | Kwiatkista Dep. Ex. K |
| Ex. 10 | Case IH RB455A brochure | Kwiatkista Dep. Ex. L |
| Ex. 11 | Case IH RB5 and Utility Series Round Balers brochure | Kwiatkista Dep. Ex. M |