21UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE HON: MARK A. BARNETT, CHIEF JUDGE

|  |  |  |
|---|---|---|
|  | X |  |
| RKW KLERKS INC., |  |  |
|  | : |  |
| Plaintiff, |  |  |
|  | : |  |
| v. |  |  |
|  | : | Court No. 20-00001 |
| UNITED STATES, |  |  |
|  | : |  |
| Defendant. |  |  |
|  | X |  |

**PLAINTIFF'S REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGEMENT**

Philip Yale Simons, Esq.
Jerry P. Wiskin, Esq.
SIMONS & WISKIN
98 Craig Road
Manalapan, NJ 07726
Tel (732) 316-2300
*Attorneys for RKW Klertks Inc.*

Dated: June 3, 2022

**TABLE OF CONTENTS**

|     |     | Page |
| --- | --- | --- |
| I.  | IT IS THE INTENT OF CONGRESS TO LIBERALLY INTERPRET AGRICULTURAL PROVISIONS OF THE TARIFF | 1 |
| II. | THE GOVERNMENT'S CLAIM THAT HEADING 6005 IS THE ONLY PROVISION DESCRIBING THE NETWRAP IN ISSUE HAS NO BASIS IN FACT OR LAW | 2 |
| III. | THE GOVERNMENT COMPLETELY MISCONSTRUES WHAT A PART IS FOR CUSTOMS PURPOSES | 3 |
|     | A. Dictionary Definitions of a Part Are Irrelevant | 3 |
|     | B. The Net Wrap in Issue is Dedicated to a Single Use | 3 |
|     | C. The Netwrap in Issue Is Not Used to Wrap Pallets | 5 |
|     | D. In Determining Whether an Article is a Part, the Function of the Article Must Be Examined | 5 |
|     | E. Heading 8433 is a Use Provision | 8 |
|     | F. A Parts Provision Prevails Over a Basket Provision | 12 |
| IV. | CONCLUSION | 13 |

## TABLE OF AUTHORITIES

**CASES**   Page(s)

*Allis-Chambers Corp. v. United States,* 7. C.I.T. 108 (1984) .............................. 1

*Anval Nyby Powder AB v. United States*,
927 F. Supp. 463 (Ct. Int'l Tr. 1996) ................................................................ 12

*Baurehin Tech Ltd. P'ship v. United States*,
110 F. 3d 774 (Fed. Cir. 1997) ......................................................................... 3, 4

*Brother Int'l Corp. V. United States*,
248 F. Supp. 2d 1224,1231 (Ct. Int't Tr. 2002) ................................................ 7

*Deckers Ourdoor Corp v. United States*,
844 F. Supp. 2d 1324 (Ct. Int'l Tr. 2012) ......................................................... 12

*Ford Motor Co. v. United States*,
59 C.C.P.A. 19, C.A.D. 946 (1968) .................................................................. 4

Geo. Wm. Rueff, Inc., 41 C.C.P.A. 95, C.A.D. 535 (C.C.P.A. 1953) .................. 11

*GRK Can. Ltd. v. United States*, 761 F.3d. 1354 (Fed. Cir. 2014) ....................... 8

*Irwin Indust. Tool Co. v. United States*,
222 F. Supp. 3d. 1210 (Ct. Int'l Tr. 2017) ........................................................ 8

*Len-Ron Mfg. Co. v. United States*, 334 F. 3d 1304 (Fed. Cir. 2003**)** ................. 9

*Logitech, Inc. v. United States*, 532 F. Supp. 1358 (Ct. Int'l Tr. 2021) .............. 9

*Ludvig Svensson v. United States*, 62 F. Supp. 2d 1171 (Ct. Int'l Tr. 1999) ....... 1, 4, 5, 8

*Rollerblade, Inc. v. United States*, 282 F. 3d 1349 (Fed. Cir. 2002**)** ................... 6

*R.T. Foods, Inc. v. United States,* 757 F.3d 1349 (Fed. Cir. 2014) ..................... 12

*United States v. Carborundum Co.,*
63 C.C.P.A. 98, 536 F. 2d. 373 (1976) .............................................................. 9

