## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| RKW KLERKS INC.<br><br>               Plaintiff,<br><br>     v.<br><br>UNITED STATES,<br><br>               Defendant. | Court No. 20-00001 |

## DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

Of Counsel:
Fariha Kabir
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

ELISA S. SOLOMON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-0583

*Attorneys for Defendant*

Dated: July 15, 2022
          New York, New York

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 2

   I.   The Net Wraps Are Described By The Plain Terms of Heading 6005, HTSUS ................... 2

   II.   The Net Wraps Are Not Parts, And Cannot Be Properly Classified Under Heading 8433, HTSUS ........................................................................................................... 3

   III.   Even If The Net Wraps Are Parts, They Should Still Be Classified Under Heading 6005, HTSUS ........................................................................................................ 9

      A.   Additional U.S. Rule of Interpretation 1(c) Directs Classification Under Heading 6005 .. 9

      B.   If GRI 3(A) Did Apply, It Would Direct Classification Under Heading 6005 ................ 10

      C.   Use Does Not Govern Classification of the Net Wraps .................................... 12

          1.   Use Is Irrelevant to Classification of the Net Wraps Under Heading 6005 ........ 15

          2.   Heading 8433 Is Not a Use Provision .................................................. 16

          3.   The *Carborundum* Factors Do Not Favor Classification Under Heading 8433 ........................................................................................ 17

   IV.   Plaintiff's Additional Arguments Do Not Support Classification Under Heading 8433, HTSUS .......................................................................................................... 20

      A.   No Long-Standing Practice of Classifying Goods Used to Bale Hay As Duty-Free Parts Supports Classification Under Heading 8433 ..................................................... 20

      B.   It Is Irrelevant That the Net Wraps Cannot be Used to Wrap Pallets .......................... 21

CONCLUSION ........................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Aromont USA, Inc. v. United States,*
671 F.3d 1310 (Fed. Cir. 2012) ............................................................................ 14

*Aves. In Leather, Inc. v. United States,*
423 F.3d 1326 (Fed. Cir. 2005) ............................................................................ 20

*Bauerhin Techs. Ltd. P'ship v. United States,*
110 F.3d 774 (Fed. Cir. 1997) ......................................................................... 5, 6, 7

*BenQ Am. Corp. v. United States,*
646 F.3d 1371 (Fed. Cir. 2011) ............................................................................ 13

*CamelBak Prods., LLC v. United States,*
649 F.3d 1361 (Fed. Cir. 2011) ............................................................................ 14

*Carl Zeiss, Inc. v. United States,*
195 F.3d 1375 (Fed. Cir. 1999) ....................................................................... 13, 15

*F.W. Myers & Co. v. United States,*
615 F. Supp. 569 (Ct. Int'l Trade 1985) ............................................................. 21

*Ford Motor Co. v. United States,*
403 F.2d 277 (C.C.P.A. 1968) ................................................................................. 9

*Ford Motor Co. v. United States,*
926 F.3d 741 (Fed. Cir. 2019) ..................................................................... 2, 11, 13

*Gallagher & Ascher Co. v. United States,*
52 C.C.P.A. 11 (1964) ............................................................................................. 8

*GRK Can. Ltd. v. United States,*
761 F.3d. 1354 (Fed. Cir. 2014) ........................................................................... 13

*JVC Co. of Am. v. United States,*
234 F.3d 1348 (Fed. Cir. 2000) ............................................................................ 11

*Kahrs Int'l, Inc. v. United States,*
713 F.3d 640 (Fed. Cir. 2013) .............................................................................. 10

*Len-Ron Mfg. Co. v. United States,*
334 F.3d 1304 (Fed. Cir. 2003) ....................................................................... 13, 15

*Ludvig Svensson (U.S.) Inc. v. United States*,
    62 F.Supp.2d 1171 (Ct. Int'l Tr. 1999) ...................................................................... 8

*Orlando Food Corp. v. United States*,
    140 F.3d 1437 (Fed. Cir. 1998) ............................................................................ 11

*R.T. Foods, Inc. v. United States*,
    757 F.3d 1349 (Fed. Cir. 2014) ............................................................................ 11

*Rollerblade, Inc. v. United States*,
    282 F. 3d 1349 (Fed. Cir. 2002) ............................................................................ 5

*Schlumberger Tech. Corp. v. United States*,
    845 F.3d 1158 (Fed. Cir. 2017) ....................................................................... 4, 14

*United States v. Carborundum Co.*,
    63 C.C.P.A. 98, 536 F.2d. 373 (1976) ............................................................*passim*

*United States v. Horizon Prod. Int'l Inc.*,
    82 F. Supp. 3d 1350 (Ct. Int'l Trade 2015) ............................................................ 16

*United States v. Pompeo*,
    43 C.C.P.A. 9 (1955) .......................................................................................... 8

*United States v. Willoughby Camera*,
    21 C.C.P.A. 322, 1933 WL 1887 (1933) ................................................................ 7

*Well Luck Co. v. United States*,
    887 F.3d 1106 (Fed. Cir. 2018) ............................................................................ 5

**Rules**

U.S. Rules of Interpretation 1(a) ............................................................................. 12

U.S. Rules of Interpretation 1(c) ........................................................................ 9, 10

U.S. CIT Rule 26 ................................................................................................ 16

U.S. CIT Rule 37 ................................................................................................ 16

**Harmonized Tariff Schedule of The United States**

General Rule of Interpretation 1 ........................................................................ 4, 11, 20

General Rule of Interpretation 3 ........................................................................ 10

Chapter 2

    Heading 2103 ...................................................................................................... 11

Chapter 5

        Subheading 5911.90.00 ................................................................................... 2