*United States v. Geo. Wm. Rueff, Inc.*, 41 C.C.P.A. 95 (C.C.P.A. 1953) .............. 11

*United States v. Norman G. Jensen, Inc.*,
550 F.2d 662  (Cust. Ct. 1977) .............................................................................   1

*United States v. Pompeo*, 43 C.C.P.A. 9, C.A,D, (1955) ......................................   3, 4

*United  States v.Willoughby Camera*,
21 C.C.P.A. 322, T.D. 46851 (1933) ...................................................................   3, 5

**STATUTES:**

HTSUS Heading 6005 .........................................................................................   2

HTSUS Heading 8433 .........................................................................................   2

# I.
## IT IS THE INTENT OF CONGRESS TO LIBERALLY INTERPRET AGRICULTURAL PROVISIONS OF THE TARIFF

Congress has long expressed a desire to favorably treat agricultural products. *See Allis-Chambers Corp. v. United States,* 7. C.I.T. 108, 109 (1984):

> In addition to the noted legislative history, Congress has traditionally accorded agricultural equipment preferential treatment. It has long been established that "the tariff provisions for agricultural implements should be liberally construed so that the evident intent of Congress to benefit agriculture [can] be effected." *F. W. Myers & Co. v. United States*, 59 Cust. Ct. 445, 450 (1967); see *United States v. American Express Co.*, 12 Ct. Cust. Appls. 483, 486 (1925).

This intention was reinforced in *Ludvig Svensson v. United States*, 62 F. Supp. 2d 1171, 1177 (Ct. Int'l Tr. 1999), where the court opined that the heading for agricultural equipment:

> ... is intended to cover "machinery . . . which is of the type used on farms (including agricultural schools, co-operatives or testing stations), in forestry, market gardens, or poultry-keeping or bee-keeping farms or the like." *Harmonized Commodity Description and Coding System, Explanatory Notes* at 1317 (1996). Moreover, "Congress has traditionally accorded agricultural equipment preferential treatment. It has long been established that 'the tariff provisions for agricultural implements should be liberally construed so that the evident intent of Congress to benefit agriculture [can] be effected.'" *Allis-Chalmers Corp. v. United States*, 7 CIT 108, 111 (1984) (quoting *F.W. Myers & Co. v. United States,* 59 Cust. Ct. 445, 450 (1967)).

*See also United States v. Norman G. Jensen, Inc*., 550 F.2d 662 (Cust. Ct. 1977)

There is no question that hay balers are agricultural machinery and that round hay balers are used to produce useable round bales . Def. Statement of Material Facts; ¶¶ 20-22.  These round bales must be wrapped in order to produce commercially viable round hay bales.  Schmeckpeper Aff't. ¶¶ 15-23.

## II.
## THE GOVERNMENT'S CLAIM THAT HEADING 6005 IS THE ONLY PROVISION DESCRIBING THE NETWRAP IN ISSUE HAS NO BASIS IN FACT OR LAW.

The two competing tariff provisions in issue are Headings 6005 and 8433, which provide as follows:

6005        Warp knit fabrics (including those made on galloon knitting machines), other than those of headings 6001 to 6004.

8433        Harvesting or threshing machinery, including straw or fodder balers; grass or hay mowers; machines for cleaning, sorting or grading eggs, fruit or other agricultural produce, other than machinery of heading 8437; parts thereof:

The Government claims (Gov't. Br at. 12), that because Heading 6005 describes the merchandise in issue, the net wrap in issue is classified under this provision pursuant to HTSUS General Rule of Interpretation ("GRI") 1 and there is no need to go further. However, before this GRI can be the basis for classifying the goods in issue, it must be determined whether Heading 6005 is the only Heading which describes the imported goods. Since Heading 8433 provides for "Harvesting ... machinery ... including ... balers and ... parts thereof," it first must be determined whether the net wrap in issue is a "part" for customs purposes under Heading 8433. For the reason set forth below and in our Brief-in-Chief, Plaintiff maintains the netwrap in issue is a part for tariff purposes and is properly classified in Heading 8433.