Chapter 6

    Heading 6001 ...................................................................................................... 12

    Heading 6004 ...................................................................................................... 12

    Heading 6005 ....................................................................................................... *passim*

        Subheading 6005.39.00 .................................................................... 2, 3, 11, 12

Explanatory Notes to Heading 6005 ................................................................. 1, 2, 11

Chapter 8

    Heading 8433 ...................................................................................................... *passim*

        Subheading 8433.90.50 ............................................................................ 1, 2, 3

        Subheading 8436.99.00 ............................................................................... 2, 8

        Subheading 8536.00.00 ................................................................................... 2

Chapter 9

        Subheading 9401.90.10 ................................................................................... 7

**Other Authorities**

*Part*, Merriam-Webster, https://www.merriam-webster.com/dictionary/part (last visited on July 15, 2022) ........................................................................................................................ 4

World Customs Organization, Harmonized  Commodity Description & Coding System
Explanatory Notes, Explanatory Note GRI 1(4ᵗʰ ed. 2007)..........................................................22

Defendant, the United States, respectfully submits this memorandum in support of its cross-motion for summary judgment and in response to the Reply Brief to Defendant's Opposition to Plaintiff's Motion for Summary Judgment and In Opposition to Defendant's Cross Motion for Summary Judgement (ECF No. 35-2) (hereafter, "Pl.'s Br.") filed by Plaintiff RKW Klerks Inc.("RKW").

## INTRODUCTION

At issue in this case is the tariff classification of two products, Rondotex and Top Net, which are both net wraps, a type of warp knit designed to bind and secure crops in a round bale form.  According to Rule 1 of the General Rules of Interpretation ("GRI"), the net wraps are classifiable under heading 6005 of the Harmonized Tariff Schedule of the United States ("HTSUS"), which covers "[w]arp knit fabrics[,]" because the net wraps fall within the plain language of that heading.  This classification is further supported by the Explanatory Notes to heading 6005, which specifically describe the manufacturing method used by RKW to produce the net wraps.

Plaintiff does not dispute that the net wraps are warp knit fabrics and therefore fall under the plain language of heading 6005.  Instead, plaintiff asserts that the net wraps should be classified as "parts" of "haying machines and balers" under subheading 8433.90.50, HTSUS, on the basis that it more specifically describes the net wraps.  However, the undisputed facts show that the net wraps are not "parts" of round baling machinery but are instead an input into the round baling machines that is used to secure and bind crops in a round bale form.  Like a sewing machine uses thread or a printer applies ink, a round baling machine uses net wraps to secure crops in a round bale form.  That the net wraps are inserted into the round baler temporarily so that the net wraps can be applied to round bales does not transform the net wraps into parts of

1

round baling machines.  Because the net wraps are not parts, they cannot be classified under

subheading 8433.90.50, or any other tariff provision for parts of agricultural machinery.[1]

 As described more fully in our opening brief, the net wraps are therefore properly

classified under subheading 6005.39.00.  *See generally* Def.'s Mem. of Law in Opp'n to Pl.'s

Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. (ECF No. 32) (hereafter,

"Def.'s Br.").  As such, the Court should deny plaintiff's motion for summary judgment, grant

defendant's cross-motion, and dismiss this action.

**ARGUMENT**

**I.** **THE NET WRAPS ARE DESCRIBED BY THE PLAIN TERMS OF HEADING 6005, HTSUS**

 The parties do not dispute that the net wraps are warp knit fabrics, the type of

merchandise explicitly covered by the plain language of heading 6005, HTSUS, which covers

"[w]arp knit fabrics[.]"  *See* Def.'s Rule 56.3 Statement of Undisputed Material Facts (ECF No.

32) ¶ 7; Pl.'s Resp. to Def.'s R. 56.3 Statement (ECF No. 35-1) ¶ 7.  Not only does

heading 6005 explicitly identify warp knit fabrics by name, but the Explanatory Notes to

heading 6005, provide, in relevant part, that the heading covers fabrics "made on warp knitting

machines (especially Raschel machines) . . . ."  Explanatory Note 60.05 at XI-6005-1, Sixth

Edition (2017); *see also Ford Motor Co. v. United States*, 926 F.3d 741, 749 (Fed. Cir. 2019)

("The [ENs] provide persuasive guidance and are generally indicative of the proper

---

[1] In its reply, plaintiff does not offer any argument in favor of its alternative classification, subheading 8436.99.00.  *See* Compl. ¶ 15-17.  Plaintiff does identify an alternative claim under subheading 8536.00.00, in its brief (Pl.'s Br. 14), however, this appears to be a typo intending to state subheading 8436.99.00.  Nor does plaintiff offer any argument in favor of its other alternative claim, subheading 5911.90.00, which plaintiff identified in its Complaint, but not its Motion for Summary Judgment.  *See* Compl. ¶ 18-22.  Nevertheless, as described in defendant's opening brief, the merchandise cannot be classified under either of these headings.  *See* Def.'s Br. 34-36.

interpretation, though they do not constitute binding authority.") (internal marks and citation omitted).  Likewise, the net wraps are produced by knitting synthetic threads in Raschel machines.  *See* Def.'s 56.3 ¶¶ 15-17; *See* Pl.'s Resp. to Def.'s 56.3 ¶ 15-17.  Consequently, classifying the merchandise under heading 6005 is consistent with the guidance imparted by the Explanatory Notes.

In sum, the net wraps are explicitly described by the terms of heading 6005, HTSUS, as a warp knit fabric, and, specifically, subheading 6005.39.00, as a warp knit fabric of synthetic fibers, and are therefore properly classified under that subheading.  *See* Def.'s Br. 12-14. Plaintiff offers no argument contradicting that the net wraps are clearly described by the terms of heading 6005, HTSUS.  The question presented is therefore whether the net wraps can be classified under any other heading.  The definitions, case law, and undisputed facts demonstrate that the net wraps are not classifiable under any other provision, and RKW has not met its burden to show otherwise.