# III.
## THE GOVERNMENT COMPLETELY MISCONSTRUES WHAT A PART IS FOR CUSTOMS PURPOSES.

**A**. ***Dictionary Definitions of a Part Are Irrelevant***.  The Government (Gov't. Br. at 15), argues that the netwrap in issue does not meet certain dictionary definitions of a part.  For purposes of ascertaining whether a particular item is a part under the tariff, the courts have defined what a part is for tariff purposes.  *See e.g.  Baurehin Tech Ltd. P'ship v. United States*, 110 F. 3d 774 (Fed. Cir. 1997), *United States v. Pompeo*, 43 C.C.P.A. 9, C.A.D 602 (1955) and *United  States v. Willoughby Camera*, 21 C.C.P.A. 322, T.D. 46851 (1933) among others.

**B**. ***The Net Wrap in Issue is Dedicated to a Single Use***.  There is no question that the net wrap has a single commercial use and that use is to bale hay. Kwiakiska Aff't. ¶8; ("Topnet and Rondotex® only have one use and that is to use in a round baling machine to wrap round bales;." Schmeckpeper Afft. at ¶ 21 ("Netwrap only has one commercial use and that is to wrap hay or silage bales.") *See also*  Def. Exhibit 1, Kwiakiska  Dep. at p.77 where Mr. Kwiakista confirmed that netwrap only has a single use, not only in the United States, but worldwide.

> Q Okay. And fair to say that in the United  States RKW does not market this net wrap for any other use other than agricultural round bales correct?
>
> A 100%.
>
> Q How about Europe or in the international market?
>
> A Same

It is well settled that when a part has a dedicated single use with a particular article it is part of that article. *Bauerhin, supra,* 110 F. 2d. at 779:

> Under *Pompeo*, an imported item dedicated solely for use with another article is a "part" of that article within the meaning of the HTSUS. The canopies in this case are dedicated solely for use with the child safety seats. They are neither designed nor sold to be used independently. Therefore, the canopies are properly considered parts under the HTSUS.

Like the canopies in *Bauerhin* the netwrap in issue is neither designed nor sold to be used independently. It is designed solely for and use in a round hay baling machine.

In *Ludvig Svension, supra*, 62 F. Supp. 1171, the court rejected the Government's argument that greenhouse and environmental screens imported in rolls were materials (like the Governments's claim about the netwrap in issue) and held that:

> An examination of relevant case law shows that a material may be classified as an unfinished article when the fabric in its imported condition has been so far advanced beyond the stage of materials so as to be dedicated to and commercially fit for use as that article and incapable of being made into more than one article or class of articles. *See Doherty-Barrow of TX, Inc. v. United States*, 3 C.I.T. 228 (1982) (holding that steel strips were so far advanced in manufacture as to be dedicated for use in making steel cotton bale ties even though not cut to length, but having only one commercial use); *Heraeus-Amersil, Inc. v. United State*s, 10 C.I.T. 258, 640 F. Supp. 1331 (1986) (holding that precious metal contact tape was advanced beyond the state of a material and was part of telephone relays even though the tape was not welded to contacts). *Cf*. Avins *Industrial Products Co. v. United States*, 72 Cust. Ct. 43, 376 F. Supp. 879 (1974); *Bendix Mouldings, Inc. v. United States*, 73 Cust. Ct. 204, 388 F. Supp. 1193 (1974).

62 F. 2d at 1179. *See also Ford Motor Co. v. United States*, 59 C.C.P.A. 19, 24, C.A.D. 946 (1968), where the court set forth what proof was needed to establish that a article is a part of an agricultural machine:

> In order to qualify a particular engine part as a part of an agricultural implement, Ford would have had to establish that that *particular* part was dedicated to use in that engine (as opposed to use in one of the other engines which admittedly had some nonagricultural utilization) [emphasis in original].

Here, the evidence clearly establishes that the netwrap in issue is dedicated to be used with an agricultural machine. Moreover, if round hay balers were only designed to make bales without the need for wrapping, why have the baler manufacturers include the mechanical equipment in a baler so that it provides for use of the netwrap? *See* Def. Exhibits 8 and 11.