## II.    THE NET WRAPS ARE NOT PARTS, AND CANNOT BE PROPERLY CLASSIFIED UNDER HEADING 8433, HTSUS AS PARTS OF HARVESTING OR THRESHING MACHINERY

Plaintiff maintains that the net wraps can and should be classified as "parts" under heading 8433, HTSUS, which covers "[h]arvesting or threshing machinery . . . parts thereof[.]" More specifically, plaintiff argues that the net wraps should be classified under subheading 8433.90.50, HTSUS, which is a residual subheading covering "Parts" Other[.]"  Based on the undisputed facts, the classification proposed by plaintiff is incorrect because, as discussed in our opening brief, the net wraps are not "parts" of harvesting or threshing machinery as the term "parts" is used in heading 8433, HTSUS.  Def.'s Br. 14-25.

3

According to the common definition of "part" the net wraps do not constitute parts of round baler machines or any other "[h]arvesting or threshing machinery." *See* Def.'s Br. 15-16. Merriam-Webster dictionary defines a "part" variably as "a constituent member of a machine or other apparatus" or "an essential portion or integral element." *See* "Part." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/part (last visited on July 15, 2022). The net wraps do not contribute to the primary mechanical function of round baling machines, which is to gather, cut, and compress and roll hay and/or silage together. *See* Kwiatkista Dep., p. 98 at 19-24 ("Q: And the baler machine as you described before has mechanical function that compress and roll the product together, right, into the baler? A: Correct. Q: And the wrap doesn't contribute to that function, right? A: No."); Def.'s 56.3 ¶ 21; Pl.'s Resp. to Def.'s 56.3 ¶ 21. Rather, the net wraps are an input, like hay or silage, into the round baling machines, and the net wraps function to keep crop bales in form *after* the round baling machine has already compressed the crops into a bale shape. *See* Kwiatkista Dep., p. 98 at 25 – p. 99 at 2-3 ("Q: And so the wrap will only secure the bale once it's already made by the machine, right? A: Yes."); Def.'s 56.3 ¶ 22; Pl.'s Resp. to Def.'s 56.3 ¶ 22.

Plaintiff skirts our argument that the net wraps do not meet the dictionary definition of parts, instead arguing that the Court need not consider the dictionary definitions because "the courts have defined what a part is for tariff purposes." Pl.'s Br. 3. Plaintiff's argument fails because the word "part" is a term in heading 8433, HTSUS, and GRI 1 requires consideration of "the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading." *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1163 (Fed. Cir. 2017) (internal marks and citation omitted). In

4

evaluating tariff terms, "[a]bsent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Well Luck Co. v. United States*, 887 F.3d 1106, 1111 (Fed. Cir. 2018) (internal marks and citation omitted). Federal Circuit precedent directs that "[t]o discern the common meaning of a tariff term, the court may consult dictionaries, scientific authorities, and other reliable information sources." *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 644 (Fed. Cir. 2013) (internal marks and citation omitted). And in *Rollerblade, Inc. v. United States*, 282 F. 3d 1349 (Fed. Cir. 2002), the Federal Circuit defined the term "part" in reference to the common, *i.e.*, dictionary, meaning of the term. *See id.* at 1353 ("A 'part' is 'an essential element or constituent; integral portion which can be separated, replaced, etc.'") (citing Webster's New World Dictionary 984 (3d College Ed. 1988)). There is no question that the Court should consider the common meaning of the term "parts" in the context of heading 8433, HTSUS, and that the net wraps do not meet the common definition for parts.

Plaintiff's suggestion that the Court need not consider the dictionary definition of "part" because the Court has defined a part for purposes of tariff classification is premised on the incorrect belief that the dictionary definition of parts is somehow in conflict with the Court-determined tests for determining whether an article is a part. However, there is no conflict and the net wraps are not "parts" under either the dictionary definition or steps established by the Court.

In arguing that the net wraps satisfy the Court-determined test for a "part", plaintiff cites *Bauerhin Techs. Ltd. P'ship v. United States*, 110 F.3d 774, 779 (Fed. Cir. 1997), and asserts, "[i]t is well settled that when a part has a dedicated single use with a particular article it is part of that article." Pl.'s Br. 11. Plaintiff's argument mischaracterizes the *Bauerhin* decision, in

5

which the Federal Circuit specifically stated that "the mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other." *Bauerhin*, 110 F.3d at 778.  Under *Bauerhin*, the mere fact that the net wraps are designed so that they can be applied to round bales produced by a round baling machine does not transform the net wraps into parts of those machines.  Additionally, plaintiff ignores that *Bauerhin* established a *two*-part test to determine if its imported merchandise is a part for the purposes of tariff classification.  First, the Court examines whether the part is an integral component of the larger article so that the article could not function without the part.  *Id.* at 779.  Second, the Court determines whether the item is designed for use with the merchandise at issue.  *Id.*

As we previously discussed (Def.'s Br. 16-18), the net wraps fail the *Bauerhin* test for several reasons, including that round baling machines can function without the use of a net wrap, for example by using twine.  *See* Def.'s Br. 15-16.  Because round baling machines can operate and function without the use of net wraps, the net wraps cannot be an "integral component" of those machines.  *See Bauerhin*, 110 F.3d at 778-79.  In addition, as noted above, the net wraps cannot be an integral part of round baler machines because they do not contribute to the primary mechanical function of round baling machines, which is to gather, cut, compress, and roll hay and/or silage together.  *See* Kwiatkista Dep., p. 98 at 19-24.  Finally, the net wraps are a separate product that perform their primary function, securing the crop bales, *after* the net wraps have been released from the round baling machine.  *See* Kwiatkista Dep., p. 98 at 25 – p. 99 at 2-3.  Instead, the net wraps are inputs used with round baling machines and are not parts of a baling machine according to the *Bauerhin* test.  Such a determination is consistent with judicial precedent in which this Court and the Federal Circuit have held that inputs on which a machine operates are not parts of those machines, as discussed in our opening brief.  *See* Def.'s

Br. 20-25 (citing *e.g.*, *United States v. Willoughby Camera*, 21 C.C.P.A. 322, 324, 1933 WL 1887 (1933)).