    C. ***The Netwrap in Issue Is Not Used to Wrap Pallets.*** The Government (Gov't. Br. at 19) implies that the netwrap in issue is also used to wrap pallets. However, the evidence of record illustrates that the netwrap in issue is not used for such purposes. *See* Def. Exhibit 1, Kwiakiska Dep. at pp. 71-72, which explains that netwrap and pallet wrapping are products with different physical properties which makes pallet wrapping material unsuitable for wrapping bales and that Plaintiff does not sell pallet wrapping material in the United States.

> Q And you said the strength of the round bale netting is better than the strength of the pallet netting, how is that accomplished?
>
> A We extrude the film, the primary film, much thicker and with a different raw material. There we use LDPE for the pallet netting.
>
> Q But it's manufactures in the same manner?
>
> A It is extruded on the same extruders, different raw material, different thickness, different -- just this one individual size, yeah.
>
> Q And does RKW sell netting for pallet wrapping and stabilization?
>
> A We do sell it but for a couple of years not to the United States. It's, yeah, close to nonexistent in RKW.

Finally, even if the netwrap was so used, that use would be a fugitive use.

    D. ***In Examining Whether an Article is a Part, the Function of the Article Must Be Examined***. The legal test of whether a material is a part was described in *Ludvig Svensson, supra*, 627 F. Supp. at 1178:

5

> First, the court must determine whether the imported item is "an integral, constituent, or component part, without which the article to which it is to be joined, could not function as such article." *Id.* at 778. (quoting *United States v. Willoughby Camera Stores*, 21 C.C.P.A. 322, 324 (1933)). Second, the court must establish whether the imported item is dedicated solely for use with the article in question. *Id.* at 778.(following the holding in *United States v. Pompeo*, 43 C.C.P.A. 9 (1955)).

In *Rollerblade, Inc. v. United States*, 282 F. 3d 1349, 1353 (Fed. Cir. 2002), the Federal Circuit stated the legal definition of a part:

> A "part" is "an essential element or constituent; integral portion which can be separated, replaced, etc." *Webster's New World Dictionary* 984 (3d College Ed. 1988). Thus, based on the common meaning, the term "part," like the term "accessory," must have a direct relationship to the primary article, rather than to the general activity in which the primary article is used. Again, the protective gear in this case has a relationship to the activity of roller skating, and not directly to the roller skates.

> In *Trans Atlantic Co. v. United States*, this court's predecessor held that brackets mounted on the door frame were parts of a door closer because they were necessary to the efficient operation of the door *closer. 48 C.C.P.A. 30 (1960). Likewise,* in *Gallagher & Ascher Co. v. United States*, our predecessor court noted the purpose of an auxiliary heater in an air cooled automobile: "The auxiliary heater contributed to the safe and efficient operation of the Volkswagen in frigid temperatures in relation to comfort of its occupants and in aid of the indispensable safety factor of vision by assisting in the removal of ice from the windshield." 52 C.C.P.A. 11, 16 (1964). The *Gallagher* court then held: "When once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the function for which it was designed, [the auxiliary heater] became a part of the automobile within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified." *Id*.

The sole function of a round hay baler is to produce commercially acceptable hay bales for feedstock.

sale. Schmeckpeper Aff't. ¶¶ 15-23:

> 15. Based upon my personal and work experience, wrapping bales is required to produce quality hay or silage bales feed for livestock.

6

16. Based upon my personal and work experience, wrapping bales in net wrap or plastic sheeting results in bales with superior moisture and humidity levels which increases its value as livestock feed.

17. Based upon my personal and work experience, wrapping hay bales produces less losses when compared to unwrapped bales when the bales are left in the field. Moreover, using net wrap to wrap round bales is preferred over wrapping with twine.

18. Based upon my personal and work experience, wrapping bales makes it easier to transport the bales to a storage facility or to purchasers. Unwrapped bales cannot be easily transferred to storage areas or to a purchaser's location.

19. Based upon my personal and work experience, wrapping hay bales is a preferred method of producing quality feedstock for livestock.