Plaintiff acknowledges that "hay balers do not require netwrap to make round bales[.]" Pl.'s Br. 8.  Moreover, plaintiff admits that "[n]et wraps function to bind and secure crops in round bales."  *See* Def.'s 56.3 ¶ 8; Pl.'s Resp. to Def.'s 56.3 ¶ 8.  Despite these undisputed facts, plaintiff cites several cases that it argues support its view that the net wraps are parts because "the use of net wrap contributes to 'the performance of the function for which the hay baler was designed.'"  *See* Pl.'s Br. 8.  However, these cases do not support plaintiff's position that the net wraps are parts.

First, plaintiff argues that the net wraps are like the merchandise at issue in *Bauerhin*, because the net wraps are "designed solely for and use [*sic*] in a round baling machine."  Pl.'s Br. 4.  As described in our opening brief (Def.'s Br. 20-21), in *Bauerhin*, the Court considered the appropriate classification of, *inter alia*, cloth canopies that were designed and cut for car seats.  *Bauerhin*, 110 F.3d at 775-76.  The Court determined that the canopies were properly classified as "parts: of seats of a kind used for motor vehicles" under subheading 9401.90.10, HTSUS, rather than a basket provision that was also under consideration, noting that the canopies were designed for incorporation into a car seat.  *Id.* at 776.  Unlike the car seat canopies at issue in *Bauerhin*, which were affixed to the car seats, the net wraps at issue here consist of a consumable input that is used as the machine creates more bales.  Moreover, plaintiff ignores that the net wraps continue to function independently of the baler machine by binding the bale form after the crop bale is removed from the round baler.  In addition, unlike in *Bauerhin*, here there is a specific heading that describes the net wrap (*i.e.*, heading 6005).

7

Plaintiff relies on *Ludvig Svensson (U.S.) Inc. v. United States*, 62 F.Supp.2d 1171 (Ct. Int'l Tr. 1999), in which the Court determined that several screening products used as shade screens and greenhouse roofs were classifiable as parts of agricultural machinery under subheading 8436.99.00, HTSUS. *Id.* at 1175, 1181. As we previously discussed, the Court in *Ludvig Svensson* determined that these screens were parts of greenhouses and identified several factors concerning the screens that led it to the conclusion that the screens were incorporated into and remained a permanent part of the structure of the greenhouses. Def.'s Br. 21-23. In contrast, the net wraps do not remain affixed into a round baler machine but are inserted into the round balers wound on a cardboard core and then used to bind round bales by the round baling machine. Kwiatkista Dep., p. 39 at 13-15, p. 40 at 10-15, 22-25, p. 41 at 2-4. Once the net wrap in a given roll is depleted, the cardboard core is discarded. *See* Kwiatkista Dep., p. 96 at 14-25 – p. 97 at 2-4.

Plaintiff also cites several decades-old decisions emanating from the United States Customs Court concerning predecessors to the relevant provisions in the Tariff System of the United States ("TSUS"). In *Gallagher & Ascher Co. v. United States*, 52 C.C.P.A. 11 (1964), the United States Court of Customs and Patent Appeals considered the appropriate classification for auxiliary heaters designed for use in Volkswagen automobiles, an article that the Court noted became "attached to the automobile" and "contributed to the safe and efficient operation of the Volkswagen in frigid temperatures in relation to comfort of its occupants and in aid of the indispensable safety factor of vision by assisting in the removal of ice from the windshield." *Id.* at 16. Similarly, in *United States v. Pompeo*, 43 C.C.P.A. 9 (1955), the United States Court of Customs and Patent Appeals considered whether certain superchargers designed for use in automobile engines were considered parts of automobiles. The Court noted "that the involved

8

superchargers are 'parts' of automobiles after they are installed upon the automobiles[.]" *Id.* at 14.  The net wraps are entirely unlike the heaters at issue in *Gallagher* and the superchargers at issue in *Pompeo* – in both of those cases, the Court considered merchandise that became permanently affixed into automobiles.  In contrast, the net wraps are not permanently affixed into round baling machinery.

Finally, plaintiff describes *Ford Motor Co. v. United States*, 403 F.2d 277, 281 (C.C.P.A. 1968), in which the Court evaluated whether certain engine parts should be classified as either parts of internal combustion engines or as parts of agricultural implements.  The Court determined that the engine parts were not parts of agricultural implements because they were not dedicated to use in such implements but could also be used in other engines that were not used in agriculture.  *Id.* at 281.  That case is entirely inapposite since there was no dispute that the merchandise at issue there was a part.

In sum, the cases plaintiff cites do not offer support that net wraps are parts of a baling machine.  And classifying the net wraps as parts would not be consistent with either the common meaning of the term "parts" or the test for determining whether an article is a part described in *Bauerhin*.