20. In my opinion and based upon my experience, farmers prefer wrapped bales over unwrapped bales for multiple reasons: (1) wrapping bales with net wrap reduces losses when bales are left in the field; (2) unwrapped bales are less dense than wrapped bales; (3) unwrapped bales have lower foliage quality than wrapped bales; (4) net wrapped bales shed water better than bales wrapped in twine; (5) unwrapped bales are more difficult to transport than wrapped bales; and (6) wrapping with net wrap saves time because only two or three wraps are required with net wrap as may as 30 turns may be needed with twine.

21. Net wrap only has one commercial use and that is to wrap hay or silage bales.

22. A round hay baler's only function is to produce round bales of hay or silage.

23. A round hay baler could not fulfil this function without the use of a method to wrap the bale produced in the baler. That element is supplied by net wrap.

As the court noted in *Brother Int'l Corp. v. United States*, 248 F. Supp. 2d 1224,1231 (Ct. Int't Tr. 2002):

> The uncontroverted and unimpeached testimony of a single witness may be sufficient to establish the use of an imported good. *United States v. Gardel Indus.*, 33 CCPA 118, 122 (1946); *Arden Mfg. Co. v. United States*, 65 Cust. Ct. 594, 599 (1970); *accord Innotech Aviation Ltd. v. United States*, 21 CIT 1392, 1395, 992 F. Supp. 411, 414 (1997).

Thus. the opposing party has the burden to refute the claimed uncontested facts. Since the Defendant has not refuted these facts, they are sufficient to establish that hay balers are used to produce commercially useable and saleable round hay bales.

Like the automobiles in *Gallerger, supra*, and *Pompeo, supra*, and greenhouses in *Ludvig Svernsson, supra*, hay balers do not require netwrap to make round bales. But the use of net wrap contributes to "the performance of the function for which the hay baler was designed. *Compare Gallagher, supra.*

**E. *Heading 8433 is a Use Provision.*** The court can consider actual and intended use of a product in ascertaining its classification. *See GRK Can. Ltd. v. United States*, 761 F.3d. 1354, 1358 (Fed. Cir. 2014) ("Nevertheless, even under the HTSUS, classification decisions may still require an analysis of the intended use of the products."). *See also Irwin Indust. Tool Co. v. United States*, 222 F. Supp. 3d 1210 (Ct. Int'l Tr. 2017). Heading 8433 provides for hay baling machines. This description clearly indicates the actual use of a baling machine is to bale hay, In any event, if that does not indicate an actual use, it signals an intended use. In *GRK*, *supra*, the court noted that under the HTSUS:

> .... classification decisions may still require an analysis of the intended use of products. For example, in *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1368-69 (Fed. Cir. 2011), we cited *Quon Quon* in reversing the Court of International Trade's determination that articles were "improved backpacks" on the grounds that their principal intended use was for hydration. We held that the "hydration component of the subject articles is not merely incidental to the cargo component but, instead, provides the articles with a unique identity and use that removes them from the scope of the eo nomine backpack provision." *Id*. at 1369 (emphasis added). Therefore, even though Camelbak concerned *eo nomine* HTSUS provisions, we recognized that the use of the subject articles was an important aspect of their identity and, consequently, the articles' classification. In such a case, the court's inquiry includes the subject article's physical characteristics, as well as what features the article has for typical users, how it was designed and for what objectives, and how

8

it is marketed. Id. at 1367-69; *see also Casio, Inc. v. United States*, 73 F.3d 1095, 1098 (Fed. Cir. 1996).

As the court stated in *Irwin Indust. Tool Co. v. United States*, *supra*, at 222 F. 3d at 1220:

> .... [it] must also consider whether use is of "paramount importance." See GRK II, 761 F.3d at 1358–59 (quoting Quon Quon Co., 46 CCPA at 73). To say that use is of paramount importance is not to say that a product has a use. All products have uses. Indeed the physical characteristics of a product will normally reflect the fact that a product has been designed for a use. Therefore, the court may need to explore the design and intended use of the article conveyed by a tariff term to identify the requisite physical characteristics and exclude articles with overlapping physical characteristics that are nonetheless designed and intended for other uses.

An *eo nomine* provision which is also a use provision is classified according to its the tariff provision which describes its use. In *Len-Ron Mfg. Co. v. United States*, 334 F. 3d 1304, 1313 (Fed. Cir. 2003), the court ruled that "where a product is equally described by both a 'use' provision and an *eo nomine* provision, the "use" provision is typically held to be the more specific of the two." *See also Logitech, Inc. v. United States*, 532 F. Supp. 1358 (Ct. Int'l Tr. 2021).