### III.   EVEN IF THE NET WRAPS ARE PARTS, THEY SHOULD STILL BE CLASSIFIED UNDER HEADING 6005, HTSUS

#### A. Additional U.S. Rule of Interpretation 1(c) Directs Classification Under Heading 6005

As described in our opening brief, even if the Court were to conclude that the net wraps are parts of round baling machinery, which, as described *supra* in Section II, it should not, the net wraps are precluded from classification under heading 8433, HTSUS, by operation of Rule

1(c) of the Additional U.S. Rules of Interpretation ("AUSR").  *See* Def. Br. 25-26.  AUSR Rule

1(c) provides, in relevant part:

> In the absence of special language or context which otherwise requires . . . a
> provision for parts of an article covers products solely or principally used as a
> part of such articles but a provision for "parts" or "parts and accessories" shall
> not prevail over a specific provision for such part or accessory.

Applying Rule 1(c) in this case, heading 6005, HTSUS, is a "specific provision" describing the

article at issue, whereas heading 8433, HTSUS, is a provision more generally covering an

article, *i.e.*, round baling machines and other harvesting equipment, and "products solely or

principally used as a part of such articles."  Consequently, even if the Court were to determine

that the net wraps are parts of round baling machines, the net wraps should still be classified

under heading 6005 by application of AUSR Rule 1(c).  In its reply brief, plaintiff does not even

attempt to address why the Court should classify the net wraps in heading 8433, despite the

clear directive of AUSR Rule 1(c).

## B.  If GRI 3(A) Did Apply, It Would Direct Classification Under Heading 6005

Likewise, plaintiff does not address GRI 3(a), which as we explain in our opening brief,

directs the Court to "determine which heading is most specific, comparing only the language of

the headings."  *See JVC Co. of Am. v. United States*, 234 F.3d 1348, 1352 (Fed. Cir. 2000)

(internal citation omitted).  At the outset, we note that GRI 3(a) would only apply if the net

wraps fell within both heading 6005 and heading 8433, which they do not.  But even if the net

wraps were described by both headings, classification would result in heading 6005 by

operation of GRI 3(a).  As described *supra* in Section I, the net wraps are specifically described

by the terms of heading 6005, HTSUS, which covers "[w]arp knit fabrics."  As also described

above, the Explanatory Notes to heading 6005, HTSUS, further confirm the conclusion that

heading 6005 specifically describes the net wraps.

Plaintiff asserts that subheading 6005.39.00, HTSUS, is the less specific provision on the ground that it is a basket provision and "'[c]lassification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically.'"  Pl.'s Br. 13 (citing *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1354 (Fed. Cir. 2014) (internal citations omitted)).  Specifically, plaintiff argues that subheading 6005.39.00 is a basket provision because "a tariff subheading with the concluding term "other" is a basket provision."  Pl.'s Br. 13.

Plaintiff's entire argument on this issue is based on the faulty premise that the Court should consider the language of subheadings in its initial step for classifying the net wraps.  This ignores GRI 1, which directs that "classification shall be determined according to the terms of the headings and any relative section or chapter notes[,]" and that the meanings of headings are "to be evaluated without reference to their subheadings, which cannot be used to expand the scope of their respective headings."  *R.T. Foods*, 757 F.3d at 1353 (citations omitted).  As the Federal Circuit described in *Orlando Food Corp. v. United States*, 140 F.3d 1437 (Fed. Cir. 1998):

> [W]hen determining which heading is the more specific, and hence the more appropriate for classification, a court should compare only the language of the headings and not the language of the subheadings. *See* GRI 1, 3.

*Id.* at 1440; *see also Ford Motor*, 926 F.3d at 749 (same).  The Federal Circuit's decision in *Orlando Foods* provides a helpful illustration.  In that case, the appeals court reversed the trial court's specificity analysis using subheadings and addressed the classification question anew at the heading level.  The appeals court found that the canned tomato product at issue should be classified under heading 2103, HTSUS, after determining that this provision was more specific

than the other tariff provision in which the merchandise could be classified. *Id.* at 1441-42. The Court then considered potential subheadings only under heading 2103. *Id.* at 1442.

As in *Orlando Foods*, the Court here should conduct its specificity analysis at the heading level, if such an analysis is warranted. Conducting this analysis, there can be no question that the net wraps should be classified under the *eo nomine* provision covering warp knit fabrics, heading 6005, over a provision covering parts of baling machines and other harvesting equipment. Heading 6005 is not a basket provision because it covers a very specific type of fabrics, *i.e.*, warp knit fabrics. The phrase "other than those of headings 6001 to 6004" in the heading clarifies that these fabrics are different from those covered by preceding headings, and therefore narrows the scope of heading 6005; the word "other" in this context does not make heading 6005 less specific. In contrast, heading 8433, does not describe the net wraps at all. As heading 6005 more specifically describes the net wraps, classification under that heading, and then under subheading 6005.39.00 is correct, as described *supra* in Section I.

**C. Use Does Not Govern Classification of the Net Wraps**

In its reply, plaintiff for the first time presents several arguments that the net wraps should not be classified under heading 6005, HTSUS, based on an analysis of the factors articulated in *United States v. Carborundum Co.*, 63 C.C.P.A. 98, 536 F.2d 373 (1976) (the "*Carborundum* factors"). Plaintiff's discussion of the *Carborundum* factors is misguided because the provisions at issue are *eo nomine* and not use provisions.

AUSR Rule 1(a) provides that, when a tariff provision is "controlled by use (other than actual use)," then classification "is to be determined in accordance with the use in the United States . . . of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use." The *Carborundum* factors are "used to establish whether merchandise

falls within a particular class or kind for purposes of a principal use analysis." *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1377 (Fed. Cir. 2011).  This Court and the Federal Circuit have in some limited circumstances considered use when evaluating an *eo nomine* provision despite the general rule of thumb that "a use limitation should not be read into an *eo nomine* provision." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999).  However, the Federal Circuit has made clear that such a consideration of use is appropriate only where "the name itself inherently suggests a type of use" or where "use of the subject articles [may] define[] an article[']s[ ] identity when determining whether it fits within the classification's scope." *Ford*, 926 F.3d at 750 (internal marks and citations omitted).