The decision in *United States v. Carborundum Co.,* 63 C.C.C.A. 98, 536 F. 2d. 373 (1976) is the seminal case concerning the determination of whether imported merchandise is used in the same manner as merchandise which defines the class. As demonstrated, all of the *Carborundum* factors are satisfied with respect to the netwap in issue and it is properly classified in Heading 8433. These factors:

> [1] use in the same manner as merchandise which defines the class; [2] the general physical characteristics of the merchandise; [3] the economic practicality of so using the import; [4] the expectation of the ultimate purchasers; [5] the channels of trade in which the merchandise moves; [6] the environment of the sale, such as accompanying accessories and the manner in which the merchandise is advertised and displayed; and [7] the recognition in the trade of this use.

As demonstrated below, the *Carborundum* factors which apply to fabrics of Heading 6005 are dramatically different than the factors which apply to the subject net wrap.

10

(1) *The general physical characteristics of the goods.* The general physical characteristics of all manufacturers of net wrap are almost identical. The net wrap is wound on a cardboard core. Netwrap is sold in large sizes ranging from 48 inches wide by 9,840 feet in length to 67 inches wide by 10,000 feet long. *See* Plaintiff Br. in Chief at 2; Kwaiskista Aff't. ¶ 14, Def. STMF ¶ 14. On the other hand, wrap knit fabric of Heading 6005 is sold by the yard and the Government has not offered any evidence reflecting that warp knit fabrics are sold in the same sizes that netwrap is sold. *See* Attached Exhibit 1 to this reply brief (sales literature of a sellers of warp knit fabric.)

(2) *The use in the same manner as merchandise which defines the class*. The class of goods in which the netwrap in issue belongs is agricultural goods, Kwakista Aff't. ¶ 14. In contrast, warp knit fabrics have uses in many classes of goods, such as apparel, drapery, shoes, fabrics for printing and advertising, coating substrates and laminating backgrounds, among others. *See* Exhibit 2 attached hereto.

(3) T*he economic practically.* A single roll of netwrap costs between $200 and $300. *See* Exhibit 2 hereto. On the other hand, warp knit fabrics are sold by the yard at varying prices from a few dollars to over $40 per square yard. *See* Exhibit 1 hereto. A comparison of the price per square yard reflects the vast difference in prices. For example, taking a netwrap 64 inches wide by 7,000 feet long translates into 4,148 square yards. The price per square yard ($200/4,148 sq. ft.) produces a price of $0.482 per square yard, or 4.8 cents per square yard. (If a higher price was used for this comparison, the price per square yard would be slightly more than 4.8 cents, but nowhere near the square yard price for warp knit yards.) The cost for a roll of netwrap is considerably different than the prices which knit warp fabric is offered for sale.

(4) *The expectations of the ultimate purchaser.* The purchasers of netwrap expect to be able to use the net wrap in hay balers to bale hay and keep the baled hay commercially viable. Schmeckpeper Aff't. ¶¶ 15-23.

(5) *The channels of trade.* Netwrap is sold in the agricultural trade by distributors of agricultural equipment as well as hay baler manufacturers. *See* Def. STMF ¶ 11 and Collective Exhibit 4 hereto. These documents also reflect that netwrap produced by different manufacturers is fungible. As a fungible product, Exhibit 4c illustrates netwrap of any manufacturer may be used in any round hay baler. Whereas, warp knit fabric is sold through different channels of trade.

(6) *The environment of sale*. Sales are made either to the end-users or middlemen such as distributors, wholesalers or round baler manufacturers. Netwrap is sold by distributors of agricultural equipment as well as hay baler manufacturers. See Def. STMF ¶ 11. Net wrap is only advertised for use in baling machines, *see* attached Collective Exhibit 4, where as knit knit fabric is advertized for may different uses or applications. *See* Attached Exhibit 1.