For example, the *eo nomine* provision at issue in *Ford* covers "[m]otor cars and other motor vehicles principally designed for the transport of persons . . ." and the Court noted that the "'principally designed for' portion inherently suggests a type of use, *i.e.*, 'the transport of persons.'"  *Id.* at 750.  Similarly, in *Len-Ron Mfg. Co. v. United States*, 334 F.3d 1304 (Fed. Cir. 2003), the Court determined that a provision covering "vanity cases" was an *eo nomine* provision but that use was relevant in defining the term "vanity case" because that term indicated a predominant use of "containing, carrying, or organizing cosmetics[.]"  *Id*. at 1311. Likewise, in *GRK Can. Ltd. v. United States*, 761 F.3d 1354 (Fed. Cir. 2014), the Court considered classification under a provision for "other wood screws" or under a provision for "self-tapping screws." *Id.*  The Court considered the use of "wood screws," to clarify that this provision covered screws used with wood, not screws made of wood, in contrast to self-tapping screws, which the Court found were "intended to cut into metal and slate."  *Id.* at 1359-60.

13

As described in more detail below, there is no reason for the Court to consider use in

evaluating heading 6005 or heading 8433 in this case, because both are *eo nomine* provisions

and none of the exceptions for considering use identified in *Ford* apply in this context.

### 1.   Use Is Irrelevant to Classification of the Net Wraps Under Heading 6005

Heading 6005 does not identify a class of goods that are defined by use; it is

indisputably an *eo nomine* provision, that identifies goods, *i.e.*, warp knit fabrics, by name.  *See*

*CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011) ("[W]e consider

a HTSUS heading or subheading an *eo nomine* provision when it describes an article by a

specific name.").  Because heading 6005 is not a use provision, applying the *Carborundum*

factors to heading 6005 would inappropriately place limitations on an *eo nomine* heading.  As

the Federal Circuit has described, "[a]bsent limitation or contrary legislative intent, an *eo*

*nomine* provision includes all forms of the named article . . . ."  *Id.* at 1364–65 (internal marks

and citation omitted).  Plaintiff's arguments on this issue essentially are a suggestion that the

Court should impose a use limitation on heading 6005, HTSUS, despite the fact that the heading

clearly doesn't limit the covered goods to a particular use.  This runs afoul of well-established

precedent.  *See Schlumberger Tech*., 845 F.3d at 1164 ("We first must assess whether the

subject Headings constitute *eo nomine* or use provisions because different rules and analysis

will apply depending upon the heading type."); *compare Kahrs Int'l, Inc. v. United States*, 713

F.3d 640, 645-46 (Fed. Cir. 2013) (*eo nomine* analysis), with *Aromont USA, Inc. v. United*

*States*, 671 F.3d 1310, 1312-16 (Fed. Cir. 2012) (principle use analysis).

Nor do any of the limited circumstances in which the Court will consider use in

interpreting an *eo nomine* provision apply here.  In contrast to *Ford*, there is no language in

heading 6005 that indicates use, and in contrast to *Len-Ron Mfg.* and *GRK*, there is no language

in heading 6005 for which use may be relevant in defining a term.  As such, there is no basis for

considering use in interpreting heading 6005.  The *Carborundum* factors are therefore irrelevant

to classification under an *eo nomine* provision such as heading 6005.

### 2.  Heading 8433 Is Not a Use Provision

Plaintiff argues that heading 8433, HTSUS, is a use provision and, as a result, that it

more specifically describes the net wraps at issue.  Pl.'s Br. 8-10.  However, plaintiff's

argument is contradicted by the terms of heading 8433, HTSUS, which specifically identify

types of "[h]arvesting or threshing machinery" and "balers" by name.  As such, and as

described in our opening brief (Def.'s Br. 28-29), heading 8433 is a *eo nomine* provision.

Heading 8433 is also a broad provision that generally covers categories of "[h]arvesting or

threshing machinery" and related parts.  This broad category of harvesting or threshing

machinery and related parts offers no description of the net wraps.

Moreover, as explained in our opening brief (Def.'s Br. 30), although in some cases a

use provision may be considered more specific, this "convenient rule of thumb" applies where

competing provisions are "in balance", *i.e.*, when they both equally describe the merchandise in

question.  *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1380 (Fed. Cir. 1999).  For

example, as described above, in *Len-Ron Mfg.*, the Court classified merchandise in an *eo*

*nomine* provision that expressly identified "vanity cases" over a use a provision that provided

for "articles of a kind normally carried in the pocket or in the handbag[,]" stating that the former

was more specific than the latter.  *Len-Ron Mfg.*, 334 F.3d at 1313-14.  Likewise, here the Court

is being asked to choose between a provision that expressly identifies warp knit fabrics and a

broad provision for harvesting and other agricultural equipment that does not specifically

identify the merchandise at issue.  As such, even if the Court did consider heading 8433 to be a

15

use provision, classification would be more appropriate under heading 6005, HTSUS, as the latter provision more specifically identifies the net wraps.

### 3.  The *Carborundum* Factors Do Not Favor Classification Under Heading 8433

Even if the *Carborundum* factors are relevant to the classification of the net wraps, which they are not, plaintiff still would not have established that classification under heading 8433, HTSUS, is correct.