(7) T*he recognition of the trade*. The trade (and the courts) recognize the trade in which netwrap belongs is the agricultural trade. Kwaikista Aff't. ¶14; *United States v. Geo. Wm. Rueff, Inc.*, 41 C.C.P.A. 95, C.A.D. 535 (C.C.P.A. 1953).

In comparing the *Carborundum* factors of warp knit fabrics of Heading 6005 and netwrap, it is clear that warp knit fabrics of Heading 6005 have many different uses, are sold to different trades, the expectation of the purchasers are different, the environment of sale is different, are sold in different channels of trade and the class of goods are different. Clearly, the evidence of record clearly establishes that netwrap does not have multiple uses as its only use of net wrap is to make

commercially feasible round hay bales. As such, netwrap is properly classified as a part of certain machinery.[*]

F. *A Parts Provision Prevails Over a Basket Provision.* The net wrap in issue was liquidated under the basket provision subheading 6005.39.00 which provides for "Warp knit fabrics (including those made on galloon knitting:.machines) ... other than those of headings 6001 to 6004 ... Other, printed." It is well-settled that a:

> "A basket provision is not a specific provision." *Int'l Bus. Machs.*, 152 F.3d at 1338. Therefore, "[c]lassification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically." *Rollerblade, Inc. v. United States*, 116 F. Supp. 2d 1247, 1251, 24 Ct. Int'l Trade 812 (Ct. Int'l Trade 2000), *aff'd*, 282 F.3d 1349 (Fed. Cir. 2002). In other words, because HTSUS 2106 is a basket provision, any products that are "specified or included" in another tariff heading cannot be classified in HTSUS 2106.

*R.T. Foods, Inc. v. United States,* 757 F.3d 1349, 1354 (Fed. Cir. 2014). There is no question that a tariff subheading with the concluding term "other" is a basket provision. *Deckers Outdoor Corp v. United States*, 844 F. Supp. 2d 1324 (Ct. Int'l Tr. 2012 ) *aff'd*, 714 F.3d 1363 (Fed. Cir. 2013); *Anval Nyby Powder AB v. United States*, 927 F. Supp. 463 (Ct. Int'l Tr. 1996).

---

[*] As netwap only has a single use, it satisfies the definition of "principal use."

## IV.
## CONCLUSION

For the reasons above and in our Brief-in-Chief, the netwrap in issue is properly classified under subheading 8433.90.50 as parts of hay balers and is entitled to duty-free entry. In the alternative, we claim that the imported netwrap is classified under subheading 8536.99.00 as parts of agricultural machinery.

                Respectively submitted

                Simons & Wiskin
                *Attorneys for RWK Klerks, Inc.*

                By: /s/ *Philip Yale Simons*
                Philip Yale Simons
                Jerry P. Wiskin

                98 Craig Road
                Manalapan, NJ 07726
                Tel: 732-316-2300

                Email: pys@simonswiskin.com

Dated: June 3, 2022

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure Rule 2(B)(2), I hereby certify that Plaintiff RWK Klertks' Reply Brief in Support of its Motion for Summary Judgment and in Opposition to Defendant's Cross Motion for Summary Judgement contains 4549, excluding those portions that do not count toward the word limitation, as determined by the word count feature of WORDPERFECT X5 and, thus, is in compliance with the Court's Chambers Procedures.

/s/ Philip Yale Simons<br>
Philip Yale Simons

## CERTIFICATE OF SERVICE

    I, Philip Yale Simons, hereby state that I am a member of the Firm of SIMONS & WISKIN, attorneys for RKW Klerk's, Inc., and that on June 3, 2022 I served a copy of the Plaintiff's Reply Brief to Defendant's Opposition to Plaintiff's Motion for Summary Judgment and In Opposition to Defendant's Cross Motion for Summary Judgement, Plaintiff's Response to Defendant's Statement of Material Facts Not in Issue and Plaintiff's Certificate of Compliance Thereof to:

> Elisa S. Solomon, Esq.
> Department of Justice
> Commercial Litigation Branch - Civil Division
> International Trade Field Office
> 26 Federal Plaza
> New York, NY 10078

by depositing copies of said opposition in a U.S. Postal Service mailbox, in a sealed envelope, postage prepaid.

                                      /s/ Philip Yale Simons