As an initial matter, the legal framework of principal use is a highly fact-intensive inquiry; here the parties engaged in no discovery relevant to the *Carborundum* factors of warp knit fabrics in heading 6005.  And that was for good reason – as described above, there is no *Carborundum* factors inquiry when the Court is evaluating an *eo nomine* provision like heading 6005.  To the extent that plaintiff believed the *Carborundum* factors to be relevant to its claims in this case, plaintiff failed in its discovery obligations under CIT Rule 26(a), which require each party to produce "all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses."  Pursuant to CIT Rule 37(c), where a party fails to provide information required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless."  USCIT R. 37(c)(1); *see also United States v. Horizon Prod. Int'l Inc.*, 82 F. Supp. 3d 1350, 1360 (Ct. Int'l Trade 2015).  Despite this lack of discovery, plaintiff improperly purports to support its arguments concerning the *Carborundum* factors with reference to several exhibits that were not identified or produced at any point in this case.  *See, e.g.*, Def.'s Ex. 1, Def.'s Requests for Docs., Request 3 ("Identify and produce all documents which contain facts supporting the allegations of plaintiff's Complaint.").

Despite the irrelevance of this information, plaintiff now places before the Court selective examples of what it purports represent the types of warp knit fabrics covered under heading 6005.  This random sampling of undeveloped information that has not been authenticated or subject to deposition testimony cannot be used as evidence of the types of warp knit fabrics that are classified under heading 6005.  Plaintiff's apparent printouts from websites do not even include the web address from which these exhibits were pulled, and some of the exhibits include obscured content.  *See, e.g.*, Pl.'s Ex. 2 at 2-3 (ECF No. 35-4) (cutting off 2/4 of warp knits described in source).  Some of the exhibits that appear to be focused on net wraps do not even reference the merchandise at issue in this case.  *See* Ex. 3 (focusing on internet sales of net wraps other than Rondotex and Top Net ).  The Court should not afford these late-submitted and poorly prepared exhibits any weight whatsoever.

Finally, even if the *Carborundum* factors were relevant to classification under heading 6005, and the Court did consider this improperly submitted information, the exhibits offered by plaintiff do not support its claim that the net wraps are not properly classified under heading 6005.

First, plaintiff asserts that the general physical characteristics of the net wraps differs from the warp knit fabrics becaus the net wraps are wound on a cardboard core and sold in "large sizes" whereas the "wrap knit fabric of Heading 6005 is sold by the yard . . . ."  Pl.'s Br. 11 citing Pl.'s Ex. 1.  As an initial matter, plaintiff's selective citation of sales literature concerning warp knit fabrics has not established that all warp knit fabrics of the class of goods falling under heading 6005 are sold by the yard.  Additionally, these factors do not speak to the physical characteristics of the net wrap.  More relevant to the physical characteristics is that the common meaning of a "warp knit" is a "knit fabric produced by machine with the yarns running

17

in a lengthwise direction" and plaintiff's Rule 30(b)(6) witness described that the net wraps are produced by using a machine to knit chains running in a lengthwise direction. *See* Def.'s Br. 12. In sum, the net wraps are fabrics made of yarns running in a lengthwise direction, as are warp knit fabrics, and therefore the net wraps share the same general physical characteristics of other warp knit fabrics.

Second, plaintiff asserts that the net wraps are not "use[d] in the same manner as merchandise which defines the class[,]" arguing that the net wraps are used in agriculture whereas warp knits belong to "many classes of goods, such as apparel, drapery, shoes, fabrics for printing and advertising, coating substrates and laminating backgrounds[.]" Pl.'s Br. 11. Plaintiff's argument only demonstrates that net wraps in heading 6005, are comprised of a broad group of goods, not limited by a specific use. That is because heading 6005 does not define a class of goods by use, but is an *eo nomine* provision including all warp knit fabrics.

Third, plaintiff distinguishes the net wraps in terms economic practicality, claiming that the net wraps are sold on a roll at a price equivalent to $0.482 per square yard, whereas the warp knit fabric of Heading 6005 "are sold by the yard at varying prices from a few dollars to over $40 per square yard." Pl.'s Br. 11 (citing Pl.'s Ex. 1). However, even according to plaintiff's own unsupported assertions, the warp knit fabrics have a substantial range in price. If a warp knit fabric can range from a few dollars per square yard to over $40 per square yard, then price per square foot is clearly not a defining characteristic of merchandise covered by heading 6005. In any event, warp knit fabrics selling for a few dollars per square yard are closer in price to the net wraps than they are to warp knit fabrics selling for over $40 per square yard.

Fourth, concerning purchaser expectations, plaintiff claims that purchasers expect to be able to use net wraps "in hay balers to bale hay and keep the baled hay commercially viable."

18

Pl.'s Br. 12.  However, plaintiff offers no argument as to why this would remove the net wraps from heading 6005, which covers products that have a wide range of end uses correlating with a wide range of purchaser expectations.

Fifth, plaintiff asserts that net wraps produced by different manufacturers are fungible, however, even if true, this has no bearing on whether the net wraps have different channels of trade as compared to other warp knit fabrics.  Pl.'s Br. 12.  Plaintiff only asserts that "warp knit fabric is sold through different channels of trade" whereas net wraps are "sold in the agricultural trade by distributors of agricultural equipment as well as hay baler manufacturers."  *Id.*  Plaintiff offers no argument as to why this would remove the net wraps from heading 6005, which covers a wide range of products that are sold in several different channels of trade.

Sixth, concerning the environment of sale, plaintiff asserts that sales of net wrap are made either to end-users or middlemen such as distributors, wholesalers, or round baler manufacturers[2], whereas plaintiff asserts that warp knits fabrics are advertised "for may {sic} different uses or application."  Pl.'s Br. 12 (citing Pl.'s Ex. 1).  Again, plaintiff acknowledges that warp knit fabrics in heading 6005 do not have a single use or application, but illogically argues that the heading excludes the net wraps at issue simply because they are used in agriculture.

Concerning the final factor, recognition of the trade, plaintiff asserts that the net wraps belong in "the agricultural trade" (Pl.'s Br. 12), however, plaintiff provides no basis for the suggestion that the use of net wraps in agricultural pursuits excludes the net wraps from heading 6005, which plaintiff acknowledges covers products with a wide range of uses and applications.

---

[2] Plaintiff cites defendant's Rule 56.3 Statement ¶ 11, however that statement states that RKW generally sells the net wraps to wholesalers.  *See* Def. 56.3 ¶ 11.

In sum, heading 6005, is an *eo nomine* provision for which the *Carborundum* factors do

not apply.  However, even were the Court to consider the scant and incomplete information that

plaintiff places on the record at this late stage concerning other wrap knit fabrics, nothing that

plaintiff offers suggests that the net wraps are of a different class or kind than other wrap knit

fabrics classifiable under heading 6005, HTSUS.

## IV.   PLAINTIFF'S ADDITIONAL ARGUMENTS DO NOT SUPPORT CLASSIFICATION UNDER HEADING 8433, HTSUS

Plaintiffs offers several additional arguments that the net wraps should not be classified

under heading 6005, HTSUS, but are more properly classified as parts under heading 8433,

HTSUS.  However, these arguments are likewise unavailing.

### A.   No Long-Standing Practice of Classifying Goods Used to Bale Hay As Duty-Free Parts Supports Classification Under Heading 8433

Plaintiff suggests that the net wraps should be classified under an HTSUS heading

covering agricultural products on the ground that "Congress has long expressed a desire to

favorably treat agricultural products."  Pl.'s Br. 1.  However, as described in defendant's

opening brief (Pl.'s Br. 36), this does not support plaintiff's arguments in favor of heading

8433, HTSUS or any other heading.  Although decisions of this Court have acknowledged

congressional intent to interpret the agricultural provisions of tariff schedules liberally, the

Court is still obligated to follow GRI 1, which establishes that "the terms of the headings and

any relative section or Chapter Notes are paramount, *i.e.*, they are the first consideration in

determining classification."  World Customs Organization, *Harmonized Commodity Description

& Coding System Explanatory Notes*, *Explanatory Note to GRI 1* (4th ed. 2007).  In other

words, the HTSUS section and chapter notes "are not optional interpretive rules," but instead

have the force of statutory law.  *Aves. In Leather, Inc. v. United States,* 423 F.3d 1326, 1333

(Fed. Cir. 2005) (internal marks omitted).  For example, in *F.W. Myers & Co. v. United States*, 615 F. Supp. 569 (Ct. Int'l Trade 1985), the Court noted that it was "cognizant of the long-standing intent of Congress to interpret the agricultural provisions of the Tariff Schedules liberally" but noted that it was still "bound to an interpretation which follows the specific language of the provisions involved." *Id.* at 573.  Here, the specific language of the provisions involved suggests that the net wraps are properly classified under heading 6005, HTSUS. Plaintiff has not cited one case in which the CIT rejected classification under a heading describing the merchandise in favor of a different heading because of congressional intent to interpret the agricultural provisions of tariff schedules liberally.

### B.  It Is Irrelevant That the Net Wraps Cannot be Used to Wrap Pallets

Finally, contrary to plaintiff's assertion, defendant does not assert that the net wraps are used to wrap pallets.  *See* Pl.'s Br. 5.  In its opening brief in support of its motion for summary judgment, plaintiff suggested that sales and marketing literature supported classification under heading 8433 on the ground that the net wraps are "not advertised or sold as [] knit wrap fabric[s] for a general or specific use other than to wrap hay bales." Pl.'s Br. in Supp. of Its Mot. for Summ. Judgment 22 (ECF No. 27-2).  In response, defendant noted that marketing literature produced by plaintiff reflects that the net wraps are advertised as a type of warp knit, not as a round baler part, which only further supports the classification of the product under heading 6005.  *See* Def.'s Br. 19.  More specifically, marketing literature reflects that the net wraps are advertised alongside a similar warp knit fabric, pallet nets, and that the latter product can be used to stabilize pallets and piles of boxes for transportation purposes.  As described in defendant's opening brief, these marketing materials reflect that the net wraps, like pallet nets, are fundamentally warp knit fabrics, not machine parts.  That round baling machines use net

wraps to bind crop bales, whereas pallet nets are applied in some other fashion, does not

transform the net wraps into parts of those machines and separate them for classification

purposes from other warp knit fabrics such as pallet nets.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that an order be entered denying plaintiff's motion for summary judgment, granting defendant's cross-motion for summary judgment and dismissing this action in its entirety, and granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

Of Counsel:

Fariha Kabir
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Elisa S. Solomon
ELISA S. SOLOMON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-0583

Dated:  July 15, 2022
         New York, New York

*Attorneys for Defendant*

23

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| RKW KLERKS INC. | |
| Plaintiff, | |
| v. | Court No. 20-cv-00001 |
| UNITED STATES, | |
| Defendant. | |

**CERTIFICATE OF COMPLIANCE**

I, ELISA S. SOLOMON, a trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's July 15, 2022 reply brief in further support of its cross-motion for summary judgment and in opposition to plaintiff's motion for summary judgment, relying upon the word count feature of the word processing program used to prepare the brief, certifies that this cross-motion and response complies with the word count limitation under the Court's chambers procedures, and contains 6,935 words.

/s/ Elisa S. Solomon

1